1   COOLEY LLP
    WHITTY SOMVICHIAN (194463)
2   (wsomvichian@cooley.com)
    KATHERINE E. GREEN (312928)
3   (kgreen@cooley.com)
    101 California Street, 5th Floor
4   San Francisco, California 94111-5800
    Telephone:    +1 415 693 2000
5   Facsimile:    +1 415 693 2222

6   Counsel for Defendant Google LLC

7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                    SAN FRANCISCO DIVISION

11

12   STEVE WILSON BRIGGS,                    Case No. 3:20-cv-01596-WHO

13          Plaintiff,                       **DEFENDANT GOOGLE LLC'S NOTICE OF
                                             MOTION AND MOTION TO DISMISS
14       v.                                  COMPLAINT**

15   JAMES CAMERON; TWENTIETH                Date:     July 22, 2020
     CENTURY FOX FILM CORP.; NEWS            Time:     2:00 p.m.
16   CORP.; GOOGLE LLC; INTERNET             Dept:     Courtroom 2 - 17th Floor
     ARCHIVE; ZERO GRAVITY;                  Judge:    William H. Orrick
17   LIGHTSTORM ENTERTAINMENT INC.;
     MICHAEL PIERCE; MARK WILLIAMS;          Trial Date: Not Yet Set
18   ROBERT KAMEN,                           Date Action Filed: March 4, 2020

19          Defendants.

20

21

22

23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ................................................................................................ 1

I.      INTRODUCTION ................................................................................................................. 2

II.     FACTUAL HISTORY ......................................................................................................... 3

    A.      Plaintiff's Allegations ............................................................................................... 3

        1.      The alleged infringement. ............................................................................ 3

        2.      The alleged cover-up. .................................................................................. 3

        3.      Google's Involvement. ................................................................................. 4

    B.      Plaintiff's prior lawsuits ........................................................................................... 5

III.    LEGAL STANDARD ........................................................................................................... 6

    A.      Federal Rules of Civil Procedure 8(a) and 12(b)(6) ................................................. 6

    B.      Federal Rule of Civil Procedure 9(b) ....................................................................... 7

IV.     ARGUMENT ........................................................................................................................ 7

    A.      Plaintiff's Complaint Violates Basic Rule 8 Requirements. ..................................... 7

    B.      Plaintiff's Claims Should Be Dismissed Under First Amendment Principles. ................................................................................................................... 9

    C.      Plaintiff's Claims Involve Conduct Protected by the Communications Decency Act (CDA) Section 230. ......................................................................... 10

    D.      Plaintiff Fails to State Any Claim for Contributory Infringement Against Google (Third Claim for Relief). ............................................................................ 13

    E.      Plaintiff's Intentional Interference Claim Is Plagued by Additional Defects (Fourth Claim for Relief). ...................................................................................... 15

V.      CONCLUSION ................................................................................................................... 16

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................ 6, 13

5

6

*Baldino's Lock & Key Serv., Inc. v. Google LLC*,
  285 F. Supp. 3d 276 (D.D.C. 2018) ........................................................................ 11, 12

7

8

*Beasley v. Conagra Brands, Inc.*,
  374 F. Supp. 3d 869 (N.D. Cal. 2019) ..................................................................... 6, 15

9

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................ 6, 13

10

11

*Bly–Magee v. California*,
  236 F.3d 1014 (9th Cir.2001) .................................................................................. 7

12

13

*Briggs v. Blomkamp*,
  70 F. Supp. 3d 1155 (N.D. Cal. 2014) .................................................................... 5, 14

14

*Briggs v. Blomkamp*,
  No. 4:13-cv-04679-PJH, Dkt. 1 (N.D. Cal. Oct. 8, 2013)........................................ 5, 14

15

16

*Briggs v. Sony Pictures Entm't, Inc.*,
  139 S. Ct. 233 (2018) .............................................................................................. 5

17

18

*Briggs v. Sony Pictures, Entm't, Inc.*,
  714 Fed. App'x 712 (9th Cir. 2018).......................................................................... 5

19

*Briggs v. Spacey, et al.*
  ; No. 3:18-cv-04952-VC, ECF No. 1 (N.D. Cal.) .................................................... 6

20

21

*Briggs v. Universal Pictures, et al.*,
  No. 3:17-cv-06552-VC, ECF No. 1 (N.D. Cal.) ...................................................... 5, 6

22

23

*Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*,
  637 F.3d 1047, 1059 (9th Cir. 2011)........................................................................ 8

24

*Cavalier v. Random House, Inc.*,
  297 F.3d 815, 822-23 (9th Cir. 2002) ...................................................................... 14

25

26

*Daniels-Hall v. Nat'l Educ. Ass'n*,
  629 F.3d 992, 998 (9th Cir. 2010)............................................................................ 7

27

28

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
  751 F.3d 990, 996 (9th Cir. 2014)............................................................................ 6

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii.

**GOOGLE'S MOTION TO DISMISS**
**(CASE NO. 3:20-CV-01596-WHO)**

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Flores v. EMC Mortg. Co.*,
    997 F. Supp. 2d 1088 (E.D. Cal. 2014)................................................................. 8

*Fonovisa, Inc. v. Cherry Auction, Inc.*,
    76 F.3d 259 (9th Cir. 1996)................................................................. 12

*Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*,
    443 F.2d 1159 (2d Cir. 1971)................................................................. 13

*Goddard v. Google, Inc.*,
    No. C 08-2738 JF (PVT), 2008 WL 5245490 (N.D. Cal. Dec. 17, 2008) ........................... 11

*Gonzalez v. Google, Inc.*,
    335 F. Supp. 3d 1156 (N.D. Cal. 2018) ................................................................. 10

*Hatch v. Reliance Ins. Co.*,
    758 F.2d 409 (9th Cir.1985)................................................................. 7

*Hebbe v. Pliler*,
    627 F.3d 338, 342 n.7 (9th Cir. 2010)................................................................. 7

*In re iPhone Application Litig.*,
    No. 11-MD-2550-LHK, 2011 WL 4403963 (N.D. Cal. Sept. 20, 2011 )................................ 8

*Langdon v. Google, Inc.*,
    474 F. Supp. 2d 622 (D. Del. 2007)................................................................. 9, 10

*Marshall's Locksmith Serv. Inc. v. Google, LLC*,
    925 F.3d 1263 (D.C. Cir. 2019) ................................................................. 11, 12

*McHenry v. Renne*,
    84 F.3d 1172 (9th Cir.1996)................................................................. 7

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
    521 F.3d 1097 (9th Cir. 2008)................................................................. 7

*In re Napster, Inc. Copyright Litig.*,
    377 F. Supp. 2d 796 (N.D. Cal. 2005) ................................................................. 13

*Neubronner v. Milken*,
    6 F.3d 666 (9th Cir.1993)................................................................. 7

*Nevijel v. North Coast Life Ins. Co.*,
    651 F.2d 671 (9th Cir.1981)................................................................. 7

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
    494 F.3d 788, 796 (9th Cir. 2007)................................................................. 13, 14

FIRM NAME
ATTORNEYS AT LAW
OFFICE ADDRESS

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Schmidt v. Herrmann,*
614 F.2d 1221 (9th Cir.1980)...................................................................................... 7

*Search King, Inc. v. Google Tech., Inc.,*
No. CIV-02-1457-M, 2003 WL 21464568 (W.D. Okla. May 27, 2003).................................. 9

*Sebastian Brown Prods., LLC v. Muzooka, Inc.,*
143 F. Supp. 3d 1026 (N.D. Cal. 2015) ............................................................................... 8

*Vess v. Ciba-Geigy Corp. USA,*
317 F.3d 1097 (9th Cir. 2003)............................................................................................... 7

*Worldwide, LLC v. Google, Inc.,*
No. 2:14-cv-646-FtM-PAM-CM, 2017 WL 2210029 (M.D. Fla. Feb. 8, 2017) ..................... 9

*Yee v. Select Portfolio, Inc.,*
No. 18-CV-02704-LHK, 2018 WL 6173886 (N.D. Cal. Nov. 26, 2018) ................................ 8

*Zhang v. Baidu.com Inc.,*
10 F. Supp. 3d 433 (S.D.N.Y. 2014)................................................................................. 9, 10

**Statutes**

47 U.S.C.
§ 230................................................................................................... 2, 10, 11, 12
§ 230(b) ...................................................................................................................... 10
§ 230(c)(1) ................................................................................................... 10, 11, 12
§230(e)(2) .................................................................................................................. 12
§ 230(e)(3) ................................................................................................................. 10
§ 230(f) ...................................................................................................................... 11

Lanham Act........................................................................................................................ 12

**Other Authorities**

First Amendment............................................................................................................. 9, 10

5 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1217 (3d
ed. 2010).......................................................................................................................... 8

Federal Rules of Civil Procedure
8.............................................................................................................. 2, 7, 8, 15
8(a) ........................................................................................................... 1, 6, 7, 8
9(b) ......................................................................................................... 1, 2, 7, 15
12(b)(6) ........................................................................................................... 1, 6

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on July 22, 2020 at 2 p.m., or as soon thereafter as this Motion may be heard in the above-titled court, located at Courtroom 2, 17th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Google LLC ("Google") will move to dismiss the  Complaint (Dkt. No. 1 (the "Complaint")) of Steve Wilson Briggs ("Plaintiff").

Pursuant to Federal Rules of Civil Procedure 8(a), 9(b), and 12(b)(6), Google requests that this Court dismiss, with prejudice, each of Plaintiff's claims for failure to state a claim upon which relief may be granted. Google's Motion to Dismiss (the "Motion") is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, and all pleadings and papers on file in this matter, and upon such matters as may be presented to the Court at the time of hearing or otherwise.

## I. INTRODUCTION

Plaintiff's Complaint is the latest in a series of lawsuits filed by *pro se* Plaintiff Steven Briggs alleging that various well-known films were purportedly copied from his original screenplay.  All of Plaintiff's prior lawsuits were dismissed with prejudice and the dismissals were affirmed through multiple rounds of appeal.  The latest installment of Plaintiff's serial lawsuits involves the well-known movies *Avatar* and *Taken* and now includes, for the first time, claims against Google LLC ("Google").  While it is difficult to tease out a coherent theory against Google from the Complaint—which spans 135 pages and 684 paragraphs of bewildering and often fantastical allegations—the gist of Plaintiff's claims seems to be that Google helped other defendants to infringe by suppressing certain content from Google search results and by helping to create a false record that the *Avatar* screenplay predated Plaintiff's work.  On this latter point, Plaintiff's theory is particularly difficult to discern and seems to involve the way that URLs for certain alleged fraudulent websites were displayed in Google's Chrome web browser.

Plaintiff's Complaint should be dismissed for numerous reasons.  First, Plaintiff's excessively lengthy and confusing Complaint violates basic Rule 8 requirements.  Second, Plaintiff's allegations against Google involve activity—the display of Internet search results—that is protected from liability under both the First Amendment and Section 230 of the Communications Decency Act, 47 U.S.C. § 230 ("Section 230" or "CDA").  Third, Plaintiff's contributory copyright infringement claim fails because Plaintiff does not and cannot allege that Google had actual knowledge of any purported infringement, nor has he plausibly demonstrated any primary act of infringement in the first instance.  Fourth, Plaintiff's intentional misrepresentation claim is riddled with inconsistencies and assumptions, and it fails to meet the basic standard of plausibility of Rule 8, let alone the heightened pleading requirements that apply under Rule 9(b).

For these reasons, Google requests that the Court dismiss all claims against Google with prejudice to avoid further burdening Google and the Court with a baseless and defective pleading that cannot possibly be cured.

## II.    FACTUAL HISTORY

### A.    Plaintiff's Allegations

While much of the Complaint is unintelligible and has little apparent connection to Plaintiff or any harm he claims to have suffered, the relevant allegations, which we take as true only for the purposes of this motion, are as follows.

#### 1.    The alleged infringement.

In 2005, Plaintiff completed a script for a movie titled *Butterfly Driver* or *Uberopolis: City of Light* ("*Butterfly Driver*"). (Compl. ¶ 1.) On January 20, 2006, Plaintiff sent the *Butterfly Driver* script to literary agency ZGM, owned by Defendants Michael Pierce and Mark Williams. (Compl. ¶¶ 2, 131.) In December 2006 or January 2007, Plaintiff posted a revised version of the script on the website Triggerstreet.com. (*Id.* ¶ 287.)

Plaintiff alleges that "Defendants" (he does not specify which) accessed the *Butterfly Driver* script through ZGM and Triggerstreet.com. (*Id.* ¶¶ 47, 176, 264, 290.) Plaintiff alleges that Defendants Twentieth Century Fox and James Cameron copied *Butterfly Driver* to make the 2009 movie *Avatar* (*Id.* ¶¶ 1, 47), and Defendants Twentieth Century Fox and Robert Kamen copied *Butterfly Driver* to make the 2008 movie *Taken.* (*Id.* ¶ 447),

#### 2.    The alleged cover-up.

Plaintiff alleges that in 2019 he began researching the origins of the movie *Avatar*. (Compl. ¶¶ 27, 47.) Plaintiff claims his research revealed allegedly fraudulent articles regarding James Cameron's creation of *Avatar*, including several articles on a website called "Ain't it Cool News." (*Id.* ¶¶ 3, 20.) The articles were dated February 3, 2006, and claimed that James Cameron wrote a scriptment for *Avatar* around 1995, and the scriptment was leaked online in 1996. (*Id.* ¶ 20.) Plaintiff believes this article was fabricated to create the false impression that the *Avatar* script predated Plaintiff's work. Plaintiff alleges that between 2008 and 2019, Defendants (he does not specify which) published 14 additional fraudulent articles discussing James Cameron's development of *Avatar*, and created two webpages that were said to be the source of the leaked *Avatar* scriptment, all to support the allegedly falsified story that *Avatar* was developed about a decade before Plaintiff completed his *Butterfly Driver* script. (*Id.* ¶ 181)

Plaintiff alleges that Defendant Internet Archive ("IA") assisted the fraud by producing fake "crawls" of these fraudulent webpages.  (Compl. ¶ 3.)  Internet Archive has archived web pages on the Internet for many years and allows users to search its archive for historical versions of pages as they existed on certain prior dates.  (Id. ¶ 51.)  A user can enter the URL for a web page into the Internet Archive, see the prior dates on which IA "crawled" (meaning created an archived version) of a web page, and then view the page as archived by IA.  (*Id*.)  Although not clearly stated, Plaintiff seems to allege that IA created fake crawls of the fraudulent webpages, apparently as part of the overall scheme of creating a false record that the *Avatar* script predated Plaintiff's work.

### 3.     Google's Involvement.

Google's alleged involvement in all this is even harder to understand.  First, Plaintiff alleges that Google's Chrome browser displays a "false URL" when he searches for certain historical versions of web pages on IA.  (*Id*. ¶ 512.)  As depicted in Plaintiff's Video Exhibit 1, Plaintiff opens an Internet Explorer browser in his computer, navigates to the IA website, and searches on IA for a certain webpage.  (Video Ex.1 at 5:45.)  The IA website returns search results showing the archived versions of the webpage and highlights the versions for a specific year.  (*Id*. at 6:35.) Plaintiff complains that he should have been directed instead to what he calls the "star page" that also shows the available versions but without highlighting the results for any single year.  (*Id*. at 5:45-7:40.)  He then changes some text in the URL shown in the Internet Explorer browser bar, hits enter, and is directed back to the same page as before.  (*Id*.)  Notably, Plaintiff goes through the same steps using a Google Chrome browser and gets the same results.  (*Id*. at 2:40-3:20.)  It is not clear how this shows a "false URL" or otherwise relates to any claim in the Complaint.  Regardless, these allegations seem to be the basis of Plaintiff's claim that "Google/Chrome search results … displayed results that NewsCorp and 20CFox wanted Plaintiff to see, and omitted valid results."  (Compl. ¶ 654.)

Second, Plaintiff alleges that Google suppressed certain content from search results on Google Search.  Specifically, he alleges that "Google manipulated search results" by suppressing certain content about Plaintiff's prior litigation and his film projects from appearing in search

1   results, while allowing other content regarding *Avatar* to appear as "the top match" in certain

2   searches.  (Compl. ¶¶ 325-26.)

3          Third, Plaintiff claims that Google infected his computer with "NahimicService spyware"

4   by sending him a marketing email from Google Express in August 2019 containing spyware.

5   (*Id*. ¶ 323; Ex. J5 to Compl.)  Plaintiff does not allege any facts to show that this email in fact

6   contained spyware.  Nor does he address the many other ways that this alleged spyware could

7   have become installed on his computer, particularly given Plaintiff's extensive Internet browsing

8   activity as referenced throughout the Complaint.

9          Fourth, Plaintiff claims that as he was recording Video Exhibit 2, "Defendants" made an

10   "incriminating web page disappear" because "they were listening and monitoring Plaintiff's

11   computer screen, as he narrated [his] videos."  (*Id*. ¶ 518.)  This allegation does not specifically

12   mention Google and the entirety of Video Exhibit 2 involves Plaintiff using Internet Explorer,

13   not Google Chrome or Google Search, so this purported hacking incident is unrelated to Google.

14          **B.     Plaintiff's prior lawsuits**

15          This is Plaintiff's fourth lawsuit related to alleged copyright infringement of his *Butterfly*

16   *Driver* script.  On October 8, 2013, Plaintiff filed a complaint naming several individuals and

17   entertainment companies, including Sony Pictures Entertainment, Inc., as defendants. *Briggs v.*

18   *Blomkamp*, No. 4:13-cv-04679-PJH, Dkt. 1 (N.D. Cal. Oct. 8, 2013).  The complaint asserted a

19   single claim for copyright infringement, alleging that the defendants' film *Elysium* infringes on

20   Plaintiff's *Butterfly Driver*.  On October 3, 2014, the district court granted the defendants'

21   motion for summary judgment, based on Plaintiff's failure to offer any evidence of infringement.

22   *Briggs v. Blomkamp*, 70 F. Supp. 3d 1155 (N.D. Cal. 2014).  On February 28, 2018, the Ninth

23   Circuit affirmed the district court order.  *Briggs v. Sony Pictures, Entm't, Inc*., 714 Fed. App'x

24   712 (9th Cir. 2018).  The Supreme Court denied Briggs's petition for writ of certiorari on

25   October 1, 2018.  *Briggs v. Sony Pictures Entm't, Inc.*, 139 S. Ct. 233 (2018).

26          On November 13, 2017, while Plaintiff's Ninth Circuit appeal of the first case was still

27   pending, Plaintiff filed *Briggs v. Universal Pictures, et al*., No. 3:17-cv-06552-VC, ECF No. 1

28   (N.D. Cal.), asserting fourteen claims and naming twenty-three defendants. Plaintiff filed an

1   amended complaint on January 2, 2018, alleging thirteen causes of action, including copyright

2   infringement.  *Id.*, ECF No. 21.  On April 25, 2018, the case was dismissed without prejudice

3   because Plaintiff failed to show good cause for his failure to serve the parties against whom

4   federal claims were asserted, and the Court declined to exercise supplemental jurisdiction over

5   the remaining claims.  *Id.*, ECF No. 76.

6        On August 15, 2018, Plaintiff filed a third lawsuit with ten causes of action, including

7   civil conspiracy and copyright infringement, all of which were included in Plaintiff's November

8   13, 2017 lawsuit. *Briggs v. Spacey, et al.*; No. 3:18-cv-04952-VC, ECF No. 1 (N.D. Cal.).  The

9   court granted defendants' motion to dismiss this complaint with prejudice, finding Plaintiff's

10   claims against defendants present in his first lawsuit were precluded and the remaining claims

11   failed to state a claim.  *Id.*, ECF No. 90.

12   **III.    LEGAL STANDARD**

13       **A.    Federal Rules of Civil Procedure 8(a) and 12(b)(6)**

14        Rule 8(a) requires "a short and plain statement of the claim showing that the pleader is

15   entitled to relief."  Fed. R. Civ. P. 8(a).  A complaint "must be dismissed" when a plaintiff fails

16   to allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v.*

17   *Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads

18   factual content that allows the court to draw the reasonable inference that the defendant is liable

19   for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The plaintiff must

20   provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause

21   of action will not do."  *Twombly*, 550 U.S. at 555.

22        In applying these standards, a court should reject "pleadings that, because they are no

23   more than conclusions, are not entitled to the assumption of truth," and focus on well-pled

24   allegations to "determine whether they plausibly give rise to an entitlement to relief."  *Eclectic*

25   *Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014) (citation omitted).

26   Further, the court should apply its "judicial experience and common sense," to determine

27   whether allegations amount to a "plausible" claim.  *Beasley v. Conagra Brands, Inc.*, 374 F.

28   Supp. 3d 869, 874 (N.D. Cal. 2019) (citation omitted).  A court should not "accept as true

allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

*Pro se* pleadings should be construed liberally. *Hebbe v. Pliler*, 627 F.3d 338, 342 n.7 (9th Cir. 2010). However, a complaint should be dismissed when it lacks a cognizable legal theory or lacks sufficient facts to support a cognizable legal theory. *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

### B.      Federal Rule of Civil Procedure 9(b)

With respect to fraud-based claims, Rule 9(b) demands that the allegations of the purported fraud be "specific enough to give defendants notice of the particular misconduct ... so that they can defend against the charge and not just deny that they have done anything wrong." *Bly–Magee v. California*, 236 F.3d 1014, 1019 (9th Cir.2001) (quoting *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir.1993)). Rule 9(b) thus requires plaintiffs to plead "'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted).

## IV.      ARGUMENT

### A.      Plaintiff's Complaint Violates Basic Rule 8 Requirements.

As an initial matter, Plaintiff's Complaint should be dismissed because its excessive lengthy and confusing (often incoherent) allegations violate Rule 8's requirement of "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Indeed, the Ninth Circuit has routinely affirmed dismissal of similar complaints. *See, e.g., McHenry v. Renne*, 84 F.3d 1172, 1177-80 (9th Cir.1996) (upholding a Rule 8(a) dismissal of a complaint that was "argumentative, prolix, replete with redundancy, and largely irrelevant"); *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 415 (9th Cir.1985) (upholding dismissal of a complaint that "exceeded 70 pages in length, [and was] confusing and conclusory"); *Nevijel v. North Coast Life Ins. Co.*, 651 F.2d 671, 674 (9th Cir.1981) (holding that Rule 8(a) is violated when a complaint is excessively "verbose, confusing and almost entirely conclusory"); *Schmidt v.*

*Herrmann*, 614 F.2d 1221, 1224 (9th Cir.1980) (upholding dismissal of "confusing, distracting, ambiguous, and unintelligible pleadings").

"While 'the proper length and level of clarity for a pleading cannot be defined with any great precision,' Rule 8(a) has 'been held to be violated by a pleading that was needlessly long, or a complaint that was highly repetitious, or confused, or consisted of incomprehensible rambling.'" *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.,* 637 F.3d 1047, 1059 (9th Cir. 2011) (quoting 5 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1217 (3d ed. 2010)). Here, Plaintiff's Complaint—spanning 684 paragraphs across 135 pages and approximately 700 pages of exhibits—is "needlessly long" by any conceivable standard.

Compounding this problem, Plaintiff's allegations are often directed at "defendants" as a collective group, without identifying what each individual defendant is alleged to have done. As this Court has explained, grouping multiple defendants together in this way is "problematic because it fails to put each respective Defendant on notice of the basis of the Plaintiff's claims." *Yee v. Select Portfolio, Inc.*, No. 18-CV-02704-LHK, 2018 WL 6173886, at *7 (N.D. Cal. Nov. 26, 2018). *See also, e.g., Sebastian Brown Prods., LLC v. Muzooka, Inc*., 143 F. Supp. 3d 1026, 1037 (N.D. Cal. 2015) ("A plaintiff 'must identify what action each Defendant took that caused Plaintiffs' harm, without resort to generalized allegations against Defendants as a whole.'") (quoting *In re iPhone Application Litig*., No. 11-MD-2550-LHK, 2011 WL 4403963, at *3 (N.D. Cal. Sept. 20, 2011 ); *Flores v. EMC Mortg. Co*., 997 F. Supp. 2d 1088, 1103 (E.D. Cal. 2014) ("The rambling complaint lacks facts of defendants' specific wrongdoing to provide fair notice as to what each defendant is to defend.").

By directing his Complaint against a collective group of "defendants," Plaintiff fails to put Google on notice of the specific allegations being made against it, as required by Rule 8. Plaintiff's generalized allegations are particularly problematic because Google has no relationship at all with most of the other defendants and is left to guess at what potential connections Plaintiff may be imagining. While Google has responded in this Motion as best it can to the few allegations directed specifically at Google, Plaintiff's consistent failure to identify

1  the specific allegations being directed at each defendant in itself mandates dismissal of the

2  Complaint.

3  **B.      Plaintiff's Claims Should Be Dismissed Under First Amendment Principles.**

4  On the merits, Plaintiff's claims should be dismissed under First Amendment principles

5  because they seek to impose liability for a form of protected speech.  As multiple courts have

6  found, an Internet search engine's display of search results involves "editorial judgments,"

7  including determining which websites to include and omit in search results.  *Zhang v. Baidu.com*

8  *Inc.*, 10 F. Supp. 3d 433, 441 (S.D.N.Y. 2014).  In *Zhang*, the plaintiffs brought various statutory

9  claims against the operator of the Baidu.com search engine, alleging that the defendant purposely

10  "design[s] its search-engine algorithms to favor" certain content while suppressing others.  *Id.* at

11  440.  The court dismissed the claims with prejudice, explaining that the plaintiff could not ask

12  the court "to impose a penalty on Baidu" for "what it does and does not choose to say" through

13  the display of search results based on its algorithms.  *Id.* at 441.  Similarly, in *e-ventures*

14  *Worldwide, LLC v. Google, Inc.,* the court explained that Google's choices in omitting certain

15  websites from search results while allowing others to appear is protected by the First

16  Amendment.  No. 2:14-cv-646-FtM-PAM-CM, 2017 WL 2210029, at *4 (M.D. Fla. Feb. 8,

17  2017).  As the court explained, "Google's actions in formulating rankings for its search engine

18  and in determining whether certain websites are contrary to Google's guidelines" are the types of

19  decisions protected by the First Amendment "whether they are fair or unfair, or motivated by

20  profit or altruism."  *Id.  See also Search King, Inc. v. Google Tech., Inc.*, No. CIV-02-1457-M,

21  2003 WL 21464568, at *3-4 (W.D. Okla. May 27, 2003) (holding that Google's PageRank, "a

22  numerical representation of the relative significance of a particular web site," is protected speech

23  and dismissing tort claims involving alleged manipulation of the PageRank for plaintiff's

24  websites); *Langdon v. Google, Inc.*, 474 F. Supp. 2d 622, 629-30 (D. Del. 2007) (holding that

25  plaintiff's demand for Google to "honestly rank" his websites in search results raised First

26  Amendment concerns and dismissing claim as a matter of law).

27  Plaintiff's allegations against Google raise the same First Amendment concerns here.  For

28  example, Plaintiff complains that Google "prevented" information about Plaintiffs' prior

litigation "from appearing in any web searches" and "manipulated search results–to eliminate Plaintiff's film projects from Google's search results" while favoring other content about the *Avatar* film.  (Compl. ¶¶ 325-326.)  As Plaintiff summarizes, "Google/Chrome search results … display[] results that News Corp and 20CFOX wanted Plaintiff to see, and omitted valid results." (*Id*. at ¶ 654.) These are precisely the types of allegations that mandated dismissal in *Zhang*, *e-Ventures Worldwide*, and *Langdon*, all of which involved claims of suppressing content from search results.  *See supra*.  Similarly, Plaintiff cannot impose liability on Google for allegedly causing searches on IA to default to certain page views (those highlighting the IA crawls for a given year) and not others (the so-called "star page" that Plaintiff describes in Video Exhibit 1). Again, designing an algorithm that results in some pages being shown and not others is not actionable under First Amendment principles, and Plaintiff's claims against Google should be dismissed in their entirety on this ground.

### C.   Plaintiff's Claims Involve Conduct Protected by the Communications Decency Act (CDA) Section 230.

For similar reasons, Plaintiff's theory of liability is precluded by Section 230 of the Communications Decency Act, 47 U.S.C. § 230 ("Section 230" or "CDA").  Section 230 provides broad immunity to online service providers where a party seeks to hold the provider liable for the content of others.  Congress passed the CDA to promote "the continued development of the Internet and other interactive computer services" and "preserve the vibrant and competitive free market that presently exists for the Internet." 47 U.S.C. § 230(b). Accordingly, the CDA provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." *Id.* § 230(c)(1).  Where CDA immunity applies, "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section."  *Id.* § 230(e)(3).  In applying Section 230(c)(1), courts in this District utilize a three-part test that looks to whether a plaintiff's claim involves "(a) a provider or user of an interactive computer service (b) that the plaintiff seeks to treat as a publisher or speaker (c) of

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10.

GOOGLE'S MOTION TO DISMISS
(CASE NO. 3:20-CV-01596-WHO)

1   information provided by another information content provider." *Gonzalez v. Google, Inc.*, 335 F.

2   Supp. 3d 1156, 1173 (N.D. Cal. 2018).  All three elements for immunity are met here.

3        First, there is no doubt that the Google services at issue in the Complaint—providing

4   Internet browsing and search functions—are "an interactive computer service."[1]  *See, e.g.*,

5   *Marshall's Locksmith Serv. Inc. v. Google, LLC*, 925 F.3d 1263, 1268 (D.C. Cir. 2019) (search

6   engines, including Google Search, "fall within th[e] statutory definition" of an "interactive

7   computer service"); *Baldino's Lock & Key Serv., Inc. v. Google LLC*, 285 F. Supp. 3d 276, 280

8   (D.D.C. 2018) ("search engine providers" like Google are a "quintessential example" of an

9   interactive computer service provider); *Goddard v. Google, Inc*., No. C 08-2738 JF (PVT), 2008

10  WL 5245490, at *2 n.2 (N.D. Cal. Dec. 17, 2008) (same).

11       Further, the second and third elements of Section 230(c)(1) immunity are met because

12  Plaintiff seeks to hold Google liable for content created by others.  In *Marshall's Locksmith*

13  *Service Inc. v. Google, LLC*, the court applied Section 230(c)(1) to a complaint alleging that

14  Google enabled the fraudulent scheme of certain businesses by "deliberately flood[ing]" search

15  results with business listings that it knew to be "seriously inaccurate or even nonexistent."  925

16  F.3d at 1266.  The court affirmed dismissal of all claims pursuant to Section 230(c)(1) because

17  the claims were based on third-party content.  *See also Baldino's Lock & Key Serv.*, 285 F. Supp.

18  3d at 280 (dismissing similar claims against Google).  Similarly here, Plaintiff does not allege

19  any facts to show that Google itself created the purported fraudulent websites and fake crawls

20  that are the crux of the Complaint.  Rather, Plaintiff seeks to hold Google liable because these

21  websites were shown in "Google/Chrome search results" and allegedly helped to further other

22  defendants' interests in "display[ing] results [they] wanted Plaintiff to see …."  (Compl. § 654.)

23  These allegations fall squarely within the scope of immunity under Section 230(c)(1).

24       Plaintiffs' allegation that Google displayed "false URLs" does not undermine the

25  application of Section 230 immunity.  In *Baldino's Lock & Key Service, Inc.*, the plaintiffs tried

26

27  ---
[1] Section 230(f) defines an "interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a

28  computer server, including specifically a service or system that provides access to the Internet . . . ."

to avoid Section 230 immunity by claiming that Google took location information provided by third-party bad actors and added more precise location information for display in search results. 285 F. Supp. 3d at 281.  The Court held this did not make Google an "information content provider" and did not eliminate Section 230 immunity.  The Court explained that "merely … augmenting the content generally" does not deprive an "interactive computer service" of Section 230 immunity, and Google was still entitled to protection because its systems did "not materially contribute to the alleged unlawfulness of the underlying information." *Id*. at 282-83.  Here, Plaintiff complains that Google Chrome displayed "false URLs" for certain search results on IA because the web addresses omit the year in the string of characters constituting the URL. (Compare Compl. ¶¶ 512 ("false [URL] readings" from Google Chrome) and 514 ("true" URLs shown in Internet Explorer.)  There is no sense in which this contributes at all, much less "materially," to "the alleged unlawfulness of the underlying information." *Baldino's Lock & Key Serv.*, 285 F. Supp. 3d at 282-83.  Plaintiff does not allege, for example, that the web pages as accessed through Chrome versus Internet Explorer are any different in substance.  To the contrary, Video Exhibit 1 appears to confirm that there is no difference.

In sum, Plaintiff's claims against Google should be dismissed in their entirety because they seek to hold Google liable for the content of others, in contravention of the immunity conferred under Section 230(c)(1).[2]

---

[2] Section 230 does not apply to intellectual property claims.  *See* 47 U.S.C. §230(e)(2).  While the Complaint includes a claim for contributory copyright infringement against Google, Plaintiff concedes that Google "did not directly engage in the actual infringement" and his allegations against Google in support of the claim involve conduct that courts have held are immune under Section 230.  Compl. § 621; *see also Marshall's Locksmith Serv.*, 925 F.3d at 1268 (holding internet search engine providers possessed CDA immunity from liability as to Lanham Act claim arising from providers' alleged publishing of fictitious and fraudulent search results and advertisements).  Regardless, CDA immunity would apply to Plaintiff's claim for intentional misrepresentation.

Cooley LLP
Attorneys at Law
San Francisco

12.

Google's Motion to Dismiss
(Case No. 3:20-cv-01596-WHO)

1

**D.      Plaintiff Fails to State Any Claim for Contributory Infringement Against Google (Third Claim for Relief).[3]**

2

3      Contributory copyright infringement occurs when "one who, with knowledge of the

4  infringing activity, induces, causes or materially contributes to the infringing conduct of

5  another."  *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir. 1996) (quoting

6  *Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971)).

7  To state a claim, a plaintiff must allege facts showing (1) direct infringement by a third party; (2)

8  actual or constructive knowledge by the defendant that third parties were directly infringing; and

9  (3) a material contribution by the defendant to the infringing activities.  *In re Napster, Inc.*

10  *Copyright Litig.*, 377 F. Supp. 2d 796, 801 (N.D. Cal. 2005).

11      Here, Plaintiff's contributory infringement claim fails because he has alleged no facts

12  showing that Google had knowledge of any infringing activity involving his *Butterfly Driver*

13  script.  Instead, Plaintiff simply asserts, with no explanation, that Google "had clear knowledge

14  of the infringing Defendants' infringement of Plaintiff's work."  (Compl. ¶ 621.)  That

15  conclusory assertion is not enough.  *See Twombly*, 550 U.S. at 555 ("a formulaic recitation of the

16  elements of a cause of action will not do"); *Iqbal*, 556 U.S. at 678-79 ("Threadbare recitals of the

17  elements of a cause of action, supported by mere conclusory statements, do not suffice.").

18      Moreover, Plaintiff fails to allege that Google materially contributed to any act

19  constituting infringement.  Instead, Plaintiff's allegations regarding Google involve purported

20  interference with Plaintiff's investigation into the creation of the movie *Avatar*, which has no

21  "direct connection" to the actual alleged infringement of his script.  *See Perfect 10, Inc. v. Visa*

22  *Int'l Serv. Ass'n*, 494 F.3d 788, 796 (9th Cir. 2007).  In *Perfect 10, Inc.*, Plaintiff alleged that

23  credit card companies contributorily infringed its copyrighted images by processing credit card

24  charges incurred by customers to acquire infringing images posted on other websites.  *Id.* at 796-

25  97.  The Ninth Circuit upheld dismissal of the contributory infringement claim, finding that the

26

27  _____

[3] While Plaintiff's direct copyright infringement claim (first claim for relief) is directed at "all

28  defendants," Plaintiff admits that "Defs Google LLC and Internet Archives did not directly engage in the actual infringement of the Plaintiff's work," thus confirming that Plaintiff has no viable claim for direct infringement against Google.  (Compl. ¶ 621.)

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13.

**GOOGLE'S MOTION TO DISMISS**
**(CASE NO. 3:20-CV-01596-WHO)**

1   credit card companies had not materially contributed to infringement of plaintiff's images.  *Id*.

2   The court explained that although the credit card companies made it easier for websites to profit

3   from infringing activity, infringement rested on the "reproduction, alteration, display and

4   distribution" of plaintiff's images, which the credit card companies played no part in, and which

5   could occur without payment.  *Id*.  The court further reasoned, "[e]ven if infringing images were

6   not paid for, there would still be infringement."  *Id*.

7        Here, Plaintiff's copyright infringement claim rests on the alleged use of Plaintiff's work

8   in the movies *Taken* and *Avatar,* which premiered in 2008 and 2009 respectively.  Even if one

9   accepts Plaintiff's unsupported allegations that Google manipulated search results regarding

10   James Cameron's development of *Avatar*, and infected Plaintiff's computer with spyware in

11   2019, neither of those actions induced or facilitated the creation or "reproduction, alteration,

12   display and distribution" of those two movies.  *Id*.  Even without the subsequent alleged actions

13   of Google, the earlier infringements would still have occurred, under Plaintiff's theory.

14        Finally, notwithstanding Google's lack of knowledge or material contribution to

15   infringing activity, Plaintiff's contributory infringement claim fails because he does not allege an

16   underlying claim for direct infringement of his copyrighted work.  Plaintiff's copyright

17   infringement claim is based on the same *Butterfly Driver* script that was the subject of his prior

18   failed copyright infringement actions, and cannot support a viable claim here for similar reasons.

19        In his prior lawsuits, Plaintiff claimed that the movie *Elysium* copied a number of

20   elements of his *Butterfly Driver* script, including plot features, overarching themes, and

21   characters.  In Plaintiff's first infringement lawsuit, *Briggs v. Blomkamp*, this court found that

22   many of the *Butterfly Driver* plot features and overarching themes were merely "generic," and

23   thus not worthy of copyright protection.  70 F. Supp. 3d at 1168, 1177. The court likewise held

24   that many of Plaintiff's allegations regarding character similarities were based on generic,

25   unprotectable character trait ideas, such as a character's age and economic status.  *Id*. at 1172.

26   Here, Plaintiff's copyright infringement claim is based on many of the same elements that this

27   court has already deemed unworthy of copyright protection.  After filtering out the non-

28   protectable elements in *Butterfly Driver*, no similarities exist between Plaintiff's script, and

Cooley LLP
Attorneys at Law
San Francisco

14.

Google's Motion to Dismiss
(Case No. 3:20-cv-01596-WHO)

*Avatar* and *Taken*, and thus his copyright infringement claim fails. *See e.g. Cavalier v. Random House, Inc.*, 297 F.3d 815, 822-23 (9th Cir. 2002) (Those non-protectable elements that the Court should "filter out" prior to applying the extrinsic test for similarity include "general plot ideas," "[f]amiliar stock scenes and themes," and "[s]cenes-a-faire, or situations and incidents that flow necessarily or naturally from a basic plot premise.") (internal citations omitted).

### E.   Plaintiff's Intentional Interference Claim Is Plagued by Additional Defects (Fourth Claim for Relief).

In addition to the immunities discussed above, Plaintiff's intentional misrepresentation claim also fails because it is premised on inconsistencies and unsupported assertions that render the claim implausible on its face. First, the claim is premised on an alleged Google statement that: "We provide our Services using a commercially reasonable level of skill and care." (Compl. ¶ 653.) The Complaint, however, does not allege that Google provided any "Service" with inadequate "skill and care" but rather that Google engaged in hacking and other alleged improper actions that were completely outside of its normal provision of "Services." This disconnect in Plaintiff's claim mandates dismissal. Second, Plaintiff states he was harmed by Google's representation because "it was the basis for Plaintiff joining Google LLC's 'Gmail'." (*Id.* ¶ 661.) But Google's alleged wrongdoing, according to the Complaint, involves search results on Google Search and the display of URLs in Google Chrome—not Gmail. Again, Plaintiff's factual allegations do not tie to his intentional misrepresentation theory. Third, while Plaintiff speculates that his computer was infected by spyware through an email he received in this Gmail account, his assumption is unsupported by any facts and ignores the numerous other ways that the alleged spyware could have been installed on his computer, particularly given Plaintiff's extensive Internet browsing activity as reflected in the Complaint. The Court should not credit this unsupported assertion, which is implausible on its face. *Beasley*, 374 F. Supp. 3d at 874 (noting that a court should apply its "judicial experience and common sense" to determine if a plaintiff's allegations support a "plausible" claim) (citation omitted).

Cooley LLP
Attorneys at Law
San Francisco

15.

GOOGLE'S MOTION TO DISMISS
(CASE NO. 3:20-CV-01596-WHO)

1      In sum, Plaintiff's allegations do not meet even the basic plausibility standard of Rule 8,

2 let alone the heightened particularity requirements that apply to a fraud-based claim under Rule

3 9(b).

4 **V.    CONCLUSION**

5      For the foregoing reasons, the Court should dismiss all claims against Google and should

6 do so with prejudice given that there is no chance that the many defects of Plaintiff's pleading

7 can be cured.

8

9 Dated: May 22, 2020                   COOLEY LLP

10

11                                   By: */s/ Whitty Somvichian*

12                                      Whitty Somvichian

13                                  Attorneys for Defendant Google LLC

14 226442596

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16.

GOOGLE'S MOTION TO DISMISS
(CASE NO. 3:20-CV-01596-WHO)