1  **JASSY VICK CAROLAN** LLP
   JEAN-PAUL JASSY, Cal. Bar No. 205513
2     jpjassy@jassyvick.com
   KEVIN L. VICK, Cal. Bar No. 220738
3     kvick@jassyvick.com
   ELIZABETH BALDRIDGE, Cal. Bar No. 313390
4     ebaldridge@jassyvick.com
   800 Wilshire Boulevard, Suite 800
5  Los Angeles, CA 90017
   Telephone:      (310) 870-7048
6  Facsimile:      (310) 870-7010

7  Attorneys for Defendants Twentieth Century
   Fox Film Corp., Lightstorm Entertainment Inc.,
8  News Corp. and James Cameron

9

10                       **UNITED STATES DISTRICT COURT**

11                 **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

12

13  STEVE WILSON BRIGGS,                    Case No.:  3:20-cv-01596-WHO
                                            Hon. William H. Orrick
14              Plaintiff,

15         v.                              **DEFENDANTS TWENTIETH CENTURY
                                           FOX FILM CORP., LIGHTSTORM
16  JAMES CAMERON; TWENTIETH               ENTERTAINMENT INC., NEWS CORP.
    CENTURY FOX FILM CORP.; NEWS           AND JAMES CAMERON'S NOTICE OF
17  CORP.; GOOGLE LLC; INTERNET            MOTION AND MOTION TO DISMISS
    ARCHIVE; ZERO GRAVITY;                 COMPLAINT**
18  LIGHTSTORM ENTERTAINMENT INC.;
    MICHAEL PIERCE; MARK WILLIAMS;         **[REQUEST FOR JUDICIAL NOTICE,
19  and ROBERT KAMEN,                      NOTICE OF LODGING, AND
                                           PROPOSED ORDERS FILED
20              Defendants.                CONCURRENTLY]**

21                                         DATE: July 29, 2020
                                           TIME: 2:00 P.M.
22                                         COURTROOM: 2 – 17TH FLOOR

23

24

25

26

27

28

TO PLAINTIFF IN *PROPRIA PERSONA*, ALL OTHER PARTIES AND THEIR COUNSEL:

PLEASE TAKE NOTICE THAT on July 29th, 2020, at 2:00 p.m. or as soon thereafter as counsel may be heard in Courtroom 2, 17th Floor, of the United States District Court for the Northern District of California, San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, California 94102, the Honorable William H. Orrick, presiding, Defendants Twentieth Century Fox Film Corp. ("Fox"), Lightstorm Entertainment Inc. ("Lightstorm"), News Corp.[1] and James Cameron ("Cameron") (referred to collectively herein as "Defendants") will and hereby do move this Court for an order dismissing with prejudice, and without leave to amend, the Complaint filed by Plaintiff Steve Wilson Briggs ("Plaintiff").

Defendants bring this motion pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendants' motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the concurrently-filed Request for Judicial Notice, the Notice of Lodging with exhibits, all other matters of which this Court may take judicial notice, the pleadings, files, and records in this action, and on any argument heard by the Court.

Dated:  June 22, 2020               **JASSY VICK CAROLAN LLP**


By      /s/ Jean-Paul Jassy
        JEAN-PAUL JASSY
        Attorneys for Defendants
        Twentieth Century Fox Film Corp., Lightstorm
        Entertainment Inc., News Corp. and James Cameron

---

[1] News Corp. is not a proper defendant in this action for many reasons, including those detailed in the attached Memorandum of Points and Authorities.  The business entity now known as News Corp. is not a proper defendant for the additional reason that it did not exist as a corporate entity at any time relevant to the allegations in the Complaint and had no involvement whatsoever in any of the activities as alleged in the Complaint.  News Corp. joins this Motion to Dismiss because Plaintiff's claims all fail as a matter of law, and it reserves all defenses and positions.

1

## **<u>TABLE OF CONTENTS</u>**

2

**Page**

3

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................... 2

4

I.      INTRODUCTION .......................................................................................................... 2

5

II.     STATEMENT OF FACTS ............................................................................................. 3

6

7

A.      *Avatar* Synopsis ................................................................................................. 4

8

B.      *Taken* Synopsis ................................................................................................. 5

9

C.      *Butterfly Driver* Synopsis ................................................................................. 6

10

D.      Plaintiff's Claims Against Defendants ............................................................... 8

11

III.    RULE 12(b)(6) STANDARDS ..................................................................................... 8

12

IV.     PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM ................................... 9

13

A.      Plaintiff's Copyright Infringement Claims Fail Because Plaintiff Fails To Plausibly Allege Access And Cannot, As A Matter Of Law, Show Substantial Similarity ......... 9

14

15

1.      Plaintiff Fails To Plausibly Allege Defendants' Access To His Work ........... 10

16

2.      *Butterfly Driver* Is Not Substantially Similar To Either *Avatar* or *Taken* ....... 12

17

a.      Plaintiff's Alleged Similarities Are Unprotectable Elements Which Must Be Filtered Out From The Court's Analysis ................................... 12

18

19

b.      *Avatar* And *Butterfly Driver* Are Not Substantially Similar ................... 14

20

c.      *Taken* And *Butterfly Driver* Also Are Not Substantially Similar ............. 18

21

B.      Plaintiff's Ancillary Claims For Intentional Misrepresentation, Breach of Contract and Breach of Confidence Also Fail As A Matter Of Law ........................................ 22

22

1.      Plaintiff's Ancillary Claims Are Time-Barred ................................................. 22

23

2.      Lack Of Substantial Similarity Also Defeats Plaintiff's Ancillary Claims ..... 23

24

3.      Plaintiff Fails To Allege Required Elements In His Two Breach Claims ....... 23

25

4.      The Intentional Misrepresentation Claim Also Is Not Properly Alleged ......... 24

26

V.      CONCLUSION ............................................................................................................. 25

27

28

i

1

## <u>TABLE OF AUTHORITIES</u>

2

3
**Page(s)**

**Cases**

4

*Abdullah v. Walt Disney Co.*,
5
    No. 2:15-cv-09581-SVW-JPR, 2016 WL 5380930 (C.D. Cal. Mar. 14, 2016) .................. 10

*Alfred v. Walt Disney Company*,
6
    388 F. Supp. 3d 1174 (C.D. Cal. 2019) ................................................ 12, 13, 14, 16, 18, 21

7
*Alliance Mortgage Co. v. Rothwell*,
    10 Cal. 4th 1226 (1995) ............................................................................................................ 24
8

*Art Attacks Ink, LLC v. MGA Entmn't Inc.*,
9
    581 F.3d 1138 (9th Cir. 2009) ................................................................................................. 10

10
*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................................................................... 8

11
*Basile v. Sony Pictures Entmn't, Inc.*,
    No. CV 14-04264, 2014 WL 12521344 (C.D. Cal. Aug. 19, 2014) ................................... 21
12

*Bell Atl. Corp. v. Twombly*,
13
    550 U.S. 544 (2007) .................................................................................................................... 8

14
*Berkic v. Crichton*,
    761 F.2d 1289 (9th Cir. 1985) ............................................................................ 10, 13, 14, 17
15

*Bissoon-Dath v. Sony Computer Entmn't Am., Inc.*,
16
    694 F. Supp. 2d 1071 (N.D. Cal. 2010) ................................................................... 9, 12, 20

17
*Brown v. Elec. Arts, Inc.*,
    724 F.3d 1235 (9th Cir. 2013) ................................................................................................. 8

18
*Campbell v. Walt Disney Co.*,
    718 F. Supp. 2d 1108 (N.D. Cal. 2010) ........................................................... 9, 10, 21, 22
19

20
*Cavalier v. Random House*,
    297 F.3d 815 (9th Cir. 2002) ........................................................................................... 13, 14

21
*Christianson v. W. Pub'lg Co.*,
    149 F.2d 202 (9th Cir. 1945) ................................................................................................. 10
22

*Cline v. Reetz-Laiolo*,
23
    329 F. Supp. 3d 1000 (N.D. Cal. 2018) ............................................................................. 8, 10

24
*DC Comics v. Towle*,
    802 F.3d 1012 (9th Cir. 2015) ............................................................................................... 17

25
*Doe v. Roman Catholic Bishop*,
    189 Cal. App. 4th 1423 (2010) .............................................................................................. 22
26

*Ellison v. Robertson*,
27
    357 F.3d 1072 (9th Cir. 2004) ................................................................................................. 9

28

MOTION TO DISMISS COMPLAINT

*Esplanade Prods, Inc. v. Walt Disney Co.*,
    CV 17-02185, 2017 WL 5635027 (C.D. Cal. Nov. 8, 2017) .............................................. 10

*Faris v. Enberg*,
    97 Cal. App. 3d 309 (1979) .................................................................................................. 24

*Flaherty v. Filardi*,
    No. 03 Civ. 2167, 2009 WL 749570 (S.D.N.Y. Mar. 20, 2009) ........................................ 18

*Fox Broad. Co. v. Dish Network*,
    747 F. 3d 1060 (9th Cir. 2014) .............................................................................................. 9

*Fulks v. Knowles-Carter*,
    207 F. Supp. 3d 274 (S.D.N.Y. 2016) .................................................................................. 21

*Funky Films, Benay v. Warner Bros. Entmn't, Inc.*,
    607 F.3d 620 (9th Cir. 2010) .............................................................................. 9, 13, 14, 15

*Funky Films, Inc. v. Time Warner Entmn't, Inc.*,
    462 F.3d 1072 (9th Cir. 2006) ............................................................ 9, 10, 13, 14, 19, 22

*Graham v. Bank of Am., N.A.*,
    226 Cal. App. 4th 594 (2014) .............................................................................................. 25

*Harper & Row Publ'rs, Inc. v. Nation Enters.*,
    471 U.S. 539 (1985) .............................................................................................................. 12

*Hayes v. Keys*,
    No. CV 14-6246 PA, 2015 WL 12734010, at *2 (C.D. Cal. Jan. 7, 2015) ......................... 10

*Jorgensen v. Epic/Sony Records*,
    351 F.3d 46 (9th Cir. 2003) .................................................................................................. 11

*Loomis v. Cornish*,
    836 F.3d 991 (9th Cir. 2016) ................................................................................................ 11

*Mann v. Columbia Pictures, Inc.*,
    128 Cal. App. 3d 628 (1982) ................................................................................................ 23

*Marcus v. ABC Signature Studios, Inc.*,
    279 F. Supp. 3d 1056 (C.D. Cal. 2017) ................................................ 4, 10, 13, 14, 16, 20

*McHenry v. Renee*,
    84 F.3d 1172 (9th Cir. 1996) ........................................................................................ 12, 24

*Monreal v. GMAC Mortg., LLC*,
    948 F. Supp. 2d 1069 (S.D. Cal. 2013) ............................................................................... 24

*NBCUniversal Media, LLC v. Superior Court*,
    225 Cal. App. 4th 1222 (2014) ............................................................................................ 22

*Olson v. National Broadcasting Co.*,
    855 F.2d 1446 (9th Cir. 1988) ................................................................... 13, 14, 15, 16, 20

*Orkin v. Taylor*,
    487 F.3d 734 (9th Cir. 2007) ............................................................................................... 23

*Rentmeester v. Nike, Inc.*,
    883 F.3d 1111 (9th Cir. 2018) ................................................................................. 9, 13, 14

*Ryder v. Lightstorm Entmn't Inc.*,
    246 Cal. App. 4th 1064 (2016) ........................................................................................ 23

*Schkeiban v. Cameron*,
    No. CV 12-0636, 2012 WL 5636281 (C.D. Cal. Oct. 4, 2012) ............................ 10, 12, 15

*Shame on You Prods., Inc. v. Banks*,
    120 F. Supp. 3d 1123 (C.D. Cal. 2015) ................................................................. 16, 20, 21

*Shwarz v. U.S.*,
    234 F.3d 428 (9th Cir. 2000) ............................................................................................. 8

*Silas v. HBO*,
    201 F. Supp. 3d 1158 (C.D. Cal. 2016) ......................................................... 15, 17, 19, 20

*Silas v. HBO*,
    713 F. App'x 626 (9th Cir. 2018) ................................................................................... 10

*Skidmore as Trustee for Randy Craig Wolfe Trust v. Zeppelin*,
    952 F.3d 1051 (9th Cir. 2020) ........................................................................................... 9

*Southco, Inc. v. Kanebridge Corp.*,
    390 F.3d 276 (3d Cir. 2004) ............................................................................................ 16

*Spinner v. Am. Broadcasting Co.*,
    215 Cal. App. 4th 172 (2013) .......................................................................................... 23

*Star Fabrics, Inc. v. Wet Seal, Inc.*,
    No. CV 14-07163, 2014 WL 12591271 (C.D. Cal. Dec. 2, 2014) .............................. 11, 12

*UMG Recordings, Inc. v. Global Eagle Entmn't, Inc.*,
    117 F. Supp. 3d 1092 (C.D. Cal. 2015) ........................................................................... 25

*Van v. Cameron*,
    No. 10cv1051, 2011 WL 13121345 (S.D. Cal. July 13, 2011) ............................... 10, 17, 18

*Walker v. Time Life Films, Inc.*,
    615 F. Supp. 430 (S.D.N.Y. 1985) ................................................................................... 9

*Zella v. The E.W. Scripps Co.*,
    529 F. Supp. 2d 1124 (C.D. Cal. 2007) .......................................................................... 8, 9

**Federal Rules**

F.R.C.P. 8 ................................................................................................................................ 24

F.R.C.P. 8(a) ........................................................................................................................... 12

F.R.C.P. 9(b) ........................................................................................................................... 24

F.R.C.P. 12(b)(6) ...................................................................................................................... 8

**State Statutes**

California Code of Civil Procedure § 338(d) ................................................................... 22

**Miscellaneous**

https://en.wikipedia.org/wiki/A_Civil_Action_(film) ....................................................... 15

https://en.wikipedia.org/wiki/Blade_Runner ................................................................... 19

https://en.wikipedia.org/wiki/Independence_Day_(1996_film) ....................................... 19

https://en.wikipedia.org/wiki/Man_on_Fire_(2004_film) ............................................... 19

https://en.wikipedia.org/wiki/Not_Without_My_Daughter_(film) ................................... 19

https://en.wikipedia.org/wiki/Ransom_(1996_film) ........................................................ 19

https://en.wikipedia.org/wiki/Silkwood .......................................................................... 15

https://en.wikipedia.org/wiki/Terminator_2:_Judgment_Day .......................................... 19

https://en.wikipedia.org/wiki/The_Fifth_Element ........................................................... 15

https://en.wikipedia.org/wiki/The_Matrix ....................................................................... 15

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

This case is Plaintiff Steve Wilson Briggs' fourth lawsuit in this Court claiming infringement of his screenplay titled *Butterfly Driver*.[2] The three prior cases, which were decided against Plaintiff by Judge Hamilton and Judge Chhabria, alleged that the film *Elysium* infringed his screenplay.  Now, Plaintiff claims that two other and wholly different films – *Avatar* and *Taken* – infringed the same screenplay.  Although the rambling, 845-page Complaint is difficult to follow, the core of Plaintiff's allegations seems to be that *Butterfly Driver* is like *Avatar* because it involves space travel, and it is like *Taken* because it involves a father's mission to help his daughter.  Such generic similarities, however, are not protected by copyright law.  A closer examination of the actual works, as is routinely done at the pleading stage, reveals no protectable similarities.  Plaintiff's claims against defendants Twentieth Century Fox Film Corp. ("Fox"), Lightstorm Entertainment Inc. ("Lightstorm"), News Corp. and James Cameron ("Cameron") (collectively, "Defendants") should be dismissed.

To survive dismissal, Plaintiff must plead Defendants had access to his script and must establish that his work is substantially similar to the allegedly infringing works.  Plaintiff's claims of access are legally deficient, resting on speculative allegations that because various people knew each other they must have passed around Plaintiff's script.  The law requires a more direct and plausible pleading of access.  Beyond pleading deficiencies related to access, Plaintiff's claims suffer a more fundamental, incurable defect:  the works at issue are not substantially similar.  Substantial similarity requires, at a minimum, that the constituent parts of two works – *e.g.*, their plots, characters, settings, moods and themes – are alike.  Random, scattered similarity in individual elements, broad themes, or generic ideas cannot suffice.  *Avatar*, a futuristic science-fiction film set in a distant galaxy on a lush moon that is inhabited by exotic flora and fauna, and where humans interact with blue-skinned aliens, and *Taken*, a present-day action-thriller film about a father rescuing his daughter from a human trafficking ring in Paris, are very different films.  *Butterfly Driver* is dissimilar from both

---

[2] Plaintiff's previous cases are: *Briggs v. Blomkamp, et al.*, No. 4:13-cv-4679-PJH ( "*Briggs v. Blomkamp*"), *Briggs v. Universal Pictures, et al.*, No. 3:17-cv-6552-VC ("*Briggs v. Universal Pictures*") and *Briggs v. Spacey, et al.*, No. 3:18-cv-4952-VC ("*Briggs v. Spacey*").

*Avatar* and *Taken*; it tells the story of a hero's journey to escape wrongful imprisonment on a satellite, and to find medicine for his sick child.  The fact that Plaintiff alleges two very different films infringe the same screenplay further underscores the lack of merit to his claims.  It is entirely implausible that one underlying screenplay could have been copied to create both *Avatar* and *Taken*, and this conclusion is unavoidable when actually comparing *Butterfly Driver* to the films.

Plaintiff states that he plans to bring "future infringement actions," alleging still other films, including *The Hunger Games* and *WALL-E*, also infringe *Butterfly Driver*.  Compl. ¶ 573.  These threats further demonstrate the lack of merit of his claims here.  It simply defies all credibility that these very different (and some of the most profitable) films all infringe the same screenplay.  Taking into account his prior three actions and this action, Plaintiff is a serial, if not vexatious, litigant.[3]

Plaintiff's ancillary claims for intentional misrepresentation, breach of contract and breach of confidence also fail because Plaintiff does not sufficiently plead requisite elements of those claims, because they are time-barred, and, more substantively, because, again, the underlying works are not substantially similar.  Defendants therefore move this Court for an order dismissing Plaintiff's Complaint with prejudice and without leave to amend.  No amendment can possibly cure the lack of substantial similarity between *Butterfly Driver* and *Avatar* or *Taken*.

## II.    STATEMENT OF FACTS

The crux of Plaintiff's copyright claims is his assertion that the films *Avatar* and *Taken* both infringe his script titled *Butterfly Driver*.  Compl. ¶¶ 333-446; 453-502.  Plaintiff's claims for intentional misrepresentation, breach of contract, and breach of confidence also are based on his assertion that various defendants used ideas contained in *Butterfly Driver* without compensating Plaintiff.  Compl. ¶¶ 640-684.  Plaintiff's Complaint only offers convoluted, conclusory allegations of Defendants' access to *Butterfly Driver*.  Principally, he claims that in 2006 he contacted a literary

---

[3] Plaintiff also sued Sony Pictures Entertainment Inc. and others in 2013 in *Briggs v. Blomkamp*, alleging the 2013 film *Elysium* infringed *Butterfly Driver*.  This Court dismissed *Briggs v. Blomkamp* in 2014, but Plaintiff appealed it all the way to the Supreme Court, which denied review.  Plaintiff filed two more lawsuits – *Briggs v. Universal Pictures* in 2017 and *Briggs v. Spacey* in 2018 – alleging a scheme stemming from Plaintiff's submission of *Butterfly Driver* to TriggerStreet.com.  These new suits were a brazen attempt to re-litigate his prior lawsuit under the guise of implausible conspiracy claims against new parties.  This Court dismissed both actions in 2018.  In the instant case, Plaintiff asks the Court to "remand" *Briggs v. Blomkamp*.  Compl. ¶ 585.

agency called "Zero Gravity Management," which he also refers to as "ZGM," unsolicited, about sending the agency a script.  Compl. ¶ 2.  The Complaint alleges that individuals at ZGM were "close friends" with an individual at Fox, *id.* at ¶ 108, but Plaintiff does not allege how Defendants actually accessed the *Butterfly Driver* script.  He includes a diagram of various individuals and entities purportedly leading from Plaintiff, to ZGM, to Fox, but this offers no further clarity as to how any of the Defendants accessed his script.  *See id.* at ¶ 176; *see also id.* at ¶ 449 (claiming that the access allegations extend with respect to *Taken* because News Corp. and Fox "came to control the distribution rights of *Taken*").  Plaintiff's Complaint also references his placement of the *Butterfly Driver* screenplay on a website called TriggerStreet.com as part of his alleged theory of access.  *See, e.g.,* Compl. ¶¶ 290, 452, 581.

Plaintiff's Complaint claims there are similarities between *Butterfly Driver* and *Avatar*, *id.* at ¶¶ 333-446, and *Taken*, *id.* at ¶¶ 453-502, but the allegations show no *actionable* similarity.  Instead, Plaintiff only points to unprotectable, stock elements, such as the fact that *Butterfly Driver* and *Taken* both involve vehicle chases and explosions.  *See id.* at ¶ 478.  As explained in more depth in Section IV.A.2, *infra*, a review of the works themselves demonstrates they are not substantially similar as a matter of law.

## A. *Avatar* Synopsis

*Avatar* is a futuristic science-fiction film set on Pandora, a lush fictional moon in a distant galaxy far from Earth.[4]  The protagonist of *Avatar* is Jake Sully, a paraplegic ex-Marine who travels on a mission to Pandora.  Humans' operations on Pandora center on the mining of unobtanium, a valuable mineral.  The humans on Pandora work for the Resources Development Administration, called the "RDA," and they use specialized gear to survive in Pandora's atmosphere.

Pandora is also home to a blue, long-tailed humanoid species called the Na'vi.  Their society is based around harmony with nature and the interconnectedness between species.  Pandora's landscape is filled with exotic creatures, including many bioluminescent species, and floating

---

[4]  Defendants respectfully request that the Court take judicial notice of the films *Avatar* and *Taken*. *See* concurrently-filed Request for Judicial Notice with Exs. A and B.  *Marcus v. ABC Signature Studios, Inc.*, 279 F. Supp. 3d 1056, 1062-1062 (C.D. Cal. 2017) (taking judicial notice of DVD of allegedly infringing work).

MOTION TO DISMISS COMPLAINT

mountains.  To interact with the Na'vi, the RDA developed a method of genetically engineering

bodies – avatars – resembling the Na'vi, which human operators can control through a mental link.

Once Jake arrives on Pandora, he works primarily with Colonel Miles Quaritch and Dr. Grace

Augustine.  The Colonel is in charge of security, and Jake soon learns that the Colonel is developing

a plan to force the Na'vi out of their homes so that the RDA can mine unobtanium.  The Colonel tells

Jake that if he can find out what will entice the Na'vi to move off the land, Jake will be given a

government-funded surgery to reverse his paralysis.  In contrast to the Colonel, Dr. Augustine is

focused on studying the Na'vi and ensuring humans remain in harmony with the natives.

Using his avatar, Jake begins to explore Pandora, but he quickly ends up lost and threatened

by wolf-like predators.  A Na'vi named Neytiri arrives and saves him, fending off the creatures.  But

Neytiri is distrustful of Jake.  After jellyfish-like "woodsprites" float down from trees and land on

Jake, Neytiri takes this as a sign, and permits Jake to live.  He meets Neytiri's clan of Na'vi, who are

also initially distrustful.  However, they ultimately decide that Neytiri should train Jake in the Na'vi

ways in order to facilitate peaceful human-Na'vi relations and understanding.

Jake shifts back and forth daily between his human and avatar forms over the months that

follow.  While living as a Na'vi through his avatar, he learns to become a Na'vi warrior, including by

taming and riding dinosaur-like creatures.  When he switches to his human form, Jake provides

intelligence about the Na'vi to the Colonel.  Over time, Jake begins a romantic relationship with

Neytiri, becomes emotionally attached to the Na'vi and loses his allegiance to the RDA.

Before Jake can intervene, the RDA moves forward with plans to forcibly remove the Na'vi

from their land so it can be mined.  The Colonel destroys Neytiri's village, and Jake's secret alliance

with the RDA is exposed.  A battle ensues between the RDA and the Na'vi.  In his Na'vi body, Jake

is able to regain the Na'vi's trust, and he helps summon the Pandoran wildlife to attack the RDA.  In

a final fight scene, Neytiri kills the Colonel to save Jake.  After the RDA has been defeated, the

Na'vi use a ritual to transfer Jake's consciousness to his Na'vi body.  The film ends with Jake

becoming one of the Na'vi, bound together with Neytiri, and leaving his human form behind.

**B.** *Taken* **Synopsis**

*Taken* is an action-thriller film set in present-day United States and France.  The film depicts

a father's quest to rescue his daughter after she and her friend are kidnapped by human traffickers while on vacation in Paris.  Bryan Mills is the story's protagonist.  He previously worked in espionage and is highly skilled.  His ex-wife, Lenore, and daughter, Kim, live with Lenore's new husband.  When Kim asks to take a summer trip to Paris with her friend Amanda, Bryan initially hesitates, but he reluctantly agrees after Lenore pressures him.

Upon arrival in Paris, Kim and Amanda are almost immediately kidnapped.  Kim is on the phone with Bryan when the kidnappers enter the apartment where she is staying, and he tells her to call out physical descriptions of the kidnappers.  With the meager clues available, Bryan determines that the kidnappers are part of an Albanian human trafficking ring.  Bryan learns that he has only 96 hours to realistically find Kim, and he boards a flight to France.

In Paris, Bryan reaches out to Jean-Claude Pitrel, an old contact in the French intelligence agency.  Jean-Claude tells Bryan about an area of Paris known for human trafficking, and from there, Bryan follows a trail of clues tied to Kim, such as a jacket she was wearing when she left for Paris.  On this trail, Bryan finds Amanda's body.  She has presumably died from a forced drug overdose.  Bryan encounters other abducted girls, but, being singularly focused, he leaves them behind, saving only one in order to get more clues to find Kim.  At one point, Bryan captures one of Kim's kidnappers.  Bryan tortures and interrogates the kidnapper for information about Kim's whereabouts, eventually learning that Kim has been sold to a gangster called Saint-Clair.

In seeking out Saint-Clair, Bryan discovers Jean-Claude is corrupt.  He goes to Jean-Claude's house to violently demand information about where he can find Saint-Clair.  With the information he obtains, Bryan infiltrates an underground human trafficking auction.  He forces one of the bidders at gunpoint to buy Kim.  After a fight at the auction, Bryan is tied up, but escapes, and learns that Kim is in route to a yacht owned by a Sheik named Raman.  Bryan boards the yacht, where he finds Raman holding a knife to Kim's neck.  Bryan shoots and kills Raman, and saves Kim.  Back in Los Angeles, Kim is reunited with her mother and stepfather.

## C.  *Butterfly Driver* Synopsis

Plaintiff's script centers on the story of protagonist Arlo Grainer.[5]  *Butterfly Driver* revolves

---

[5] A copy of the *Butterfly Driver* script is attached as Exhibit X6 to Plaintiff's Complaint, Dkt. No.

MOTION TO DISMISS COMPLAINT

around a fictional city called Uberopolis, orbiting by satellite above Earth, which serves as both an upscale neighborhood and a privately-owned prison.  The story's villain is Peter Drexler, who is the owner of Uberopolis, President of the undefined "Global State," chief of a huge media conglomerate and a manufacturer of pharmaceutical drugs.

The script contrasts the lives of people living on a polluted Earth and those of the wealthy elite living in Uberopolis.  At the beginning of the story, Arlo lives on Earth in a "Zone" outside of the jurisdiction of the Global State, with his estranged wife and two children, one of whom has a chronic illness.  Arlo is a former Army pilot, who was kicked out of flight school due to occasional, debilitating headaches.  Near the beginning of the story, some of Arlo's colleagues are killed by bounty hunters, and Arlo is warned that the bounty hunters will soon seek out him and his family. The only way to keep his family safe is to send them to New York, which is in the Global State.  But in order to "repatriate" and rejoin the Global State, they will need $100,000.  To raise the money, Arlo accepts a risky job, called a "butterfly run."  On the butterfly run, he transports a scientist named Tamara Gwynn, who co-invented an energy device called an A-cell, across the country to Los Angeles.  Once they arrive in Los Angeles, police ambush them, and Tamara is killed.  Arlo is falsely accused of kidnapping and killing Tamara.  Arlo is sent to jail on Uberopolis to await trial, and federal agent Jerry Matthiessen is assigned to investigate.  Jerry agrees to take the case because he has been promised medical assistance for his sick son if Arlo is successfully prosecuted.

After Arlo sits in jail for four months, he eventually escapes and returns to Earth.  On Earth, Arlo finds his seven-year-old daughter, Franny, is near death and relying on a respirator to survive. Arlo learns that Franny needs a drug called "Drexlerin," which he believes he saw on Uberopolis.

On his journey back to Uberopolis, Arlo enlists Jerry – who was in the Army with Arlo – as an unwilling assistant.  Arlo forces a meeting with Drexler.  In the midst of the meeting, we learn that Drexler was also in the Army with Arlo but later assumed the identity of yet another soldier and is not the "real" Drexler.  Arlo threatens to use an A-cell device given to him by Tamara to destroy Uberopolis.  In a negotiation, Drexler agrees to give Arlo a vial of Drexlerin in exchange for the A-

1-16; *see also* Compl. ¶ 332 (authenticating Exhibit X6 as *Butterfly Driver* script).  Judge Hamilton's synopsis of *Butterfly Driver* can be found in the Order granting summary judgment in *Briggs v. Blomkamp*, Dkt. No. 86 at 3-7.

MOTION TO DISMISS COMPLAINT

cell.  A fight ensues and Drexler shoots Arlo, but Arlo escapes by diving into Uberopolis's harbor, finding an escape hatch with the help of a dolphin, and reaching a shuttle.  When Drexler finds Arlo again, Jerry saves Arlo by shooting Drexler with a stun-gun.  Arlo and Jerry pilot the shuttle away from Uberopolis, but they are targeted by an attack missile.  Arlo and Jerry fly the shuttle back toward Uberopolis, with the targeted missile following behind.  Just before the shuttle and missile collide with Uberopolis, Arlo and Jerry activate an evacuation pod, avoiding death.  Uberopolis is destroyed by the missile.  Back on Earth, Franny survives, but Jerry's son dies of respiratory illness.

### D.  **Plaintiff's Claims Against Defendants**

Plaintiff alleges claims for direct copyright infringement against all defendants in the case, Compl. ¶¶ 603-610, vicarious copyright infringement against Fox and News Corp., *id.* ¶¶ 611-617, intentional misrepresentation against Defendants, *id.* ¶¶ 623-652, and breach of contract and breach of confidence against Fox and News Corp., *id.* ¶¶ 663-684.

## III.    RULE 12(b)(6) STANDARDS

To survive a Rule 12(b)(6) motion for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A "court need not accept as true [] allegations that contradict facts that may be judicially noticed by the court[.]" *Shwarz v. U.S.*, 234 F.3d 428, 435 (9th Cir. 2000).  Courts may disregard "unreasonable inferences or . . . legal conclusions cast in the form of factual allegations."  *Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1248 (9th Cir. 2013).  Instead, a plaintiff must allege concrete *facts* raising the right to relief from merely "speculative" to "plausible."  *Twombly*, 550 U.S. at 555, 570.

Courts may "take judicial notice of generic elements of creative works," as well as "documents [including copies of works] which are not physically attached to the complaint but whose contents are alleged in [the] complaint and whose authenticity no party questions." *Zella v. The E.W. Scripps Co.*, 529 F. Supp. 2d 1124, 1128-1129 (C.D. Cal. 2007).[6]  Where "the copyrighted work and the alleged infringement are both before the court, capable of examination and comparison, non-infringement can be determined on a motion to dismiss."  *Cline v. Reetz-Laiolo*, 329 F. Supp. 3d

---

[6]  Emphases added and internal citations and quotations omitted throughout unless otherwise noted.

1000, 1037 (N.D. Cal. 2018) (Orrick, J.).

## IV.   PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM.

### A.   Plaintiff's Copyright Infringement Claims Fail Because Plaintiff Fails To Plausibly Allege Access And Cannot, As A Matter Of Law, Show Substantial Similarity.

Claims based on copyright infringement require (1) ownership of a copyright in a work, and (2) copying by a defendant of original elements of the work.  *See Zella*, 529 F. Supp. 2d at 1132 (granting motion to dismiss). [7]  A plaintiff can establish the copying requirement by either (1) direct evidence of copying, or (2) in the absence of direct evidence, showing that the defendant had access to the work *and* that the works at issue are substantially similar.  *Bissoon-Dath v. Sony Computer Entmn't Am., Inc.*, 694 F. Supp. 2d 1071, 1078 (N.D. Cal. 2010).  The Ninth Circuit uses both an "intrinsic" and an "extrinsic" test for substantial similarity.  *Funky Films, Inc. v. Time Warner Entmn't, Inc.*, 462 F.3d 1072, 1077 (9th Cir. 2006). [8]  For purposes of a motion to dismiss, only the "extrinsic" test is relevant, because it "depends on specific criteria which can be analyzed and decided as a matter of law."  *Campbell v. Walt Disney Co.*, 718 F. Supp. 2d 1108, 1112 (N.D. Cal. 2010) (granting motion to dismiss).

Under the extrinsic test, courts analyze "objectively compar[able]" similarities between the "plot, themes, dialogue, mood, setting, pace, characters, and sequence of events" to determine whether substantial similarities exist between two works.  *Rentmeester*, 883 F.3d at 1118 (brackets removed).  Extraneous or conclusory allegations that contradict the underlying works must be disregarded.  *Walker v. Time Life Films, Inc.*, 615 F. Supp. 430, 434 (S.D.N.Y. 1985) (when

---

[7] A claim for vicarious copyright infringement requires underlying direct infringement.  *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004).  Because Plaintiff's direct infringement claim fails, his vicarious infringement claim must also be dismissed.  *See, e.g., Fox Broad. Co. v. Dish Network*, 747 F. 3d 1060, 1068 (9th Cir. 2014) (if a claim for direct copyright infringement fails, accompanying claim for vicarious infringement also fails).

[8] The Ninth Circuit overruled in part a line of cases including *Funky Films*, *Benay v. Warner Bros. Entmn't, Inc.*, 607 F.3d 620 (9th Cir. 2010), and *Rentmeester v. Nike, Inc.*, 883 F.3d 1111 (9th Cir. 2018), on unrelated grounds in *Skidmore as Trustee for Randy Craig Wolfe Trust v. Zeppelin*, 952 F.3d 1051, 1067 (9th Cir. 2020).  *Skidmore*'s disapproval is limited to these cases' statements that a higher degree of evidence of access permits a lower showing of substantial similarity.  *Skidmore*, 952 F.3d at 1068-1069.  As explained in more detail herein, this case does *not* involve a high degree of evidence of access, but, in any event, Defendants do ***not*** argue for a lower substantial similarity standard.  The cases' other propositions remain good law, and *Skidmore* even cites to *Funky Films* approvingly for authority on the workings of the extrinsic test.  *See id.* at 1064.

MOTION TO DISMISS COMPLAINT

considering allegations of copyright infringement, "the works themselves supersede and control contrary . . . descriptions of the works as contained in the pleadings").  Courts compare "not the basic plot ideas for stories, but the actual concrete elements that make up the total sequence of events and the relationships between the major characters." *Funky Films*, 462 F.3d at 1077.  "[I]deas … [elements] from the public domain, …  instances in which a particular expression at issue merges with the idea being expressed … and … instance[s] in which the form of the expression is so standard in the treatment of a given idea that it constitutes scenes a faire" must all be filtered out. *Cline*, 329 F. Supp. 3d at 1038.  Filtering is critical to ensure the analysis considers "only whether the *protectable elements, standing alone* are substantially similar." *Funky Films*, 462 F.3d at 1077 (emphasis in original).

Courts will grant a motion to dismiss an infringement claim if the underlying works are not substantially similar as a matter of law.[9]  Lack of substantial similarity is a "defect [that] cannot be cured by amendment[.]" *Campbell*, 718 F. Supp. 2d at 1116.

### 1.   Plaintiff Fails To Plausibly Allege Defendants' Access To His Work.

Where a complaint does not allege direct copying of a work—*i.e.*, does not allege reproduction, but rather alleges unauthorized borrowing—a plaintiff must show that the defendants had access to the original work.  *See Berkic v. Crichton*, 761 F.2d 1289, 1291 (9th Cir. 1985).  Implausible allegations of access will not suffice.  *Art Attacks Ink, LLC v. MGA Entmn't Inc.*, 581 F.3d 1138, 1143 (9th Cir. 2009) (affirming grant of motion for judgment as a matter of law and holding that "[t]o prove access, a plaintiff must show a *reasonable possibility*, not merely a bare possibility, that an alleged infringer had the chance to view the protected work"); *Hayes v. Keys*, No. CV 14-6246 PA, 2015 WL 12734010, at *2 (C.D. Cal. Jan. 7, 2015) (granting motion to dismiss and

---

[9] *See, e.g.*, *Christianson v. W. Pub'lg Co.*, 149 F.2d 202, 203 (9th Cir. 1945); *Cline*, 329 F. Supp. 3d at 1041; *Schkeiban v. Cameron*, No. CV 12-0636, 2012 WL 5636281, at *2 (C.D. Cal. Oct. 4, 2012) (dismissing infringement claim involving *Avatar*); *Van v. Cameron*, No. 10cv1051, 2011 WL 13121345, at *3-4 (S.D. Cal. July 13, 2011) (same); *Marcus*, 279 F. Supp. 3d at 1065; *Silas v. HBO*, 713 F. App'x 626, 627 (9th Cir. 2018) (affirming dismissal of claim that series *Ballers* infringed plaintiff's work); *Esplanade Prods, Inc. v. Walt Disney Co.*, CV 17-02185, 2017 WL 5635027, at *53 (C.D. Cal. Nov. 8, 2017) (dismissing claim that film *Zootopia* infringed plaintiff's proposed franchise, also called *Zootopia*); *Abdullah v. Walt Disney Co.*, No. 2:15-cv-09581-SVW-JPR, 2016 WL 5380930, at *9 (C.D. Cal. Mar. 14, 2016) (dismissing claim that film *Frozen* infringed well-known children's author's story).

holding that "Plaintiffs must allege facts establishing more than a 'bare possibility'" of access).

Identifying "potential intermediaries" through whom a defendant *could* have gotten access to an

underlying work is "no[t] evidence of a nexus." *Loomis v. Cornish*, 836 F.3d 991, 996 (9th Cir.

2016). And "corporate receipt of [an] unsolicited work" is insufficient "where there is no evidence

of any connection between the individual recipients of the protected work and the alleged

infringers." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 48 (9th Cir. 2003). As this Court held in

one of Plaintiff's prior cases, even if a plaintiff attempts to claim access through a "chain of events,"

the chain still cannot be "speculative." *Briggs v. Blomkamp*, Dkt. No. 86 at 14-15.

Plaintiff alleges various theorized or hypothetical routes and intermediaries by which

Defendants could have accessed *Butterfly Driver*. He alleges that he sent "ZGM" the script, then-

titled *Uberopolis: City of Light*, Compl. ¶¶ 2, 332, but he does not allege any direct path from ZGM

to Fox, Lightstorm, News Corp. or Cameron.[10] ZGM's alleged receipt of *Butterfly Driver* does not

prove access by *these* Defendants. *See Jorgensen*, 351 F.3d at 48. Plaintiff's allegations that

individuals at ZGM were "close friends" with an individual at Fox, Compl. at ¶ 108, merely recount

"potential intermediar[ies]," which is insufficient to show access. *Loomis*, 836 F.3d at 996.

Plaintiff's diagram of various individuals and entities supposedly leading from Plaintiff, to ZGM, to

Fox and Cameron also does nothing more than provide a purported and unhelpful visual

representation of Plaintiff's weak and theoretical speculations regarding access. *See id.* at ¶¶ 176,

449. And any attempt to establish access through Plaintiff's alleged posting of *Butterfly Driver* on

TriggerStreet.com must fail, *see, e.g.*, Compl. ¶¶ 290, 452, 581, as this Court already addressed and

rejected this exact allegation in a prior case brought by Plaintiff, calling it "entirely speculative."

*Briggs v. Blomkamp*, Dkt. No. 86 at 14. Claiming that a screenplay was posted on a website that was

regularly accessed by "media-savvy" filmmakers based in the "screenwriting hub of the world" does

not, even at best, do "more than suggest a bare possibility of access." *Id.* at 14-15.

Plaintiff's allegations of access fall short, and his case can be dismissed on this basis alone.

*See Star Fabrics, Inc. v. Wet Seal, Inc.*, No. CV 14-07163, 2014 WL 12591271, at *4 (C.D. Cal.

---

[10] Plaintiff does not make clear whether "ZGM" refers to defendant Zero Gravity, or some other
entity. For clarity, Defendants quote from Plaintiff's Complaint and do not presume or concede the
entity to which Plaintiff refers.

Dec. 2, 2014) (dismissing case where the plaintiff "fail[ed] to allege any concrete facts specifically linking [defendant] to the protected [work] . . . by a chain of events").

### 2. *Butterfly Driver* **Is Not Substantially Similar To Either** *Avatar* **or** *Taken*.

Plaintiff has not and cannot, *as a matter of law*, show that *Butterfly Driver* is substantially similar to either *Avatar* or *Taken*. Even were access adequately pled (and it is not), without substantial similarity between the works, Plaintiff's copyright claims fail and any amendment would be futile. *See Bissoon-Dath*, 694 F. Supp. 2d at 1078. Where it is apparent from the works themselves that there is no substantial similarity, copyright claims can be dismissed at the pleading stage. *See supra* n. 9.

### a. **Plaintiff's Alleged Similarities Are Unprotectable Elements Which Must Be Filtered Out From The Court's Analysis.**

Copyright protects only the "expression[s] . . . that display the stamp of the author's originality." *Harper & Row Publ'rs, Inc. v. Nation Enters.*, 471 U.S. 539, 547 (1985). A smattering of "random similarities scattered throughout works are insufficient" to show substantial similarity. *Schkeiban*, 2012 WL 5636281, at *2 (dismissing infringement claim involving *Avatar*).

Plaintiff's Complaint repeatedly refers to generic elements that appear in many stories, including: a hero as a "visionary dreamer" (¶ 346.4); environmentalism or pollution as a concern (¶ 352); the concept of a hero nearly dying, but being saved by a secondary hero (¶¶389-395); corporations and the "heartless government" serving as a story's villains (¶¶ 414-416); societal divisions (¶¶ 436-439); car chases (¶¶ 478-479); and an overall mood that is "very dark, with a hopeful ending" (¶ 424).[11] Plaintiff also claims that he is the inventor of stock elements which *Avatar* and *Taken* supposedly infringe, including the "primacy of family," the "importance of

---

[11] Plaintiff's rambling 845-page Complaint purports to compare a 120-page script and two separate films. The Complaint violates Federal Rule of Civil Procedure 8(a)'s requirement that plaintiffs state their claims in a "short and plain" manner. *See McHenry v. Renee*, 84 F.3d 1172, 1179-1180 (9th Cir. 1996) (disallowing "argumentative, prolix, replete with redundancy, and largely irrelevant" pleading). For Defendants to respond, they must reengineer the Complaint to form an intelligible summary, which "impose[s an] unfair burden[] on litigants and judges." *Id.* at 1179-1180. Moreover, because of the voluminous and unwieldy nature of the Complaint, Defendants necessarily leave out some of the more extraneous allegations. *See Alfred v. Walt Disney Company*, 388 F. Supp. 3d 1174, 1181 (C.D. Cal. 2019) ("The Court need not explain in its analysis every alleged similarity in a copyright infringement case and may properly disregard alleged similarities that are not protectable").

MOTION TO DISMISS COMPLAINT

respecting and protecting the environment," and the "horror of corporate greed."  Compl. ¶ 343.[12]

Such general ideas and concepts "are not protected by copyright law; they remain forever the

common property of artistic mankind."  *Berkic*, 761 F.2d at 1293; *see also Alfred*, 388 F. Supp. 3d at

1181, 1183 ("staples" within genres are not protectable; in a pirate movie, "[t]he idea of cursed

pirates is scenes-a-faire and unprotectable").  These unprotectable elements should be filtered out

before the Court applies the "extrinsic" test.  *Rentmeester*, 883 F.3d at 1118 (affirming grant of

motion to dismiss after filtering out stock elements).

      Courts regularly reject infringement claims on motions to dismiss where works share far

more in common than the works here.  For example, in *Funky Films*, 462 F.3d at 1081, the court

declined to find substantial similarity where both works included general plot ideas involving a

"family-run funeral home, the father's death, and the return of the 'prodigal son,' who assists his

brother in maintaining the family business."  Similarly, in *Alfred*, 388 F. Supp. 3d at 1183, the court

held that a host of generic elements across two works—including "treasure maps, ghost pirates, the

'undead,' the supernatural, ships flying black sails, skeletons, privateers, naval attacks, dark fog, the

'pirate code,' ghosts, and sea monsters" did not amount to *substantial* similarity.  In *Marcus*, 279 F.

Supp. 3d at 1066, the court observed that "[w]hile both works involve African American families

living in predominately white areas, the *concrete* elements of the two works are not substantially

similar."  The court in *Olson v. National Broadcasting Co.*, 855 F.2d 1446, 1450 (9th Cir. 1988),

held that there is no substantial similarity between two works depicting "group action-adventure

series designed to show Vietnam veterans in a positive light."  In *Cavalier v. Random House*, 297

F.3d 815, 824 (9th Cir. 2002), the court agreed with defendants that there was no protection for the

"general premise of a child, invited by a moon-type character, who takes a journey through the night

sky and returns safely to bed to fall asleep."  In *Benay*, 607 F.3d at 625, the court found no

substantial similarity despite the fact both works "share[d] the historically unfounded premise of an

---

[12] Plaintiff picks and chooses elements from *Butterfly Driver* to allege substantial similarity to
*Avatar* and *Taken*, while leaving out other elements that do not appear in the films.  Plaintiff's
selections reveal how far he will stretch.  For instance, in *Briggs v. Blomkamp*, Plaintiff focused on
the alleged similarities between *Butterfly Driver* and *Elysium*—the film at issue in that case—
referring to keepsake necklaces, satellites, and negotiations with insurance companies.  *See Briggs
v. Blomkamp*, Dkt. No. 63, at 10-15.  But because those elements do not appear in *Avatar* or *Taken*,
Plaintiff does not reference them in this round of litigation.

1    American war veteran going to Japan to help the Imperial Army by training it in the methods of

2    modern Western warfare for its fight against a samurai uprising."  And in *Berkic*, 761 F.2d at 1293,

3    the court found no substantial similarity among works describing "criminal organizations that

4    murder healthy young people, then remove and sell their vital organs to wealthy people in need of

5    organ transplants."

6        Here, *Butterfly Driver* is not even superficially similar to *Avatar* or *Taken,* and it is far less

7    similar to these films than the works at issue in *Funky Films*, *Alfred, Marcus*, *Olson, Cavalier*,

8    *Benay*, and *Berkic*, where courts found no substantial similarity as a matter of law.  In all of these

9    cases, any similarities were not protected by copyright law.  The same is true here.  As a result,

10   Plaintiff's copyright claims should be dismissed.

11            **b.   *Avatar* And *Butterfly Driver* Are Not Substantially Similar.**

12       After filtering out unprotectable elements, an analysis of the "plot, themes, dialogue, mood,

13   setting, pace, characters, and sequence of events" shows that *Avatar* and *Butterfly Driver* are not

14   remotely similar.  *See Rentmeester*, 883 F.3d at 1118 (internal brackets omitted).

15       ***Plot and Sequence of Events.***  Plaintiff's allegations of similarity between *Butterfly Driver*

16   and *Avatar* hinge on the purportedly common idea of a war veteran-hero embarking on a mission

17   related to environmentalism.  *See* Compl. ¶¶ 345-352.  But "[a]side from that rather uneventful

18   [alleged] similarity," "the plots of the two stories develop quite differently."  *Funky Films*, 462 F.3d

19   at 1078.  *Avatar* tells the story of a young, single and childless protagonist who is sent to work on an

20   alien moon as part of a mining operation to enrich a greedy Earth-based corporation.  He physically

21   transforms into one of the aliens through the use of a genetically-engineered alien body, falls in love

22   with one of the aliens, and helps save the moon from destruction at the hands of the corporation.  In

23   contrast, *Butterfly Driver* chronicles the journey of a man who is first wrongly accused of a crime,

24   then escapes custody, eventually goes on a mission to find medicine for his sick child (not to save the

25   environment) and destroys a satellite city that circles earth and is controlled by a corrupt politician.

26   The main plot points of *Butterfly Driver* do not appear in *Avatar*.  The Complaint specifically calls

27   out the *lack* of any romantic storyline in *Butterfly Driver, see* Compl. ¶ 458, while *Avatar*'s romantic

28   story is a big part of the film.  The Complaint also discusses the "unique" element of *Butterfly*

MOTION TO DISMISS COMPLAINT

*Driver*'s hero being "focused on his kids and being a good father," but the hero in *Avatar* has no

children. *See id.* Similarly, main plot points at the very core of *Avatar* do not appear in *Butterfly*

*Driver*. There is no interaction between humans and an alien race in *Butterfly Driver*, and there is no

use of avatars to allow humans to engage in such interaction.

The Ninth Circuit has declined to find substantial similarity where two works share a

general premise, but tell their stories in a different way. *See*, *e.g.*, *Benay*, 607 F.3d at 625 (finding no

substantial similarity despite the fact both works "share[d] the . . . premise of an American war

veteran going to Japan to help the Imperial Army by training it in the methods of modern Western

warfare"). Here, the concept of a hero taking on a powerful/industrial villain with references to

environmentalism has been the subject of numerous films, including the *The Fifth Element*,

*Silkwood*, *A Civil Action* and *The Matrix*, among many others.[13] Disregarding the generic elements,

*Butterfly Driver*'s and *Avatar*'s plot and sequence of events have nothing in common.

**Themes.** The works are also dissimilar thematically. "A work's theme is its overarching

*message*," *Silas v. HBO*, 201 F. Supp. 3d 1158, 1180 (C.D. Cal. 2016), and "general similarities

between [] themes, such as saving the world or battles between good and evil are not subject to

copyright" protection, *Schkeiban*, 2012 WL 5636281, at *2. Plaintiff claims that *Butterfly Driver*

and *Avatar* share themes of the importance of family and the dangers of a toxic/polluted

environment, but even there, the works send different *messages*. *Butterfly Driver* is about a hero's

quest to heal his daughter whereas *Avatar* promotes a theme of romantic love and

interconnectedness, neither of which are present in *Butterfly Driver*. And while *Butterfly Driver*

references Earth's pollution on occasion, a constant and recurring theme of *Avatar* is the importance

of nature and the contrast between those who seek to exploit the environment for commercial gain

and those who find peace and contentment enjoying nature's beauty and grandeur.

**Dialogue.** The works do not have any actionable similarity in dialogue. "*[E]xtended*

*similarity* of dialogue [is] needed to support a claim of substantial similarity." *Olson*, 855 F.2d at

1450. Plaintiff's allegations only point to random, disjointed similarities in dialogue between the

---

[13] *See* https://en.wikipedia.org/wiki/The_Fifth_Element; https://en.wikipedia.org/wiki/Silkwood; https://en.wikipedia.org/wiki/A_Civil_Action_(film); https://en.wikipedia.org/wiki/The_Matrix.

MOTION TO DISMISS COMPLAINT

two works.  *See*, *e.g.*, Compl. ¶¶ 427-429 (alleging that *Butterfly Driver* uses the phrase "**earns** a soul in this life," and *Avatar* uses the phrase "**earn** your place among the people forever") (emphasis in Complaint); 432-435 (alleging that the works use similar "post 9-11 slogans" where a character in *Butterfly Driver* says "I don't negotiate with State enemies," and a character in *Avatar* says "we're going to fight terror with terror").  These phrases are not identical.  Even if they were, however, short, stock phrases like these cannot amount to substantial similarity across two works' dialogue.  *See Marcus*, 279 F. Supp. 3d at 1069 (two-word phrase of "being black," "used once in each work . . . can in no way be construed as 'extended similarity of dialogue'"); *Southco, Inc. v. Kanebridge Corp.*, 390 F.3d 276, 285-287 (3d Cir. 2004) (words and short phrases are not copyrightable).  Plaintiff's allegations of similarity in dialogue are nowhere near the required "extended similarity of dialogue."  *Olson*, 855 F.2d at 1450.

**Mood.**  Courts often look to overall tone, tendencies toward lightness or darkness, and pervasive elements to define a story's mood.  *See Shame on You Prods., Inc. v. Banks*, 120 F. Supp. 3d 1123, 1158 (C.D. Cal. 2015) ("pace[]" and "genre" affect a story's mood); *Alfred*, 388 F. Supp. 3d at 1188-1189 (discussing moods in terms of "lighthearted[ness]," "comedic relief," and "dark[ness]").  *Butterfly Driver* is an action/science-fiction/noir story involving state-sanctioned murder, wrongful imprisonment, childhood illness, and class divisions across different "zones" on Earth.  *Avatar* is a fantasy/romance/action film involving harmony with nature, advanced technology, and interspecies relations with a humanoid alien clan.  These differences create distinct moods.  *See Shame on You Prods., Inc.*, 120 F. Supp. 3d at 1158 ("general mood . . . flows naturally from unprotectable basic plot premises").  Whereas *Butterfly Driver* involves several violent physical struggles throughout the plot, *Avatar* focuses for long stretches on the protagonist's exploration of the Pandoran jungle, his increasing level of communion with nature and the peaceful Na'vi clan, and his burgeoning relationship with Neytiri.  Action scenes make up a significantly smaller portion of *Avatar* than *Butterfly Driver*, and thus the moods are quite different.

**Setting.**  Plaintiff's Complaint concedes that "[t]he setting on Pandora is very different from the Plaintiff's work [*Butterfly Driver*]."  Compl. ¶ 409.  *Avatar* is set on Pandora, a fictional moon teeming with jungle landscapes, floating mountains, waterfalls, and bioluminescent flora and fauna.

MOTION TO DISMISS COMPLAINT

*Butterfly Driver* is set on Earth, with portions also taking place on Uberopolis, an urban satellite with a prison.  The settings are completely distinct.  The court in *Van*, 2011 WL 13121345, at *3, analyzed the setting in *Avatar*, finding no similarity to the plaintiff's work even where it featured "a planet away from Earth . . . homes made in the trees . . . and [] space ships [from] Earth."  These settings were far more similar than the settings at issue here; *Butterfly Driver* does not feature travel to a celestial body populated by an alien race in another galaxy, the primary setting of *Avatar*.  The general concept of settings in space—and more specifically in *Van*, a "beautiful planet filled with many colors"—is unprotectable *scènes à faire*.  *Id.*

  **Pace.**  *Butterfly Driver* has spikes of action mixed with downtime: people are killed by bounty hunters; Arlo travels to New York, sees his children and meets Tamara, and then goes to Los Angeles where he is ambushed by police ambush; Arlo is sent to prison in Uberopolis for four months and then escapes; he returns to Earth, sees his children again, and then goes back to Uberopolis; Arlo fights with Drexler and narrowly avoids a missile before Uberopolis is destroyed.  In *Avatar*, the primary pace is pastoral, calm and contemplative until the end.  Jake discovers nature and the Na'vi way as he slowly falls in love with Neytiri and earns the respect of her family.

  **Characters.**  After filtering out the unprotectable elements of *Butterfly Driver* and *Avatar*, the characters bear no resemblance to one another.  To receive copyright protection, characters must be "especially distinctive" and "contain some unique elements of expression."  *DC Comics v. Towle*, 802 F.3d 1012, 1021 (9th Cir. 2015); *see also Van*, 2011 WL 13121345, at *3 (no substantial similarity of characters where "[a]side from the very general similarities . . . there are many important differences between the characters in the two works").  *Seemingly* similar characters are not *substantially* similar where they "have noticeable differences."  *Silas*, 201 F. Supp. 3d at 1177.

  Arlo and Jake are not even close to being similar.  Jake is not married, has no children, and his motivation at the beginning of the story is to afford surgery to reverse his paralysis.  In contrast, Arlo's primary motivation is to help heal his daughter's chronic illness.  Plaintiff attempts to show similarity by alleging that both characters are ex-military, both are allegedly "visionary dreamer[s]," and both are disabled.  *See* Compl. ¶ 346.  These generic concepts are unprotectable.  *See Berkic*, 761 F.2d at 1293 (such concepts are the "common property of artistic mankind").  Other than these

MOTION TO DISMISS COMPLAINT

unprotectable similarities between the two characters, there are no similarities between the protagonists of *Butterfly Driver* and *Avatar*. Moreover, the characters' disabilities are completely different: Arlo suffers from occasional severe headaches, but Jake is a paraplegic. *See* Compl. ¶ 346.

In *Van*, 2011 WL 13121345, at *3, the court determined that Jake from *Avatar* differed from the protagonist in the *Van* plaintiff's work in part because the plaintiff's protagonist focused on charity work in a foreign country and fell in love with a human man, whereas Jake travels to a remote moon for a job and falls in love with a member of an alien species. *Id.* Arlo has no romantic storying, making *Butterfly Driver* is even less similar to Jake from *Avatar* than the plaintiff's protagonist in *Van*.

Beyond the protagonists, drawing similarities between other characters in the stories is an apples-to-oranges exercise. Plaintiff alleges the existence of an elitist corporate villain as well as a female scientist in both stories, but these are generic elements. Sharing the same background or occupation does not make characters substantially similar. *See Alfred*, 388 F. Supp. 3d at 1185 (pirate captains not substantially similar); *Flaherty v. Filardi*, No. 03 Civ. 2167, 2009 WL 749570, at *16 (S.D.N.Y. Mar. 20, 2009) ("Although both draft screenplays have an attorney protagonist . . . the attorneys are very different"). In addition, the *Butterfly Driver* screenplay includes references to many apparently transitory characters with no analog to characters in *Avatar*—for example, Jerry the federal investigator, Arlo's wife and children, and a fellow prisoner Arlo befriends on Uberopolis. And perhaps most important of all, the central characters in *Avatar*—the Na'vi—find no parallel in *Butterfly Driver*. There are no alien creatures in *Butterfly Driver*—much less ten-foot-tall, blue, humanoids with tails, who have their own language, and around whom the story revolves.

### c.  *Taken* And *Butterfly Driver* Also Are Not Substantially Similar.

*Plot and Sequence of Events.* As with *Avatar*, Plaintiff's allegations of similarity between *Butterfly Driver*'s and *Taken*'s plots describe only unprotectable commonalities. *See* Compl. ¶¶ 447-502. *Taken*'s plot and sequence of events are unrelenting. *Taken* is the story of a father's mission to rescue his kidnapped daughter from a human trafficking ring, and the horrors of human trafficking necessarily dictate the story's sequence of events. The protagonist's daughter is kidnapped early in the plot, and the action advances forward from that point on, depicting a linear rescue mission.

MOTION TO DISMISS COMPLAINT

In contrast, *Butterfly Driver*'s plot meanders.  First, protagonist Arlo accepts a risky job to obtain money to help his family escape from bounty hunters.  Then, he is wrongly accused of a crime and spends months in jail.  After escaping custody, he learns the severity of his daughter's illness, and then seeks to find medicine for her.  Plaintiff latches onto the idea that both protagonists embark on missions to save their daughters in *Butterfly Driver* and *Taken*, Compl. ¶ 486-487, but this is a generic similarity containing no protectable expression.[14]  The overall plots and sequences of events are distinct, and the *details* of the missions are profoundly different.  Moreover, a parent's motivation to save and protect a child is among the most universal motivations imaginable and is featured in many films.[15]   Disregarding the "uneventful similarit[ies]" of the stories, they feature "quite different[]" plots.  *Funky Films*, 462 F.3d at 1078.

*Themes.*  The distinctive plotlines of *Butterfly Driver* and *Taken* contribute to their differing themes.  In *Butterfly Driver*, Arlo interfaces with a greedy political villain, with occasional references to the harmful nature of societal divides and pollution on Earth.  *Taken*'s message is laser focused: a parent will use every skill, resource and method imaginable to rescue a kidnapped child.  *Taken* does not engage in loftier goals; indeed, the protagonist, Bryan, leaves behind many other kidnapped girls.  Plaintiff attempts to draw a comparison by pointing out that Bryan causes some destruction in Paris on his path to save his daughter, and that Arlo completely destroys Uberopolis.  Compl. ¶ 483.  But while Bryan happens to leave behind a path of mayhem in *Taken* in his determination to save his daughter, Arlo's escape from Uberopolis results in its total destruction by a missile.[16]  These distinct elements of the works do not at all point to a common theme.  Most importantly, the works do not share an "overarching message."  *Silas*, 201 F. Supp. 3d at 1180.[17]  *See*

---

[14] Plaintiff also alleges in passing that the films *Taken 2* and *Taken 3* infringe on *Butterfly Driver*, Compl. ¶ 447, but he makes no specific allegations regarding those films, which are even less similar than *Taken*.  All rights are reserved with respect to *Taken 2* and *Taken 3*.

[15] *See*, *e.g.*, *Ransom*, https://en.wikipedia.org/wiki/Ransom_(1996_film); *Not Without My Daughter*, https://en.wikipedia.org/wiki/Not_Without_My_Daughter_(film); *Man On Fire*, https://en.wikipedia.org/wiki/Man_on_Fire_(2004_film).

[16] The imagery of a trail of destruction is not at all uncommon in action movies, and has been depicted in many films, for example *Independence Day*, *Terminator 2: Judgment Day* and *Blade Runner*.  *See* https://en.wikipedia.org/wiki/Independence_Day_(1996_film); https://en.wikipedia.org/wiki/Terminator_2:_Judgment_Day; https://en.wikipedia.org/wiki/Blade_Runner.

[17] Plaintiff also bizarrely alleges that "immigration" is a theme of both *Butterfly Driver* and *Taken*.

MOTION TO DISMISS COMPLAINT

*also Bisson-Dath*, 694 F. Supp. 2d at 1083 (finding a dissimilar theme in part because "[w]hile violence is not absent from plaintiffs' works, it lacks the thematic centrality and intensity seen in [defendant's work]").

**Dialogue.**  The two works have nothing close to the "extended similarity of dialogue" "needed [for] substantial similarity."  *Olson*, 855 F.2d at 1450.  Here again, Plaintiff only points to short, generic snippets of alleged similarity of dialogue.  *See*, *e.g.*, Compl. ¶¶ 497-499 (alleging that characters in both *Butterfly Driver* and *Taken* refer to the government as "the state"); 475-477 (references in the dialogues of *Butterfly Driver* and *Taken* to "paranoia" or being "paranoid").  Individual words or phrases cannot support substantial similarity.  *Marcus*, 279 F. Supp. 3d at 1069.

**Mood.**  Plaintiff describes *Butterfly Driver*'s mood as "very dark, with a hopeful ending."  *Id.* at ¶ 424.  Aside from this being a highly generalized, unprotectable element, it is also not particularly descriptive of the work itself.  *See Shame On You Prods.*, 120 F. Supp. 3d at 1158 (no substantial similarity with respect to mood where both works were "light-hearted comedies").  Whereas *Taken* is a dark, fast-paced thriller, *Butterfly Driver* has moments of lightness and a varied pace that differentiates it from the mood of *Taken*.  In *Butterfly Driver*, protagonist Arlo finds time to pause and reflect, befriend people, and even connect with a dolphin.  In contrast, *Taken*'s protagonist Bryan seemingly foregoes sleep and connection with anyone else during his supercharged quest to find his daughter.  This contributes to an overall darker, more intense mood than *Butterfly Driver*.

**Setting.**  Plaintiff makes no allegations about similarity of the settings, and none can be drawn from the works.  *Butterfly Driver* takes place in a futuristic, post-societal United States and an orbiting satellite city; whereas *Taken* is set primarily in present-day Paris, France.

**Pace.**  The paces of *Butterfly Driver* and *Taken* are also fundamentally different.  The pace of *Butterfly Driver* unfolds over several months, with Arlo spending four months in jail.  Not-insignificant portions of plot take place prior to that, and then Arlo's week-long mission to help his daughter commences once he escapes custody.  In contrast, the entire plot of *Taken* occurs over a

---

*See* Compl. ¶¶ 493-494.  The only support he offers for this allegedly shared theme is that in *Butterfly Driver*, Arlo's family must immigrate from the "Zone" where they live to the "State," and in *Taken*, the villains are Albanian immigrants to France.  *See id.*  This threadbare alleged commonality cannot support a finding of substantial similarity.

MOTION TO DISMISS COMPLAINT

few days.  *See Campbell*, 718 F. Supp. 2d at 1115 ("[t]he time period within which a movie is set is a factor for determining the pace of the movie").  Plaintiff claims a similarity exists because both stories involve a time constraint, but the concept of a fixed amount of time is an unprotectable element.  *See Alfred*, 388 F. Supp. 3d at 1187 (concept of specific amount of time passing—in *Alfred*, 10 years—is "generic and not protectable").  A fast pace is stock for the thriller genre, but genres are not protectable.  *See Shame on You Prods*, 120 F. Supp. 3d at 1155.

   *Characters.*  Arlo and Bryan have little in common beyond generic, surface-level characteristics.  A lower-income, family-driven, strong-willed hero is a general archetype for which copyright protection is not given.  *See*, *e.g.*, *Basile v. Sony Pictures Entmn't, Inc.*, No. CV 14-04264, 2014 WL 12521344, at *6 (C.D. Cal. Aug. 19, 2014) ("archetypes . . . such as a 'blonde, blue-eyed hero," [] are thus not 'distinctive' enough to be protectable"); *Fulks v. Knowles-Carter*, 207 F. Supp. 3d 274, 290 (S.D.N.Y. 2016) (the concept of an "ominous figure" is unprotectable).  In addition, staples of a particular archetype cannot result in a finding of substantial similarity.  *Alfred*, 388 F. Supp. 3d at 1185 (finding no substantial similarity between two stereotypical pirate captain characters, noting, "cockiness, bravery, and drunkenness are generic, non-distinct characteristics which are not protectable").  Plaintiff does not point to any unique characteristics of the protagonists that are similar.  *See* Compl. ¶ 458.  Plaintiff also makes much of Arlo's central disability (his recurrent headaches) with respect to *Avatar*, but he does not allege any correlating attribute in Bryan, the protagonist of *Taken*, who seems nearly invincible.  *See* Compl. ¶ 346.

   The only other character in *Taken* from which Plaintiff tries to draw comparisons is Bryan's daughter, Kim.  Compl. ¶¶ 488-490.  Plaintiff alleges that both Kim and the daughter in *Butterfly Driver*, Franny, have a young "spirit," though he acknowledges that Franny is seven years old, whereas Kim is seventeen.  *Id.*  The concept of a daughter at any age is not remotely unique, however, and therefore this cannot serve as a basis for finding substantial similarity.

   *Butterfly Driver* includes several characters for which *Taken* has no counterparts.  Unlike Drexler's extended presence and developed backstory in *Butterfly Driver*, the villains in *Taken* are mostly amorphous, undeveloped characters with no story beyond their nefarious involvement in human trafficking.  And there is no analog in *Taken* for Jerry, the federal-investigator-turned-ally to

1   the protagonist.  *See Funky Films*, 462 F.3d at 1078-1079 (finding no character similarity where

2   several characters had "no counterpart" in the plaintiff's work).

3                                                                         ***

4          Neither *Avatar* nor *Taken* is substantially similar to *Butterfly Driver*.  Indeed, *Avatar* and

5   *Taken* are not remotely similar to one another, and so it is illogical that they could both be derived

6   from the same screenplay.[18]  As a matter of law and in light of the above, Plaintiff's copyright claims

7   fail and must be dismissed with prejudice.  *Campbell*, 718 F. Supp. 2d at 1116 (lack of substantial

8   similarity cannot be cured by amendment).

9          **B.  Plaintiff's Ancillary Claims For Intentional Misrepresentation, Breach of Contract**

10              **and Breach of Confidence Also Fail As A Matter Of Law.**

11                  **1.  Plaintiff's Ancillary Claims Are Time-Barred.**

12         The statute of limitations for intentional misrepresentation is three years, *see* Cal. C.C.P. §

13  338(d), and the statutes of limitation for breach of contract and breach of confidence claims are two

14  years.  *NBCUniversal Media, LLC v. Superior Court*, 225 Cal. App. 4th 1222, 1230-1231 (2014).

15  Plaintiff alleges that the communications giving rise to his intentional misrepresentation, breach of

16  contract and breach of confidence claims occurred *in 2006*.  Compl. ¶¶ 2, 6, 11, 47, 625, 664.  The

17  underlying works forming the basis of Plaintiff's ancillary claims were released in 2008 (*Taken*,

18  Compl. ¶ 451) and 2009 (*Avatar*, Compl. ¶¶ 307, 331), respectively.  There is no scenario in which

19  Plaintiff's ancillary claims could survive given that more than a decade has passed between the

20  alleged events and his filing of the Complaint.  Moreover, Plaintiff admits he was on notice of his

21  potential claims as early as 2009, but he "did not inquire further."  *See* Compl. ¶ 25.  Such inquiry

22  notice started the running of plaintiff's statutes of limitations.  *Doe v. Roman Catholic Bishop*, 189

23  Cal. App. 4th 1423, 1431 (2010) ("plaintiffs are required to conduct a reasonable investigation after

24  becoming aware of an injury, and are charged with knowledge … that would have been revealed by

25  such an investigation").  Plaintiff's ancillary claims can be dismissed with prejudice on this basis.

---

27  [18] Plaintiff claimed previously that his screenplay was substantially similar to *Elysium*, a movie
    about a man "dying of a fatal dose of radiation, [who] must travel to [a space station] because that
28  is the only place that there is any possibility of receiving the necessary medical treatment."  *Briggs
    v. Blomkamp*, Dkt. No. 86, at 17 (rejecting substantial similarity).

---

1   *See*, *e.g.*, *Orkin v. Taylor*, 487 F.3d 734, 742 (9th Cir. 2007) (affirming dismissal where claims were

2   clearly time-barred on their face).

3   ## 2. Lack Of Substantial Similarity Also Defeats Plaintiff's Ancillary Claims.

4   Courts dismiss ancillary claims like Plaintiff's where there is no substantial similarity

5   among the underlying works forming the basis of the complaint.  *See*, *e.g.*, *Ryder v. Lightstorm*

6   *Entmn't Inc.*, 246 Cal. App. 4th 1064, 1074 (2016) (adjudicating contract claims based on success or

7   failure of parallel copyright claims because the alleged contract "mirrors the touchstone inquiry of

8   'copying' in copyright cases, which is circumstantially proved by access plus *substantial* similarity")

9   (emphasis in original); *Spinner v. Am. Broadcasting Co.*, 215 Cal. App. 4th 172, 184-185 (2013)

10  (holding that a plaintiff must show substantial similarity to prove breach of an alleged contract based

11  on an idea submission).  Plaintiff's ancillary claims also fail because they are all based on the

12  allegation that Defendants used ideas from *Butterfly Driver* in *Avatar* and *Taken* without

13  compensating him.  *See* Compl. ¶¶ 623-684.  As discussed above in detail, however, *Avatar* and

14  *Taken* are not similar to the screenplay for *Butterfly Driver*—much less substantially so.  This

15  constitutes an independent ground for dismissal of Plaintiff's ancillary claims.

16  ## 3. Plaintiff Fails To Allege Required Elements In His Two Breach Claims.

17  In order to state a claim for breach of implied-in-fact contract, a plaintiff must show, among

18  other things, that (1) before disclosing the idea, he clearly pre-conditioned the disclosure upon the

19  defendant's agreement to pay for the idea; (2) that, before the disclosure was made, the defendant

20  knew this pre-condition; and (3) that the defendant voluntarily accepted the submission on the

21  plaintiff's terms and thereby agreed to be contractually bound to pay the plaintiff if it used the idea.

22  *See*, *e.g.*, *Mann v. Columbia Pictures, Inc.*, 128 Cal. App. 3d 628, 647 (1982).

23  The Complaint lacks the necessary allegations to state a claim for breach of contract against

24  Fox and News Corp.[19]  Plaintiff's breach of contract claim contains only direct allegations relating to

25  ZGM.  *See* Compl. ¶¶ 663-676.  Plaintiff alleges that "[News Corp.] and [Fox] . . . helped ZGM

26  create a new secret corporate entity, *Future Service Inc*, which became [News Corp.]'s and [Fox]'s

27

28  [19] Plaintiff does not bring his breach of contract or confidence claims against Lightstorm or
    Cameron.  *See* Compl. ¶¶ 663-683.

1    subsidiary," *id.* at ¶ 676 (emphasis in original).  But this allegation provides no legal basis for a

2    contract claim against Fox or News Corp.

3            Plaintiff makes no allegations regarding Fox or News Corp. in his breach of confidence

4    claim.  *See id.* at ¶¶ 677-684.  The Complaint necessarily fails to allege the required element that a

5    confidence was transmitted to the defendant.  *Faris v. Enberg*, 97 Cal. App. 3d 309, 324 (1979)

6    (breach of confidence claim fails without evidence of transmission of material from plaintiff to

7    defendant in confidence).  This claim therefore fails for the same reasons as the breach of contract

8    claim, and also under Federal Rule of Civil Procedure 8.  *See McHenry*, 84 F.3d at 1180 (pleadings

9    are unworkable and should be dismissed where the court and parties are unable to tell "what claims

10   are made against whom").

11                   **4.   The Intentional Misrepresentation Claim Also Is Not Properly Alleged.**

12           An intentional misrepresentation claim requires: (1) a misrepresentation, (2) with knowledge

13   of its falsity, (3) with the intent to induce another's reliance on the misrepresentation, (4) actual and

14   justifiable reliance, and (5) resulting damage.  *See Alliance Mortgage Co. v. Rothwell*, 10 Cal. 4th

15   1226, 1239 & n.4 (1995).  A claim for intentional misrepresentation "sound[s] in fraud and thus must

16   be pled with particularity under Federal Rule of Civil Procedure 9(b)."  *Monreal v. GMAC Mortg.,*

17   *LLC*, 948 F. Supp. 2d 1069, 1077-1078 (S.D. Cal. 2013).  Plaintiff does not allege the existence of

18   ***any*** of these elements with respect to Defendants—much less with the requisite particularity.

19           His Complaint alleges various communications Plaintiff had with "ZGM," including that he

20   submitted the *Butterfly Driver* script to **ZGM** and the agency "said they would contact Plaintiff if

21   they intended to use Plaintiff's ideas."  Compl. ¶¶ 624-629.  But Plaintiff makes no allegation of any

22   alleged misrepresentations by Defendants, not to mention the requisite who, what, when, where

23   required to plead a fraud claim.  *See generally id.*  Here again, his only allegation connecting Fox

24   and News Corp. is his claim that because ZGM allegedly later formed a company called "Future

25   Service Inc," and Fox, News Corp., and Future Service Inc all had an unspecified degree of shared

26   ownership, "News Corp[.] and [Fox] are also responsible for the actions of ZGM and Future Service

27   Inc."  *Id.* at ¶ 630.  This alleged connection does not support a misrepresentation claim against Fox

28   or News Corp.  Moreover, Plaintiff's allegations also make no mention *whatsoever* of intentional

MOTION TO DISMISS COMPLAINT

misrepresentations by Lightstorm or Cameron, despite listing them in the claim.  *See generally id.* at ¶¶ 623-662.  These convoluted allegations with respect to Fox and News Corp.—and no allegations at all with respect to Lightstorm or Cameron—are insufficient to allege an intentional misrepresentation claim.[20]

Plaintiff's intentional misrepresentation claim can also be dismissed because he only alleges he was promised to be paid if his script was *used*.  Compl. ¶ 629.  As discussed in the following sections regarding the lack of allegations of access and absence of substantial similarity among the works, *Butterfly Driver* was *not* used.  Plaintiff's intentional misrepresentation claim therefore has no underpinning, and it should be dismissed.

## V.    CONCLUSION

Plaintiff's ancillary claims can be dismissed on any of the foregoing grounds, and his copyright claims are barred based on the lack of sufficient access allegations and lack of substantial similarity as a matter of law.  Defendants respectfully request that the Court dismiss Plaintiff's Complaint with prejudice and without leave to amend.

Dated: June 22, 2020                              **JASSY VICK CAROLAN LLP**


                                                  _____*/s/ Jean-Paul Jassy*_____
                                                  JEAN-PAUL JASSY
                                                  Counsel for Defendants Twentieth Century Fox Film
                                                  Corp., Lightstorm Entertainment Inc., News Corp. and
                                                  James Cameron

---

[20] *See, e.g., Graham v. Bank of Am., N.A.*, 226 Cal. App. 4th 594, 608 (2014) (dismissing intentional misrepresentation claim for insufficient nexuses among conclusory allegations); *UMG Recordings, Inc. v. Global Eagle Entmn't, Inc.*, 117 F. Supp. 3d 1092, 1110 (C.D. Cal. 2015) (intentional misrepresentation must be pleaded with specificity; plaintiff cannot rely on alleged nonperformance as evidence of intent to misrepresent and induce reliance).

MOTION TO DISMISS COMPLAINT