1  Steve Wilson Briggs
2  4322 Chico Ave.,
   Santa Rosa, CA 95407
3  510 200 3763
   snc.steve@gmail.com
4  PLAINTIFF In Propria Persona
5
6
7
8              **UNITED STATES DISTRICT COURT,**
9          **NORTHERN DISTRICT OF CALIFORNIA,**
10              **SAN FRANCISCO DIVISION**

11  STEVE WILSON BRIGGS,            Civ No: 20-CV-1596-WHO
12        Plaintiff,               PLAINTIFF'S OPPOSITION TO
                                   TWENTIETH CENTURY FOX FILM CORP.,
13        vs                       LIGHTSTORM ENTERTAINMENT INC.,
                                   NEWS CORP. AND JAMES CAMERON'S
14  JAMES CAMERON et al,           MOTION TO DISMISS COMPLAINT
15        Defendants.
16
17
18
19
20
21
22
23
24
25
26
27
28

PLAINTIFF'S SECOND MOTION IN LIMINE TO INCLUDE NEW EVIDENCE

1

TABLE OF CONTENTS

2

3   Table Of Contents…………………………………………………………………….... i

4   Table Of Authorities………………………………………………………………….... ii

5   MEMORANDUM OF POINTS AND AUTHORITIES…………………………….... 1

6   Introduction…………………………………………………………………………. 1

7       The Imperative *Skidmore v Led Zeppelin* (2020) Order….………………………… 2

8                       Opposition Arguments

9   I.   Plaintiff's Opposition To Defendants' False "Introduction"
10       & "Statement Of Facts" Claims………………………………………………… 4

11  II.  Plaintiff's Opposition To The Defendant's Access Argument………………………... 9

12       The Ninth Circuit's New Skidmore V Led Zeppelin Order Negates

13       The Defs' Citations And Confirm Plaintiff's Access And Infringement Claims…... 12

14  III. Plaintiff's Opposition To The Defendant's Substantial Similarity Arguments……….. 13

15       Plaintiff's Opposition Response to The Defendants' Argument

16       That Plaintiff's Alleged Similarities Are Unprotectable Elements

17       Which Must Be Filtered Out From The Court's Analysis………………………….... 14

18       Skidmore v Led Zeppelin's One Flaw…………………………………………… 16

19       A.F. C. Goes Against The 9th's Prized *Total Concept And Feel* Test……………… 16

20       The Defendants' Final Substantial Similarity Argumentative Failure:
21       The Defendants Arguments Fail To Consider
         "The Total Concept And Feel" Test………………………………………….. 17
22

23  IV.  Plaintiff's Opposition To Defendants' Argument That "Plaintiff's Ancillary
24       Claims For Intentional Misrepresentation, Breach Of Contract And Breach Of
         Confidence Also Fail As A Matter Of Law"………………………………………….. 18
25

26  Summation……………………………………………………………………… 25

27  Conclusion……………………………………………………………………… 25

28                                       i

# TABLE OF AUTHORITIES

**Cases**

Apple Computer, Inc. v. Microsoft Corp.,

    35 F.3d 1435, 1446, 32 USPQ2d 1086 (9th Cir. 1994).........................................3

*Bernal v. Paradigm Talent & Literary Agency*,

    788 F. Supp. 2d 1043, 1052 (C.D. Cal. 2010)........................................15

*Briggs v Blomkamp*…………………………………………………….... 5, 11, 12, 24

*Briggs v Spacey* (2018)........................................11

*Desny v. Wilder*, 46 Cal.2d 715. [L. A. No. 23892. In Bank. June 28, 1956.]....................21

*Faris v. Enber*g (1979) 97 Cal. App. 3d 309, 318 …………………………………….... 21

*Feist Publications, Inc., v. Rural Telephone Service Co.*, 499 U.S. 340 (1991)....................3

*Funky Films, Inc. v. Time Warner Ent. Co., L.P.*,

    462 F.3d 1072, 1077 (9th Cir. 2006)........................................14

*Knitwaves, Inc. v. Lollytogs Ltd*., 71 F.3d 996, 1003 (2d Cir.1995)......................................16

*L.A. Printex Indus., Inc. v. Aeropostale, Inc.*,........................................24

    676 F.3d 841, 850–51 (9th Cir. 2012)................................... 13, 14, 15, 16

*Loomis v. Cornish*, 836 F.3d 991, 995 (9th Cir. 2016)........................................ 3, 12

*Mann v. Columbia Pictures, Inc*., 128 Cal. App. 3d 628, 647 (1982)...................... 20, 21, 22

*Metcalf v. Bochco*, 294 F.3d 1069, 1074 (9th Cir. 2002)........................................ 3, 14, 15

*Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663 (2014)…………………………….. 19

*Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1116 (9th Cir. 2018)................................. 3, 14, 15

*Roth Greeting Cards v. United Card Co.*, 429 F.2d 1106 (9th Cir. 1970)..................... 16, 17

*Skidmore v Led Zeppelin,* 16-56057 (2020).............. 1, 2, 3, 5, 8, 9, 11, 12, 13, 14, 15, 20, 24

*Satava v. Lowry*, 323 F.3d 805 (9th Cir. 2003)........................................ 14

*Sid & Marty Krofft Television Productions Inc. v. McDonald's Corp.*

    (9th Cir. 1977)........................................ 16, 17

*United States v. Hamilton*, 583 F.2d 448, 452 (9th Cir. 1978)........................................ 14

PLAINTIFFS' OPPOSITION TO 20TH CENTURY FOX, JAMES CAMERON, ET AL'S MTD

TABLE OF AUTHORITIES (Continued)

**Federal Rules**

    Federal Rules Of Civil Procedure

        Rule 12………………………………………………………………... 1, 2, 5

**State Codes & Statutes**

    California Code Of Civil Procedure

        C.C.P. § 338(d)........................................................................ 18, 19

        C.C.P. § 339(1)............................................................................ 20

    Judicial Council of California Civil Jury Instructions (CACI)

        (CACI, 2017) #305……………………………………………… 21

        (CACI, 2017) #303...…………………………………………… 22

**Other Authorities**

    Nimmer On Copyright § 13.02……………………………………….. 15

iii

## MEMORANDUM OF POINTS AND AUTHORITIES

### Introduction

June 22, 2020, DefendantsTwentieth Century Fox Film Corporation (**20CFOX**), Lightstorm Entertainment Inc., News Corp. and James Cameron submitted a Rule 12(b)(6) motion to dismiss (**MTD**) comprised primarily of antiquated, obsolete, reversed and unpublished rulings, patched together to consistently mislead the Court. The MTD does not conform to the Rule 12(b)(6) requirement to accept the factual allegations of the Complaint, and it introduces matters outside the pleadings. Thus, the MTD should be denied on its face, and/or treated as motion for summary (**MSJ**). The MTD also performs a fact-free comparison of the contested scripts, which is appropriate for a MSJ, but not for an MTD. But the incurable failing of the MTD is it does not contemplate the prevailing and greatly reduced *access* standards, or the more equitable *substantial similarity* guidelines, introduced in the Ninth Circuit on March 9, 2020 in ***Skidmore v Led Zeppelin***, 16-56057.

Disconcertingly, the Defendants' MTD omits any mention that the Defendants committed numerous internet crimes, and fraud by publication, supporting many of the fraud claims. Among the unlawful actions that the Defs took, which the MTD omits, are:

1. The Defs produced countless fraudulent backdated news articles about a false story that James Cameron wrote a *scriptment* called *Project 880* in 2005; then revised this story to falsely claim that Cameron wrote a scriptment called *Avatar* in 1996.
2. The Defs supported their fake articles with countless fake Internet Archive crawls.
3. The Defs hacked into the Plaintiff's computer and email, over a period of 14 years, and were captured on video tape hacking into the Plaintiff's laptop, Jan 14, 2020.

The MTD also falsely claims the Complaint: **(1)** does not show access; **(2)** did not allege valid infringement claims; **(3)** and claims unprotectable elements are not protectable.

But, in fact:

1. The Complaint shows direct access: in 2006 Zero Gravity Management (**ZGM**—an entity that specialized in selling screenplays to film studios, and that had been out of business for 4 months) asked Plaintiff for his script; Plaintiff then sent his script to

ZGM; two weeks later the Defs released a collection of fake articles: claiming that Defendant (**Def)** Cameron wrote a scriptment called Project 880 in 2005, and Avatar in 1995; 11 months later, an entity co-owned by ZGM, *Future Service Inc* (**FSI)**, appeared on the first Avatar copyrights; in 2007 FSI became a subsidiary of Defs News Corp and 20th Century Fox. (The Complaint reasons, logically, that once Plaintiff's ideas were in ZGM's hands, they sold Plaintiff's ideas to other studios.)

2. The Plaintiff made unprecedented infringement claims, spelling out 6 out of his 9-11 utterly original ideas, and Plaintiff declared the copyrightability of his "common" claims (his unique selection and arrangement of non protectable elements).

3. A copyright plaintiff may argue "infringement based on original selection and arrangement of **unprotected** elements," as the Plaintiff has.

Again, a motion to dismiss for *failure to state a claim upon which relief can be granted* must accept all of the factual allegations of the complaint as true. But the Defendants' MTD refutes the Complaint's factual allegations, then aggressively attacks the claims—and even performs a comparative analysis (usually saved for summary judgement). All of this is an implicit admission, by the Defendants, that the Complaint's claims are sound. However, because the Defendants improperly assume the Complaintis' facts are false, and perform various unreliable comparative analyses, the Plaintiff is put in the odd position of being required to <u>both</u>: (1) defend what appears to be a flawed motion for summary judgment; (2) defend a flawed Rule 12(b)(6) MTD.

The Defendants' MTD relies on omission, misrepresentations, specious legal citations, and seeks to take advantage of Ninth Circuit "loopholes", which the film and music industry have taken advantage of for decades.

### The Imperative *Skidmore v Led Zeppelin* (2020) Order

Fortunately, on March 9, 2020, in the action of *Skidmore v Led Zeppelin*, 16-56057 (9th Cir, March 9, 2020), a panel of **11 Ninth Circuit judges** entered a 73 page opinion, which is, perhaps, the most important and sound copyright opinion to come out of the Ninth Circuit in 40 years—since 1970, when the 9th introduced the "Total Concept And Feel" test.

PLAINTIFFS' OPPOSITION TO 20TH CENTURY FOX, JAMES CAMERON, ET AL'S MTD

The *Skidmore v Led Zeppelin* Opinion, entered five days after Plaintiff filed his Complaint, specifically seeks to bring the Ninth Circuit into closer alignment with the other circuits—and into alignment with our Founding Fathers' vision of a copyright system that promotes innovation, while treating all litigants, great and small, as equals. Noteworthy, the *Skidmore v Led Zeppelin* Opinion emphatically declares:

1. To be sure, a copyright plaintiff **may argue** "infringement . . . based on original selection and arrangement of **unprotected elements**." Metcalf, 294 F.3d at 1074 (quoting Apple Computer, 35 F.3d at 1446).

2. As a practical matter, the concept of "access" is increasingly diluted in our digitally interconnected world. Access is often proved by the wide dissemination of the copyrighted work. See Loomis v. Cornish, 836 F.3d 991, 995 (9th Cir. 2016). Given the ubiquity of ways to access media online, from YouTube to subscription services like Netflix and Spotify, access may be established by a trivial showing that the work is available on demand.

3. To the extent "access" still has meaning, the inverse ratio rule unfairly advantages those whose work is most accessible by lowering the standard of proof for similarity. Thus the rule benefits those with highly popular works, like The Office, which are also highly accessible. But nothing in copyright law suggests that a work deserves stronger legal protection simply because it is more popular or owned by better-funded rights holders.

4. By rejecting the inverse ratio rule, <u>we are not suggesting that access cannot serve as **circumstantial evidence**</u> of actual copying in all cases; access, however, in no way can prove substantial similarity. We join the majority of our sister circuits that have considered the inverse ratio rule and have correctly chosen to excise it from copyright analysis.…

5. Although copyright protects only original expression, it is not difficult to meet the famously low bar for originality. Feist, 499 U.S. at 345 ("The sine qua non of copyright is originality"; "[t]he vast majority of works make the grade quite easily . . . .")

6. In the absence of direct evidence of copying, which is the case here, the plaintiff "can attempt to prove it <u>circumstantially</u> by showing that the defendant had access to the plaintiff's work and that the two works share similarities probative of copying." Rentmeester, 883 F.3d at 1117.

These informed declarations abound in the *Skidmore v Led Zeppelin* Order and recalibrate the Ninth's application of copyright law, and move the 9th into alignment with the other circuits—by getting rid of the *inverse ratio rule*.

PLAINTIFFS' OPPOSITION TO 20TH CENTURY FOX, JAMES CAMERON, ET AL'S MTD

## I.     PLAINTIFF'S OPPOSITION TO THE DEFENDANTS' FALSE "INTRODUCTION" & "STATEMENT OF FACTS" CLAIMS

The rampant deceit in the Defendants' MTD's *Introduction* and *Statement of Facts* suggests that the Defs believe their entitlement to omit, revise and rework facts is limited only by their imaginations. Plaintiff will address these inventions, sequentially.

### Correcting The Defense Counsel's False Claims

**A.** Sentence 1-2, Under The "Introduction" heading, The Defendants State:

**"This case is Plaintiff Steve Wilson Briggs' fourth lawsuit in this Court claiming infringement of his screenplay titled Butterfly Driver. 2 The three prior cases, which were decided against Plaintiff by Judge Hamilton and Judge Chhabria, <u>alleged that the film Elysium infringed his screenplay</u>."**

**Correction #1:** Only the first suit claimed Elysium infringed Plaintiff's screenplay.

<u>Clarification</u>: The second and third suit were effectively the same suit, as the Plaintiff was made to re-file the second suit after Def Spacey went into hiding (for over a year); Plaintiff was, thus, unable to timely serve Spacey. Hence, Plaintiff views these cases as a single suit (although the Defs view of these filings as two suits may be correct).

**Correction #2:** The second and third suit had nothing to do with Elysium. The second and third suits claimed infringement against Kevin Spacey, because the "Terms" of Spacey's social network website, *TriggerStreet.com* (where the Plaintiff posted his work in late 2006 to mid/late 2007) stated the site was only for use in the United States, but between 2002 and 2009 Spacey went to various foreign countries to recruit new members, where he stated that TriggerStreet had "400,000 members <u>around the world</u>," violating the TriggerStreet.com *terms* (for US use only). The suit claimed that in secretly displaying Plaintiff's script abroad, Spacey infringed Plaintiff's copyright rights to control the exportation of his work.

**B.** <u>Sentence 3-5</u>, under "Introduction" the Defendants state:

**"Now, Plaintiff claims that two other and wholly different films – Avatar and Taken – infringed the same screenplay. Although the rambling, 845-page Complaint is difficult to follow, the core of <u>Plaintiff's allegations seems to be that Butterfly Driver is like Avatar because it involves space travel</u>, and it is like Taken because it involves a father's mission to help his daughter. <u>Such generic similarities, however, are not protected by</u>**

1   **copyright law. A closer examination of the actual works, <u>as is routinely</u>
2   <u>done at the pleading stage</u>, reveals <u>no protectable similarities</u>.**"

3   **Correction #3:** The Complaint provides 42 pages (pp 6-11 and pp 59-95) of detailed
4   infringement claims and comparisons between his script and Avatar and Taken. Nowhere
5   does Plaintiff claim that "<u>Butterfly Driver is like Avatar because it involves space travel.</u>"

6   **Correction #4:** Plaintiff made no claims to any "generic similarities". Plaintiff does
7   claim his **"original selection and arrangement of unprotected elements"** are protectable,
8   as affirmed, again, March 2020 in *Skidmore v Led Zeppelin*. In his Briggs v Blomkamp
9   appeals, the Plaintiff referred to these aspects as his *selection and arrangement of non*
10  *protectable elements*, but in *this* matter he simply calls them his "common" claims. Pages
11  5-6, para 66 and 67, Plaintiff explains:

12      66. "Plaintiff's screenplay is an unparalleled work, composed of many
13      **common** and many uncommon ideas, and between six and ten unprecedented
    original ideas; warranting the broadest, thickest protection possible.
14      <u>The Origin Of The Plaintiff's Revolutionary Story</u>
15      67. "This Complaint makes **common copyright claims**, and what Plaintiff
    calls "major claims ." Plaintiff's major claims involve features that had never
16      been done before…

17  **Correction #5:** The Defense uses the line "A closer examination of the actual works,
18  as is routinely done at the pleading stage…" as a segue to perform an impossibly flawed
19  script comparison, which is fine for a MSJ, but not for a Rule 12(b)(6) motion.

20  **C.** <u>Line 16-19</u>, under "Introduction" the Defendants state:

21      **Plaintiff's claims of access are legally deficient, resting on speculative**
22      **allegations that because various people knew each other they must have**
    **passed around Plaintiff's script. The law requires a more direct and**
23      **plausible pleading of access.**

24      **Correction #6:** Plaintiff made extremely specific access claims: January 2006, after
25  finding an online listing saying that a literary talent agency named Zero Gravity
26  Management was looking for screenplays, the Plaintiff emailed ZGM to ask if they would
27  like to read one of two screenplays. ZGM asked Plaintiff to send them "City of Light" (later
28  renamed "Butterfly Driver"). ZGM did not inform Plaintiff that ZGM went out of business

over four months earlier; thus, Plaintiff sent ZGM his script.  Six days later ZGM went back in business. By the end of that year (2006) a new ZGM entity, *Future Service Inc* (**FSI**) was on the first Avatar copyright, and would soon be on 12 more Avatar copyrights. In 2007 FSI became a subsidiary of Defendants News Corp and Twentieth Century Fox.

**D.**  Line 20-22, under "Introduction" the Defendants state:

**"Substantial similarity requires, at a minimum, that the constituent parts of two works – e.g., their plots, characters, settings, moods and themes – are alike. Random, scattered similarity in individual elements, broad themes, or generic ideas cannot suffice."**

**Correction #7:** The Defendants' assertion is utterly absurd. Each of the elements mentioned (plot, character, setting, mood, themes. and more) are copyrightable. They need not be joined together. This is why all of George Lucas' characters are copyrighted (R2D2, C3PO, Luke Skywalker, Hans, Leah…). This is also why the Death Star (a mere setting) is also copyrightable. Plaintiff's plot and plot structures and never before executed story elements, and arrangement of themes, mood, settings and technology are also copyrightable.

**E.**  Page 3 line 3-10, under "Introduction" the Defendants state:

**"It is entirely implausible that one underlying screenplay could have been copied to create both Avatar and Taken, and this conclusion is unavoidable when actually comparing Butterfly Driver to the films. Plaintiff states that he plans to bring "future infringement actions," alleging still other films, including The Hunger Games and WALL-E, also infringe Butterfly Driver. Compl. ¶ 573. These threats further demonstrate the lack of merit of his claims here. It simply defies all credibility that these very different (and some of the most profitable) films all infringe the same screenplay. "**

**Correction #8:** This is absurd. Copyright law does not suggest any of this. The concept of "indirect copying" allows for endless variation in copying. Further, smaller copyrightable aspects of a work (settings, themes, dialogue, characters) can also be copied and turned into countless new works. On the second page of the Complaint (page ii) paragraph 7, the Plaintiff explained things:

"Original ideas are rare—but reusable. Plaintiff's script contained 6 to 10 original ideas. Thus, the Defs misappropriated Plaintiff's script to make MANY derivatives."

1    With so many original ideas, and such great selections and arrangements of unprotected

2    elements, the film industry could make countless derivatives.

3    Against the Defense Counsel's suggestions to the contrary, the Copyright Clause was

4    included in our Constitution to inspire great creation, not restrict creator's copyright claims.

5    **F.** Page 3 line 22 to page 4 line 14, under "Statement of Facts" the Defendants state:

6    **"Plaintiff's Complaint only offers convoluted, conclusory allegations of**
     **Defendants' access to Butterfly Driver. <u>Principally, he claims that in 2006 he</u>**

7    **<u>contacted a literary agency called "Zero Gravity Management," which he</u>**

8    **<u>also refers to as "ZGM," unsolicited, about sending the agency a script</u>.**
     **Compl. ¶ 2. The Complaint alleges that individuals at ZGM were "close**

9    **friends" with an individual at Fox, id. at ¶ 108, <u>but Plaintiff does not allege</u>**

10   **<u>how Defendants actually accessed the Butterfly Driver script</u>.…**

11   **"Plaintiff's Complaint claims there are similarities between Butterfly**
     **Driver and Avatar… <u>Instead, Plaintiff only points to unprotectable, stock</u>**

12   **<u>elements, such as the fact that Butterfly Driver and Taken both involve</u>**

13   **<u>vehicle chases and explosions</u>."**

14   **Correction #9:** The Defense Counsel falsely claims that the Plaintiff contacted ZGM

15   "unsolicited." But the Complaint tells the truth—with an email exchange between Plaintiff

16   and ZGM attached to the Complaint. The email begins: "<u>Dear Zero Gravity Management, I</u>

17   <u>am responding to your query for screenplays</u> **posted on moviebytes.com**.

18   ZGM placed an ad, seeking screenplays, on moviebytes.com. Plaintiff then emailed

19   ZGM a query with brief loglines of two scripts. ZGM then asked Plaintiff to send *City of*

20   *Light*. Plaintiff then sent ZGM the requested screenplay. There was nothing unsolicited.

21   **Correction #10:** The Defs bizarrely state, "Plaintiff does not allege how Defendants

22   actually accessed the Butterfly Driver script." With this argument the Defendants imply the

23   Plaintiff must present photographic evidence of ZGM opening their email then handing the

24   PDF to the other Defendants. This is absurd and has no basis in law. US copyright law only

25   requires a **reasonable theory of access** (no photographs required).

26   Clearly, after ZGM asked for and received Plaintiff's script, ZGM opened their email

27   and read it. <u>Access</u>. Clearly, ZGM then delivered the script to the other Defendants in an

28   email, or in a USB or floppy drive, or they printed it up and personally delivered it, or

PLAINTIFFS' OPPOSITION TO 20TH CENTURY FOX, JAMES CAMERON, ET AL'S MTD

mailed it. <u>ZGM was in the business of selling screenplays to Hollywood Studios</u>. Thus, they delivered the script however they wished. The fact that a new ZGM entity, **Future Service Inc** is on 13 Avatar copyrights confirms all allegations of access and infringement. More, the fact that in late 2006, Def Mark Williams opened *Williams Productions LLC*, <u>which became a subsidiary of NBCUniversal in 2007</u>, and the fact that in 2008 Def Michael Pierce opened his "production company" ***212 Fahrenheit Degrees Corporation*** (a company that claims Google and Microsoft as clients), confirms Plaintiff's allegation that Pierce and Williams (ZGM's founders) sold Plaintiff's ideas to many other companies.

> NOTE: The fatal flaw in the Defs' *access* argument <u>and</u> in their MTD, is that it does not consider the prevailing *Skidmore v Led Zeppelin* (2020) ruling, which supports Plaintiff's access claims  and implies 'access' has very little meaning in this digital age.
>
> (This is explored in the next section: *Opposition to Defs' Access Argument*, pp 3 & 9-12).

**Correction 11:** The Defendants' claim that Plaintiff's copyright claims are only composed of stock and unpredictable elements… This is preposterous. The Plaintiff dedicated **6 pages** of his Complaint (pp 5-11) to establishing his unique and unprecedented story structures—and showing that these unique elements involved numerous aspects, making them copyrightable separately. Plaintiff then dedicated **36 pages** (pp 59-95) to articulating (with great particularity) his unprecedented claims and his "unique selection and arrangement of unprotectable elements". Plaintiff's unique selections and arrangement of unprotectable elements are copyrightable. Plaintiff's script also contained many complex original expressions, which are copyrightable, such as:

1. Plaintiff's mind/soul scanner, which scans peoples' minds, souls and bodies, and makes perfect digital reproductions (neuro-gens) of the people scanned, which can then be inserted in either digital environments, or into new bodies.

2. Plaintiff script was the first work to impose a panoply of current and divisive American social and political issues upon a sci-fi setting —then amplify these issues (in defiance of the prevailing sentiment, in the mid 2000s, that politics should be avoided). The execution of this involved <u>many</u> elements, which are copyrightable.

PLAINTIFFS' OPPOSITION TO 20TH CENTURY FOX, JAMES CAMERON, ET AL'S MTD

| | |
|---|---|
| 1 | **II.    PLAINTIFF'S OPPOSITION TO** |
| 2 | **THE DEFENDANT'S ACCESS ARGUMENT** |
| 3 | **A.** Page 9 of the MTD, the Defendants make their first official argument, reading: |
| 4 | "PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM. |
| 5 | A. Plaintiff's Copyright Infringement Claims Fail Because Plaintiff Fails To Plausibly Allege Access And Cannot, As A Matter Of Law, Show Substantial |
| 6 | Similarity" |
| 7 | <u>**Plaintiff's Opposition Response to The Defendants' Access Argument**</u>: |
| 8 | The prevailing, current and guiding legal citation concerning *access* and *substantial* |
| 9 | *similarity* is *Skidmore v Led Zeppelin*, 16-56057 (9th Cir, March 9, 2020). The Defendants' |
| 10 | MTD willfully and deceptively omitted this citation, to mislead the Court. *Skidmore v Led* |
| 11 | *Zeppelin* firmly establishes that the Plaintiff's access claims are valid, and it renders all prior |
| 12 | 9th Circuit access citations invalid and vacated**.** |
| 13 | Before addressing the particulars of *Skidmore v Led Zeppelin*, let us review the |
| 14 | Defendants' wild access arguments and claims. |
| 15 | The Defendants' improperly claim: **"Plaintiff's Copyright Infringement Claims** |
| 16 | **Fail Because Plaintiff Fails To Plausibly Allege Access."** To make this false statement |
| 17 | appear plausible, the Defense Counsel concocted a false argument that somehow the |
| 18 | Plaintiff failed to thread some nebulous access requirement, implying that to establish access |
| 19 | the Plaintiff must provide video evidence of the ZGM (Pierce and Williams) handing |
| 20 | Plaintiff's screenplay to the other Defendants. None of this has any basis in law. The |
| 21 | Defendants' MTD also omits the fact that ZGM's new entity, Future Service Inc, became a |
| 22 | subsidiary of News Corp and Twentieth Century Fox in 2006, shortly after ZGM accessed |
| 23 | Plaintiff's work, and omits the fact that in 2004, Twentieth Century Fox Film Corp's VP of |
| 24 | Production (Alex Young) told Variety magazine that he often has Defs Michael Pierce and |
| 25 | Mark Williams (ZGM's owners) help with Twentieth Century Fox Film Corp projects. |
| 26 | A Reasonable Possibility Of Access |
| 27 | In truth, a plaintiff only needs to show **a reasonable possibility of access**. A simple, |
| 28 | **reasonable access theory**. No video tape required. |

PLAINTIFFS' OPPOSITION TO 20TH CENTURY FOX, JAMES CAMERON, ET AL'S MTD

1      Surprisingly, the Plaintiff's Complaint claims the Defs accessed his work at least
2  **twice** (1. by asking Plaintiff for his script; 2. by downloading the script when Plaintiff
3  posted it on TriggerStreet.com). Plaintiff also claims the Defendants hacked into his
4  computers and email box many times over a 14 year period (and he attached to the
5  Complaint video evidence of one such hacking incident, as well as other evidence).

6      The elements of access via ZGM and via triggerstreet.com are examined beneath the
7  following headings "FIRST ACCESS" and "SECOND ACCESS."

8                              FIRST ACCESS

9      The Complaint explains that in January 2006, after finding an online listing saying that
10  a literary talent agency named Zero Gravity Management was looking for screenplays, the
11  Plaintiff emailed ZGM to ask if they would like to read one of his screenplays. ZGM asked
12  Plaintiff to send them "City of Light" ("Uberopolis: City of Light", later renamed "Butterfly
13  Driver"). Plaintiff complied and sent ZGM his script. ZGM did not explain that they went
14  out of business over four months earlier. Six days later, ZGM went back in business by
15  filing a new CA business registration. By the end of that year (2006) a new ZGM entity
16  named Future Service Inc (FSI) was on the first Avatar copyright, and would soon be on 12
17  more Avatar Copyrights. in 2007 FSI became a subsidiary of Defs News Corp and 20CFOX.
18  FSI was owned by ZGM and Stephen Margolis, owner of Future Films. Margolis and ZGM
19  did not announced their business partnership until 2009, a few months before Avatar was
20  released.

21      In 2008, 17 months before Avatar was released, Def Michael Pierce opened the
22  "production company" ***212 Fahrenheit Degrees Corporation***, an unknown company that
23  claims Def Google and Microsoft as clients.

24      Page 122 of the Complaint explains how Plaintiff's script may have influenced NASA,
25  Amazon, and billionaire Richard Branson, and shows that Michael Pierce (founder of ZGM)
26  purchased Richard Branson's Formula 1 racing team.

27      All of these facts, and more, show that once ZGM received Plaintiff's ideas, they
28  formed business partnerships with the people who infringed or used Plaintiff's ideas.

PLAINTIFFS' OPPOSITION TO 20TH CENTURY FOX, JAMES CAMERON, ET AL'S MTD

SECOND ACCESS

The Complaint explains that from around Dec 2006 until around Sept 2007, Plaintiff's script was on *TriggerStreet.com*, which, at that time, was the webaddress of Kevin Spacey's social network for screenwriters and filmmakers, which, in 2009, Spacey claimed had **400,000 members**. TriggerStreet attracted large numbers of "members" by advertising to undiscovered writers that **film industry pros** might read their work.

The Complaint also explained that in 2018 the Plaintiff received a call from an 89 year old attorney, who said she used to work in entertainment law in Los Angeles, and volunteered that she believed A LOT of people read the Plaintiff's screenplay.

Omitted TriggerStreet Access Facts

In *Briggs v Blomkamp* and *Briggs v Spacey* the Plaintiff provided considerably more access facts pertaining to TriggerStreet.com. Some of these facts were omitted from the Briggs v Cameron Complaint because the Complaint was/is <u>extremely</u> long (142 page plus 700 exhibit pages). Since this information is in the public record, the Plaintiff believes it would be useful for the Court to know two more facts pertaining to TriggerStreet.com:

1. While Plaintiff's script was on TriggerStreet.com, one night in or around Sept 2007, several film industry pros contacted Plaintiff; all interested in Plaintiff's screenplay. Plaintiff removed his script from TS that night, after resolving to make his own film.

2. The *Briggs v Spacey* complaints explained that Kevin Spacey and Dana Brunetti patented a technology for TriggerStreet.com that allowed certain "whitelisted" users to access screenplays undetected. Plaintiff believes the "whitelisted" users were established film industry professionals (as TriggerStreet advertised that film industry professionals might read the undiscovered writers' work). Thus, film industry pros could access Plaintiff's script, undetected, without Plaintiff receiving notification.

**Plaintiff's Access Theories Are Reasonable**

The Plaintiff is only required to provide a reasonable access theory. Nothing more.

And the new *Skidmore v Led Zeppelin* access guidelines clearly validate Plaintiff's access claims, and also suggest that "access" may have little meaning in our digital age.

PLAINTIFFS' OPPOSITION TO 20TH CENTURY FOX, JAMES CAMERON, ET AL'S MTD

1    **The Ninth Circuit's New Skidmore V Led Zeppelin Order Negates The Defs'**

2    **Citations And Confirm Plaintiff's Access And Infringement Claims**

3    The *Skidmore v Led Zeppelin* Order establishes, conclusively, that both of the

4    Plaintiff's access theories are sound, and negates the Defendants citations and arguments.

5    Plaintiff's first access theory (that ZGM asked for and received Plaintiff's script, then

6    sold his ideas to the Defs and others) is sound on its own, with or without *Skidmore*.

7    Prior to *Skidmore v Led Zeppelin*, the existing case law was NOT kind to Plaintiff's

8    second access theory (that the Defendants accessed Plaintiff's work while it was on

9    TriggerStreet.com). In fact, Plaintiff lost *Briggs v Blomkamp* (2013-14) because the Ninth's

10   access rules, at that time, did not specifically contemplate various internet and streaming

11   access paths. It should be noted that before Skidmore there was nothing written in 9th law to

12   preclude an allowance of *access* via internet, and the 9th often allowed online *access* claims

13   in computer cases. Fortunately, *Skidmore v Zeppelin* has ushered the 9th into the digital age.

14   As explained on page 3, in *Skidmore v Zeppelin* the the Ninth stated:

15   "As a practical matter, the concept of "access" is increasingly diluted in our

16   digitally interconnected world. Access is often proved by the wide
     dissemination of the copyrighted work. See Loomis v. Cornish, 836 F.3d 991,

17   995 (9th Cir. 2016). Given the ubiquity of ways to access media online, from
     YouTube to subscription services like **Netflix** and Spotify, **access may be**

18   **established by a trivial showing that the work is available on demand.**

19   To the extent "access" still has meaning, the **inverse ratio rule** unfairly
     advantages those whose work is most accessible by lowering the standard of

20   proof for similarity. **Thus the rule benefits those with highly popular works,**
     **like The Office, which are also highly accessible**. But nothing in copyright

21   law suggests that a work deserves stronger legal protection simply because
     it is more popular or owned by better-funded rights holders."

22

23

24   Thus, the Court concluded, "access may be established by a trivial showing that the

25   work is available on demand." While Plaintiff's screenplay was on TriggerStreet.com, it was

26   available on demand to TriggerStreet's 400,000 members and whitelisted industry pros

27   —and anyone else who wanted to join; free! (Whereas, Netflix members pay a monthly fee).

28   Access confirmed.

PLAINTIFFS' OPPOSITION TO 20TH CENTURY FOX, JAMES CAMERON, ET AL'S MTD

III.   **PLAINTIFF'S OPPOSITION TO THE DEFENDANT'S**

**SUBSTANTIAL SIMILARITY ARGUMENTS**

**A.** Page 12 of the MTD, the Defendants make two substantial similarity arguments:

a.  Butterfly Driver Is Not Substantially Similar To Either Avatar or Taken.
b.  Plaintiff's Alleged Similarities Are Unprotectable Elements Which Must Be Filtered Out From The Court's Analysis

**Plaintiff's Opposition Response to The Defendants' Argument That**

**Butterfly Driver Is Not Substantially Similar To Either Avatar or Taken:**

Just as the Defendants' "access" argument all fail  because the Defendants arguments do not contemplate the prevailing *Skidmore v Led Zeppelin* Order, all of the Defendants' "substantial similarity" arguments also fail, incurably, because the Defendants' arguments did not not cite or contemplate the prevailing Ninth Circuit *substantial similarity* cases: *Skidmore v Led Zeppelin,* 16-56057, and to a lesser extent **L.A. Printex Indus., Inc. v. Aeropostale, Inc.**, 676 F.3d 841, 850–51 (9th Cir. 2012). NOTE: *L.A. Printex* was prominently cited in the Skidmore v Led Zeppelin, re the selection and arrangement of unprotectable elements.

The Defs' argued that "**Butterfly Driver Is Not Substantially Similar To Either Avatar or Taken**."

The Plaintiff's opposition: The Defs failed to cite the prevailing substantial similarity case (*Skidmore v Zeppelin*). Thus, the Defendants' arguments, their citations, and their MTD cannot possibly be improper.

Plaintiff's Complaint's comparison of the contested scripts is far more accurate than the Defendants' biased synopses. The Plaintiff reminds the Court that many of his claims are original ideas and story structures that had not been executed before. And many of these original story structures are composed of many elements. Thus, these original story structures are individually copyrightable. Ergo, given the unprecedented nature of the Plaintiff's unique story structures, any recurrence of these aspects in the Defendants' work is copyright infringement.

PLAINTIFFS' OPPOSITION TO 20TH CENTURY FOX, JAMES CAMERON, ET AL'S MTD

1           **Plaintiff's Opposition Response to The Defendants' Argument That**

2           **Plaintiff's Alleged Similarities Are Unprotectable Elements**

3           **Which Must Be Filtered Out From The Court's Analysis**

4       The Defendants argument reads: "Plaintiff's Alleged Similarities Are Unprotectable

5 Elements Which Must Be Filtered Out From The Court's Analysis." Below this heading the

6 Defendants misinform the Court by stating that all of the unprotectable elements should be

7 removed from the substantial similarity analysis "to ensure the analysis considers "only

8 whether the protectable elements, standing alone are substantially similar." *Funky Films*,

9 462 F.3d at 1077 (emphasis in original)."

10       But that advice is misleading because the Defense Counsel does not also instruct the

11 Court that the selection and arrangement of unprotectable elements is *protectable* and must

12 therefore be included in that assessment on protectable elements. As we have seen, and as

13 we will see again, the prevailing case law repeatedly stresses that the selection and

14 arrangement of unprotectable elements of a work is/are copyrightable. Carving this in

15 granite, in the *Skidmore v Led Zeppelin* Order, concerning the protectability of selection and

16 arrangement of unprotectable elements, the Ninth stated:

17
18     "We have extended copyright protection to **"a combination of unprotectable elements** . . . only if those elements are numerous enough

19     and their selection and arrangement original enough that their combination constitutes an original work of authorship." Satava, 323 F.3d at 811. Put

20     another way, what a selection and arrangement copyright protects is the particular way in which the artistic elements form a coherent pattern,

21     synthesis, or design. See **L.A. Printex Indus., Inc. v. Aeropostale, Inc.,**

22     **676 F.3d 841, 850–51 (9th Cir. 2012) ("original selection, coordination, and arrangement"** that result in the overall "design" are protectable)."

23     Metcalf, 294 F.3d at 1074 ("Each note in a scale . . . is not protectable, but a pattern of notes in a tune may earn copyright protection."); United States

24     v. Hamilton, 583 F.2d 448, 452 (9th Cir. 1978); see also Feist, 499 U.S. at

25     350–51; Rentmeester, 883 F.3d at 1119. (**Page 44-45)**

26     The fatal flaw in Skidmore's argument that he was entitled to a selection and arrangement instruction is that he did not present that as a separate

27     theory at trial. **To be sure, a copyright plaintiff may argue "infringement . . . based on original selection and arrangement of**

28     **unprotected elements."** Metcalf, 294 F.3d at 1074 (quoting Apple

PLAINTIFFS' OPPOSITION TO 20TH CENTURY FOX, JAMES CAMERON, ET AL'S MTD

1    Computer, 35 F.3d at 1446). (**Page 43**)

2    *Skidmore v Led Zeppelin* makes it clear that substantial similarity can be based on

3    protectible elements, unprotectable elements, or on a combination of protectable and

4    unprotectable elements (page 22-23):

5    "In the absence of direct evidence of copying, which is the case here, the
     plaintiff "can attempt to prove it circumstantially by showing that the
6    defendant had access to the plaintiff's work and that the two works share
     similarities probative of copying." Rentmeester, 883 F.3d at 1117. This type of
7    probative or striking similarity shows that the similarities between the two
8    works are due to "copying rather than . . . coincidence, independent creation, or
     prior common source." Bernal v. Paradigm Talent & Literary Agency, 788 F.
9    Supp. 2d 1043, 1052 (C.D. Cal. 2010) (omission in original) (quoting 4
10   Nimmer § 13.02[B]). **A finding of such similarity may be based on the
     overlap of unprotectable as well as protectable elements**. Rentmeester, 883
11   F.3d at 1117."

12

13                    **The Defendants' Substantial Similarity**

14                    **Arguments Have All Been Defeated**

15   That final sentence of the preceding passage, "A finding of such similarity may be

16   based on the overlap of unprotectable as well as protectable elements," shows that the

17   Defense Counsel attempted to mislead the Court by omitting the fact that the selection and

18   arrangement     of     unprotectable     elements     should     be     included     in     any

19   **Abstraction-Filtration-Comparison** test (also known as "dissection analysis" test), which

20   is the process of removing unprotectable elements, to analyze the protectable. Thus, all of

21   the Defs' substantial similarity arguments have been proven false and invalid.

22   The Defendants' substantial similarity arguments were false and invalid because:

23   1.  The Defs' arguments did not not cite or contemplate the 9th's prevailing

24       *substantial similarity* citation: *Skidmore v Led Zeppelin* (and secondarily *LA*

25       *Printex v Aeropostale*).

26   2.  The Defendants omitted the fact that the *selection and arrangement of*

27       *unprotectable     elements*     should     be     included     in     any

28       Abstraction-Filtration-Comparison test.

PLAINTIFFS' OPPOSITION TO 20TH CENTURY FOX, JAMES CAMERON, ET AL'S MTD

**Skidmore v Led Zeppelin's One Flaw**

The Skidmore v Led Zeppelin Order is an excellent order, but it suffers one substantial flaw: the ruling does not end Abstraction-Filtration-Comparison (**AFC**) testing.

AFC was introduced in the 2nd Circuit to assess computer coding infringement. AFC is a great tool for assessing computer code, but it is terrible for assessing creative works—because it seeks to eliminate the un-protectable elements, then assesses the work as it is NOT (as the work is, of course, an integrated thing). All of the circuit courts use AFC for computer infringement assessment, but seemingly only the Ninth uses it for creative works—surely at the behest of the film and music industries. Most—or perhaps all—of other circuit courts have rejected AFC for creative works, as explained in *L.A. Printex*:

> "...the **Second Circuit has rejected the argument** that, "in comparing [fabric] designs for copyright infringement," a court must "dissect them into their separate components, and compare only those elements which are in themselves copyrightable." Knitwaves, Inc. v. Lollytogs Ltd., 71 F.3d 996, 1003 (2d Cir.1995) ("[I]f we took this argument to its logical conclusion, we might have to decide that there can be no originality in a painting because all colors of paint have been used somewhere in the past." The court's dissection, by definition, could not compare arrangements, or consider the "objective similarities in protectable elements".

**A.F. C. Goes Against The 9th's Prized *Total Concept And Feel* Test**

Perhaps the biggest problem with AFC is that it goes against what may be the Ninth's greatest contribution to copyright law: the Total Concept And Feel (**TCF**) test, which the Ninth Circuit introduced in ***Roth Greeting Cards v. United Card Co.***, 429 F.2d 1106 (9th Cir. 1970). But TCF did not become widely known in ***Sid & Marty Krofft Television Productions Inc. v. McDonald's Corp.*** (1977). The 2nd and 7th Circuits have since adopted TCF tests. Plaintiff believes TFC's organic, global approach is ideal for creative works. As Elliott M. Abramson explained in *How Much Copying Under Copyright?* (1988):

> The appeal of the "totality" infringements approach is evident. The task of the fact-finder is simplified because it can examine the work in its entirety, and decide, without much analysis, whether a subsequent author took "the heart" of the original work. There is no need for a careful, refined separation of fact and expression. Moreover, a "totality" approach allows a fact-finder to respond to a visceral feeling that something unfair was done.

PLAINTIFFS' OPPOSITION TO 20TH CENTURY FOX, JAMES CAMERON, ET AL'S MTD

| | |
|---|---|
| 1 | **The Defendants' Final Substantial Similarity Argumentative Failure:** |
| 2 | **The Defs' Arguments Fail To Consider "The Total Concept And Feel" Test** |
| 3 | As explained on the previous pages, the Total Concept And Feel test is perhaps the |
| 4 | Ninth's most significant copyright contribution. However, it is not surprising that the |
| 5 | Defendants' MTD fails to advise the Court of the importance of *Roth Greeting Cards v.* |
| 6 | *United Card Co* and *Krofft v. McDonald's*, and fails to instruct the Court of the importance |
| 7 | of assessing the Total Concept And Feel of the contested works. |
| 8 | In comparing the *total concept and feel* of the Plaintiff's script with the Defs' films, |
| 9 | the Court must consider that before the Plaintiff's work, there had never been a sci-fi or |
| 10 | action-adventure film that: **(1)** willfully infused a panoply of the most divisive current |
| 11 | political and social issues, then amplified the issues to create a thoughtful, cautionary |
| 12 | statement. (Plaintiff's panoply includes 1. environmental protection, 2. healthcare injustice |
| 13 | and inequality, 3. immigration, 4. economic injustice, 5. social injustice, 6. racial and culture |
| 14 | conflict; more); **(2)** there had never been a sci-fi or action-adventure film (or any other genre |
| 15 | film) that made these issues meaningful by making the primary character a hard-working, |
| 16 | modest or under-income person who is directly impacted by the issues; **(3)** there had never |
| 17 | been a sci-fi film (or film of any other genre) that gave the hero—from the first act until the |
| 18 | final act—the universally relatable goal of trying to save his/her child or family member. |
| 19 | The first and second of these approaches were infringed by *Avatar. Taken* greatly infringes |
| 20 | the third structure, and infringes the first and second structures to lesser extents. |
| 21 | Also essential in assessing substantial similarity and total concept and feel, is what |
| 22 | the Defs said was relevant about their film. And, as the Complaint shows, almost three years |
| 23 | <u>before</u> Avatar was released, and immediately after it was released, the Defs released |
| 24 | interviews with James Cameron and 20th Century Fox executives touting Avatar's |
| 25 | revolutionary political, social and environmental themes (nearly identical to the Plaintiff's |
| 26 | themes), and touting its message about the primacy of family, But the Defendants did not |
| 27 | mention any of the other story aspects (blue people, romance), because the only thing that |
| 28 | mattered were the Plaintiff's copyrightable revolutionary approaches. |

PLAINTIFFS' OPPOSITION TO 20TH CENTURY FOX, JAMES CAMERON, ET AL'S MTD

IV.    **PLAINTIFF'S OPPOSITION TO DEFENDANTS' ARGUMENT THAT "PLAINTIFF'S ANCILLARY CLAIMS FOR INTENTIONAL MISREPRESENTATION, BREACH OF CONTRACT AND BREACH OF CONFIDENCE ALSO FAIL AS A MATTER OF LAW."**

**A.** Page 22 of the Defendants' MTD, the Defs make their third argument, reading:

   "Plaintiff's Ancillary Claims For Intentional Misrepresentation, Breach of Contract and Breach of Confidence Also Fail As A Matter Of Law."

   The Defendants sub-divide this third false argument into four sub-argument:

1.   "Plaintiff's Ancillary Claims Are Time-Barred";

2.    "Lack Of Substantial Similarity Also Defeats Plaintiff's Ancillary Claims";

3.   "Plaintiff Fails To Allege Required Elements In His Two Breach Claims";

4.   "The Intentional Misrepresentation Claim Also Is Not Properly Alleged."

   All of these arguments are false.

   **The Argument "Plaintiff's Ancillary Claims Are Time-Barred," Is False**

   Under the "Time-Barred" heading, the Defendants improperly argue:

1.   "The statute of limitations for intentional misrepresentation is three years, see Cal. C.C.P. § 338(d), and the statutes of limitation for breach of contract and breach of confidence claims are two years."

2.   "Plaintiff alleges that the communications giving rise to his intentional misrepresentation, breach of contract and breach of confidence claims occurred in 2006."

3.   "Plaintiff admits he was on notice of his potential claims as early as 2009, but he "did not inquire further.""

   **Plaintiff's Ancillary Claims Are Not Time-Barred (And The Defs, Frankly,**

   **Lied To The Court Re Plaintiff's Intentional Misrepresentations Claims**

   The Defense Counsel intentionally deceived the Court by saying, "Plaintiff alleges that the communications giving rise to his intentional misrepresentation, breach of contract and breach of confidence claims occurred in 2006." (See MTD, page 22, line 15.)  Then, the Defense Counsel flagrantly lied to the Court by stating: "Plaintiff admits he was on notice of

1   his potential claims as early as 2009, but he "did not inquire further." See Compl. ¶ 25. "

2   (See MTD, page 22, line 20.) This is an unconscionable lie. In the paragraph that the

3   Defense Counsel refers to, the Plaintiff merely informed the Court that:

> "...beginning around 2009, from time to time, Plaintiff's family and friends would describe films that sounded strikingly similar to his screenplay (Butterfly Driver, AKA Uberopolis: City of Light ). Plaintiff assumed this was coincidental and did not inquire further."

7   There is nothing in this passage that suggests the Plaintiff should have suspected that

8   the Defs committed an act of Intentional Misrepresentation or Breach against Plaintiff. The

9   Defense Counsel is recklessly and illogically suggesting that because the Plaintiff may have

10  had reason to investigate copyright infringement in 2009, that somehow the tolling should

11  begin for the unrelated claims of Intentional Misrepresentations and/or Breach (when

12  Plaintiff had no idea about any Misrepresentation or Breach). First, any argument that the

13  Plaintiff could have suspected Infringement, so the tolling for Infringement should have

14  begun in 2009, fails because *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663 (2014)

15  established that laches is not a defense where copyright infringement is **ongoing**. Further,

16  the Plaintiff is a reasonable person. Reasonable people don't just hear *rumors* of a

17  substantially similar work, then assume willful infringement is afoot.

18  ZGM committed the first Intentional Misrepresentation and Breach violations in 2006,

19  but **the Plaintiff Did not learn of the Intentional Misrepresentations until the fall 2019**,

20  when, after Plaintiff began researching the *Copyright Infringement* claims, herein, in order

21  to establish "access", he read all of his old emails to see whom he emailed his script to

22  between 2005 and 2008. This is how Plaintiff re-discovered that in 2006 ZGM requested his

23  script. All of the other *access*, **Intentional Misrepresentations** and **Breach** facts were

24  discovered after the Plaintiff re-discovered the ZGM email exchange, **in 2019**.

25  Per Cal. C.C.P. § 338(d), tolling for Intentional Misrepresentations does not begin

26  "until the discovery, by the aggrieved party." Plaintiff did not learn of the misrepresentations

27  until **2019**. Thus, Plaintiff has until 2022 to bring Intentional Misrepresentation claims.

28  **Plaintiff's Intentional Misrepresentation claim(s) are not time-barred.**

PLAINTIFFS' OPPOSITION TO 20TH CENTURY FOX, JAMES CAMERON, ET AL'S MTD

| | |
|---|---|
| 1 | **Plaintiff's Ancillary Claims Are Not Time-Barred** |
| 2 | The facts and evidence presented on the preceding page, prove that Plaintiff's |
| 3 | Intentional Misrepresentation claim(s) are not time-barred, because he did not discover the |
| 4 | Defendants' unlawful Intentional Misrepresentations, nor did he discover the Defendants' |
| 5 | unlawful *Breach of Contract* and *Breach of Confidence* actions **until 2019**. Thus, per Cal. |
| 6 | C.C.P. § 339(1), Plaintiff has/had until 2021 to file all claims for *Breach of Contract* and in |
| 7 | *Breach of Confidence.* Thus, Plaintiff's *Breach of Contract*, and in *Breach of Confidence* |
| 8 | claims are not time-barred. |
| 9 | **The Defs' Argument that "Lack Of Substantial Similarity** |
| 10 | **Also Defeats Plaintiff's Ancillary Claims," Is False** |
| 11 | As Plaintiff thoroughly demonstrated on pages 14 through 16, and page 19, herein, the |
| 12 | Defendants' MTD failed to defeat Plaintiff's substantial similarity claims because: |
| 13 | 1.  The Defs' arguments do not not cite, implement or contemplate the 9th's prevailing |
| 14 | *substantial similarity* citation, *Skidmore v Led Zeppelin*. |
| 15 | 2.  The Defendants omitted the fact that selection and arrangement of unprotectable |
| 16 | elements should be included in any Abstraction-Filtration-Comparison test. |
| 17 | Secondarily, the Defendants arguments also fail because <u>the Defs' MTD failed to</u> |
| 18 | <u>advise the Court of the "Total Concept And Feel" test</u>. |
| 19 | Due to these fundamental failures, and others, the Defs' argument is wholly false. |
| 20 | **The Defs' Argument that "Plaintiff Fails To Allege Required Elements** |
| 21 | **In His Two Breach Claims" Is False** |
| 22 | With this argument, the Defense Counsel shamelessly claims: |
| 23 | "In order to state a claim for breach of implied-in-fact contract, a plaintiff must |
| 24 | show, among other things, that (1) before disclosing the idea, he clearly pre-conditioned the disclosure upon the defendant's agreement to pay for the |
| 25 | idea; (2) that, before the disclosure was made, the defendant knew this pre-condition; and (3) that the defendant voluntarily accepted the submission |
| 26 | on the plaintiff's terms and thereby agreed to be contractually bound to pay the |
| 27 | plaintiff if it used the idea. See, e.g., *Mann v. Columbia Pictures, Inc*., 128 Cal. App. 3d 628, 647 (1982)." |
| 28 | |

PLAINTIFFS' OPPOSITION TO 20TH CENTURY FOX, JAMES CAMERON, ET AL'S MTD

1    The fact that the Defense Counsel could so casually mislead the Court that *Mann v.*

2 *Columbia Pictures, Inc* has any relevance to this action is astounding.

3    *Mann v. Columbia Pictures, Inc* involves Bernice Mann, who wrote a screenplay, then

4 gave it to a friend of a friend who knew someone who worked for Columbia Pictures. In the

5 end, Ms Mann filed a lawsuit against Columbia Pictures, claiming the film "Shampoo"

6 infringed her film "Women Plus."

7    The upshot of the Ninth Circuit opinion was that because Mann lacked any written

8 agreement, the nearest thing she could hope to argue was that she has a verbal

9 **implied-in-fact contract**; although the Court informed Mann that she also lacked the

10 requisite elements to establish an implied-in-fact contract. From *Mann v Columbia*:

11 "….For this court to find that Mann and Columbia entered an **implied-in-fact**
**contract**, plaintiff must demonstrate that she clearly conditioned her offer of
12 "Women Plus" upon an obligation to pay for it, or its ideas, if used by
13 Columbia; and Columbia, knowing the condition before it knew the ideas,
voluntarily accepted their disclosure (necessarily on the specified basis) and
14 found them valuable and used them. (Desny, supra, 46 Cal.2d at p. 739.)
15 Columbia's implied promise, if it is to be found, must be based on
circumstances which were known to the studio at and preceding the time the
16 ideas were allegedly disclosed to it. Columbia must have voluntarily accepted
17 "Women Plus" with knowledge of the conditions of tender. (Ibid; Faris v.
Enberg (1979) 97 Cal. App. 3d 309, 318 [158 Cal. Rptr. 704].)"
18

19    In *Mann v Columbia* the court contemplated an implied-in-fact contract, for parties that

20 do not have written contracts or agreements. The Judicial Council of California Civil Jury

21 Instructions (**CACI**, 2017) explains implied-in-fact contracts:

22                    305. Implied-in-Fact Contract
    In deciding whether a contract was created, you should consider the
23 conduct and relationship of the parties as well as all the circumstances
of the case.
24    Contracts can be created by the conduct of the parties, without spoken
25 or written words. Contracts created by conduct are just as valid as
contracts formed with words.
26    Conduct will create a contract if the conduct of both parties is
27 intentional and each knows, or has reason to know, that the other party
will interpret the conduct as an agreement to enter into a contract
28

PLAINTIFFS' OPPOSITION TO 20TH CENTURY FOX, JAMES CAMERON, ET AL'S MTD

| | |
|---|---|
| 1 | <u>Mann v Columbia Is Not Similar To Briggs v Cameron</u> |
| 2 | In this matter, as the Complaint explains, Jan 2006, the Plaintiff found an online |
| 3 | listing saying that Zero Gravity Management was looking for screenplays; Plaintiff emailed |
| 4 | ZGM to see if they would like to read one of his screenplays; ZGM replied and asked |
| 5 | Plaintiff to send them (Uberopolis) "City of Light" (AKA *Butterfly Driver*); ZGM's email |
| 6 | included a contract, that said ZGM would contact the Plaintiff if they used his screenplay; |
| 7 | ZGM did not explain that they went out of business over four months earlier, so they were |
| 8 | not a valid business entity. Because ZGM sent Plaintiff a contract to sign, and because the |
| 9 | Plaintiff signed it, in good faith, an implied-in-fact contract is not appropriate. |
| 10 | The Judicial Council of California Civil Jury Instructions (**CACI**, 2017) #303 |
| 11 | explains the pleading requirements for Breach of Contract. It reads: |
| 12 | 303.Breach of Contract—Essential Factual Elements |
| 13 | 1. That [name of plaintiff] and [name of defendant] entered into a contract;<br>[2. That [name of plaintiff] did all, or substantially all, of the |
| 14 | significant things that the contract required [him/her/it] to do;] [or]<br>[2. That [name of plaintiff] was excused from having to [specify things |
| 15 | that plaintiff did not do, e.g., obtain a guarantor on the contract];] |
| 16 | [3. That [specify occurrence of all conditions required by the contract<br>for [name of defendant]'s performance, e.g., the property was |
| 17 | rezoned for residential use];] [or] |
| 18 | [3. That [specify condition(s) that did not occur] [was/were] [waived/excused];]<br>[4. That [name of defendant] failed to do something that the contract |
| 19 | required [him/her/it] to do;] [or] |
| 20 | [4. That [name of defendant] did something that the contract<br>prohibited [him/her/it] from doing;] |
| 21 | 5. That [name of plaintiff] was harmed; and |
| 22 | 6. That [name of defendant]'s breach of contract was a substantial<br>factor in causing [name of plaintiff]'s harm. |
| 23 | |
| 24 | The Plaintiff's Complaint's *Claims For Relief* contained each of these elements. |
| 25 | The Plaintiff and ZGM entered an actual written contract. Thus, the Defs' suggestion |
| 26 | that it is also necessary for Plaintiff to add *Implied-In-Fact Contract* allegation to Plaintiff's |
| 27 | Breach claim(s) construction is dishonest and false. The Plaintiff's claims for Breach of |
| 28 | Contract and Breach Of Confidence are both properly constructed. |

PLAINTIFFS' OPPOSITION TO 20TH CENTURY FOX, JAMES CAMERON, ET AL'S MTD

**The Defs' Argument that "The Intentional Misrepresentation**

**Claim Also Is Not Properly Alleged," Is False**

1. The Defs argue: Plaintiff <u>only</u> claimed ZGM "<u>said they would contact Plaintiff if</u> <u>they intended to use Plaintiff's ideas." Compl. ¶¶ 624-629. But Plaintiff makes no</u> <u>allegation of any alleged misrepresentations by Defendants</u>".

   **But in fact:**  paragraph  629 states: "ZGM also said they would contact Plaintiff if they intended to use Plaintiff's ideas. <u>But ZGM used Plaintiff's ideas but never</u> <u>contacted Plaintiff again.</u> ZGM had no intention of contacting Plaintiff, if they used his work and ideas." And para 635 states: "As a direct result of [ZGM's] actions, specifically their representations that (1) they were valid talent agents, and (2) that they would inform Plaintiff if they intended to use his work, Plaintiff was harmed."

2. The Defs argue: "Plaintiff makes no allegation of any alleged misrepresentations by Defendants, not to mention the requisite who, what, when, where required…"

   **But in fact:** The **bold** subheading on page 127 indicates that ZGM, News Corp and 20CFOX's Misrepresentation claims can be found on page 127 to 129.  The **bold** subheading on page 130 indicates that News Corp & 20CFOX's Misrepresentation claims continue from page 130 to 131. The **bold** subheading on page 131 indicates that Def Google LLC's Misrepresentation claims are found from page 131 to 132..

3. The Defs argue: "his only allegation connecting Fox and News Corp. is his claim that because ZGM allegedly later formed a company called "Future Service Inc," and Fox, News Corp., and Future Service Inc all had… shared ownership."

   **But in fact:** Pages 130 to 131, paragraphs 640 to 652 are dedicated to clearly alleging Intentional Misrepresentations against News Corp and 20CFOX. As the Court can read, these claims are properly alleged against News Corp and 20CFOX.

4. The Defs argue: Plaintiff's allegations make no mention whatsoever of intentional misrepresentations by Lightstorm or Cameron, despite listing them in the claim.

   **But in fact: <u>IT DOES SEEM</u>** <u>that the Plaintiff did **NOT** properly allege Intentional</u> <u>Misrepresentations against Defs Cameron and Lightstorm in the *Claims For Relief*.</u>

PLAINTIFFS' OPPOSITION TO 20TH CENTURY FOX, JAMES CAMERON, ET AL'S MTD

| | |
|---|---|
| 1 | **A Closing Thought On *Skidmore v Led Zeppelin* & *Briggs v Blomkamp*** |
| 2 | The Defs' MTD opened by mentioning *Briggs v Blomkamp* (which Plaintiff views as |
| 3 | introducing matters outside the pleadings); thus, it seems fitting to close on that subject. |
| 4 | The Plaintiff lost *Briggs v Blomkamp* in 2014, when the District **1.** improperly used *Inverse* |
| 5 | *Ratio*; **2.** failed to assess the Plaintiff's selection and arrangement of unprotectable elements; |
| 6 | **3.** allowed the testimony of a self-described *fixer*; and **4.** accepted the defs supplanted *Art* |
| 7 | *Attacks Ink* citation over Plaintiff's citation of the prevailing *LA Printex*. The 9th let the |
| 8 | District order stand. Thus, in his Writ to the US Supreme Court, the Plaintiff asked: |

1. If Amazon.com has 300 million active users, can someone argue that a book or film posted there is not widely disseminated (as Amazon is just a website)?
2. If so, does that mean artists who have exclusive contracts with companies like iTunes, TIDAL and Netflix cannot claim widely disseminated status to protect their copyrighted work from infringement?
3. Is the widely disseminated designation equitably conferred in the Ninth, or reserved for celebrities?

But thankfully, *Skidmore v Led Zeppelin* answered Plaintiff's questions. Loudly:

"Given the ubiquity of ways to access media online... access may be established by a trivial showing that the work is available on demand."

"We join the majority of our sister circuits that have considered the inverse ratio rule and have correctly chosen to excise it from copyright analysis."

"To be sure, a copyright plaintiff may argue "infringement . . . based on original selection and arrangement of unprotected elements."

"But nothing in copyright law suggests that a work deserves stronger legal protection simply because it is more popular or owned by better-funded rights holders."

The Plaintiff is hopeful that *Skidmore v Led Zeppelin* resets priorities in the Ninth and reflects a renewed commitment to hold corporate infringers accountable.

Broad & Thick Protection

In joining the *Skidmore* Opinion (with the exception of section IV.C.) the Hon Judge Watford reminded the Court that highly creative works are due *broad* and *thick* protection. The Plaintiff's is hopeful, henceforth, the Court will defend his *broad* and *thick* rights as fiercely as it has defended *broad* and *thick* for celebrity creators like George Lucas.

PLAINTIFFS' OPPOSITION TO 20TH CENTURY FOX, JAMES CAMERON, ET AL'S MTD

| | |
|---|---|
| 1 | **The Defendants' Declarations** |
| 2 | To his Complaint the Plaintiff attached dozens and dozens of fraudulent news |
| 3 | articles and fraudulent Internet Archive crawls that the Defendants produced in their |
| 4 | elaborate scheme to cheat the Plaintiff, and the public. Because the production of these |
| 5 | fraudulently published documents show that the Defendants have a pronounced and |
| 6 | sociopathic capacity to deceive, the Plaintiff believes that throughout this action, the |
| 7 | Defendants' declarations should be viewed with extreme caution and skepticism. |
| 8 | SUMMATION |
| 9 | This Opposition to the Defs' MTD reveals all of the Defendants' arguments for |
| 10 | dismissal are invalid and false, with the exception of the last sub-argument, concerning the |
| 11 | improperly constructed allegation of Intentional Misrepresentation against Defs Cameron |
| 12 | and Lightstorm, as alleged in the Plaintiff's *Claims For Relief*. The Plaintiff believes that the |
| 13 | Court can see how Cameron's and Lightstorms' engagement in the Misrepresentations |
| 14 | outlined in the *Claims For Relief* constitute a valid claim, at least with a liberal reading. |
| 15 | However, if the Court prefers, the Plaintiff can amend to correct the Misrepresentations |
| 16 | allegations against Defendants James Cameron and Lightstorm Entertainment, Inc. |
| 17 | **CONCLUSION** |
| 18 | For the foregoing reasons, the Plaintiff respectfully requests that the Court deny |
| 19 | Defendants Twentieth Century Fox Film Corp., Lightstorm Entertainment Inc., News Corp. |
| 20 | and James Cameron's Motion To Dismiss. (If, however, the Court finds that the Intentional |
| 21 | Misrepresentation allegations against Defendant Cameron and Defendant Lightstorm are not |
| 22 | properly constructed in the Complaint's *Claims For Relief*, the Plaintiff respectfully requests |
| 23 | leave to amend to correct the allegations of Intentional Misrepresentations against |
| 24 | Defendants Cameron and Lightstorm.) |
| 25 | Dated: July 6, 2020.                              Respectfully Submitted, |
| 26 | /s/ Steve Wilson Briggs |
| 27 | Plaintiff, In Propria Persona |
| 28 | |

PLAINTIFFS' OPPOSITION TO 20TH CENTURY FOX, JAMES CAMERON, ET AL'S MTD