**JASSY VICK CAROLAN LLP**
JEAN-PAUL JASSY, Cal. Bar No. 205513
  jpjassy@jassyvick.com
KEVIN L. VICK, Cal. Bar No. 220738
  kvick@jassyvick.com
ELIZABETH BALDRIDGE, Cal. Bar No. 313390
  ebaldridge@jassyvick.com
800 Wilshire Boulevard, Suite 800
Los Angeles, CA 90017
Telephone:  (310) 870-7048
Facsimile:   (310) 870-7010

Attorneys for Defendants Twentieth Century
Fox Film Corp., Lightstorm Entertainment Inc.,
News Corp. and James Cameron

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVE WILSON BRIGGS,<br><br>Plaintiff,<br><br>v.<br><br>JAMES CAMERON; TWENTIETH CENTURY FOX FILM CORP.; NEWS CORP.; GOOGLE LLC; INTERNET ARCHIVE; ZERO GRAVITY; LIGHTSTORM ENTERTAINMENT INC.; MICHAEL PIERCE; MARK WILLIAMS; and ROBERT KAMEN,<br><br>Defendants. | Case No.: 3:20-cv-01596-VC<br>Hon. Vince Chhabria<br><br>**REPLY IN SUPPORT OF DEFENDANTS TWENTIETH CENTURY FOX FILM CORP., LIGHTSTORM ENTERTAINMENT INC., NEWS CORP. AND JAMES CAMERON'S MOTION TO DISMISS [DKT. 53]**<br><br>Date:  September 3, 2020<br>Time:  10:00 a.m.<br>Crtrm.:  4 – 17th Floor |

# **TABLE OF CONTENTS**

Page

I. INTRODUCTION ...........................................................................................................1

II. DEFENDANTS' MOTION ADDRESSED THE NINTH CIRCUIT'S DECISION
IN *SKIDMORE* v. *LED ZEPPELIN*, WHICH DOES NOT FAVOR PLAINTIFF .................2

    A. *Skidmore* Holds That Access And Substantial Similarity Are Separate Inquiries,
And, Even With Access, Plaintiff Still Must Show Substantial Similarity ..................2

    B. *Skidmore* Reaffirms The "Crucial" And "Essential" Extrinsic Test For
Substantial Similarity .....................................................................................................3

    C. Plaintiff's Pivot To A "Selection And Arrangement" Argument Has No Bearing
On The Extrinsic Test Before The Court.......................................................................4

III. PLAINTIFF'S COPYRIGHT CLAIMS FAIL................................................................7

    A. The Opposition Reinforces That Plaintiff's Allegations Of Access Are Lacking
And Implausible .............................................................................................................7

    B. Plaintiff's Opposition Effectively Concedes That The Works At Issue Are Not
Substantially Similar......................................................................................................8

IV. PLAINTIFF'S ANCILLARY CLAIMS STILL MUST FAIL..............................................11

    A. Plaintiff's Ancillary Claims Fail Because Of The Underlying Lack of Substantial
Similarity In This Case ................................................................................................11

    B. The Applicable Statutes Of Limitations Plainly Bar Plaintiff's Ancillary Claims.....11

    C. Required Elements Of Plaintiff's Breach Claims Are Missing..................................13

    D. Plaintiff's Intentional Misrepresentation Claim Also Lacks Key Elements...............13

V. CONCLUSION...............................................................................................................14

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Aliotti v. R. Dakin & Co.*,
 831 F.2d 898 (9th Cir. 1987) ........................................................................................................ 9

*Art Attacks Ink, LLC v. MGA Entmn't Inc.*,
 581 F.3d 1138 (9th Cir. 2009) .................................................................................................. 7, 8

*Briggs v. Blomkamp*,
 70 F. Supp. 3d 1155 (N.D. Cal. 2014) ...................................................................................... 7, 8

*Briggs v. Spacey*,
 No. 3:18-cv-4952-VC, Dkt. 1, ¶¶ 116, 121 ................................................................................. 7

*Briggs v. Universal Pictures, et al.*,
 No. 3:17-cv-6552-VC, Dkt. 1, ¶¶ 111, 159-169 .......................................................................... 7

*Cavalier v. Random House, Inc.*,
 297 F.3d 815 (9th Cir. 2002) ........................................................................................................ 3

*Cline v. Reetz-Laiolo*,
 329 F. Supp. 3d 1000 (N.D. Cal. 2018) ..................................................................................... 10

*Doe v. Roman Catholic Bishop*,
 189 Cal. App. 4th 1423 (2010) .................................................................................................. 12

*Fillmore v. Blumhouse Prods, LLC*,
 No. 2:16-cv-04348-AB, 2017 WL 4708018 (C.D. Cal. July 7, 2017) ............................... 7, 8, 10

*Funky Films, Inc. v. Time Warner Entm't Co.*,
 462 F.3d 1072 (9th Cir. 2006) ...................................................................................................... 3

*Griffin v. Peale*,
 No. CV 17-01153 JGB, 2018 WL 5117555 (C.D. Cal. Jan. 18, 2018) .............................. 7, 8, 10

*Hayes v. Keys*,
 No. CV 14-62426 PA, 2015 WL 12734010 (C.D. Cal. Jan. 7, 2015) ................................ 7, 8, 10

*Jason v. Fonda*,
 698 F.2d 966 (9th Cir. 1982) ........................................................................................................ 7

*L.A. Printex Indus., Inc. v. Aeropostale, Inc.*,
 676 F.3d 841 (9th Cir. 2012) ........................................................................................................ 4

*Lazar v. Superior Court*,
 12 Cal. 4th 631 (1996) ............................................................................................................... 14

*Marcus v. ABC Signature Studios, Inc.*,
 279 F. Supp. 3d 1056 (C.D. Cal. 2017) ..................................................................................... 10

*Meta-Film Associates, Inc. v. MCA, Inc.*,
 586 F. Supp. 1346 (C.D. Cal. 1984) ......................................................................................... 7, 8

*NBCUniversal Media, LLC v. Superior Court*,
 225 Cal. App. 4th 1222 (2014) .................................................................................................. 11

*Olson v. National Broad. Co.*,
    855 F.2d 1446 (9th Cir. 1988) ......................................................................................... 9

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
    572 U.S. 663 (2014) ..................................................................................................... 11

*Platt Elec. Supply v. EOFF Elec., Inc.*,
    522 F.3d 1049 (9th Cir. 2008) ....................................................................................... 12

*Rentmeester v. Nike, Inc.*,
    883 F.3d 1111 (9th Cir. 2018) ................................................................................ 3, 4, 9

*Ryder v. Lightstorm Entmn't Inc.*,
    246 Cal. App. 4th 1064 (2016) ..................................................................................... 11

*Satava v. Lowry*,
    323 F.3d 805 (9th Cir. 2003) .......................................................................................... 4

*Silas v. Home Box Office, Inc.*,
    201 F. Supp. 3d 1158 (C.D. Cal. 2016) ........................................................................ 10

*Skidmore v. Led Zeppelin*,
    952 F.3d 1051 (9th Cir. 2020) ................................................................................*passim*

*Spinner v. Am. Broadcasting Co.*,
    215 Cal. App. 4th 172 (2013) ....................................................................................... 11

*Swirsky v. Carey*,
    376 F.3d 841 (9th 2004) ................................................................................................. 5

*Warner Bros. Pictures v. Columbia Broadcasting System*,
    216 F.2d 945 (9th Cir. 1954) .......................................................................................... 5

*Zella v. The E.W. Scripps Co.*,
    529 F. Supp. 2d 1124 (C.D. Cal. 2007) ...................................................................... 3, 9

**Federal Rules**

Fed. R. Civ. P. 11 ................................................................................................................. 13, 14

Fed. R. Civ. P. 11(b)(3) ............................................................................................................. 13

**State Statutes**

California Code of Civil Procedure § 338(d) ............................................................................ 11

REPLY IN SUPPORT OF MOTION TO DISMISS
iii

## I.      INTRODUCTION

Plaintiff's Opposition underscores the multiple independent reasons the Court should dismiss Plaintiff's Complaint as to Defendants Twentieth Century Fox Film Corp. ("Fox"), Lightstorm Entertainment Inc. ("Lightstorm"), News Corp. and James Cameron ("Cameron") (collectively, "Defendants") with prejudice and without leave to amend.  Plaintiff presents no meaningful counterpoint to Defendants' arguments – particularly on the lack of substantial similarity, which is fatal to each of Plaintiff's claims – and instead resorts to inapposite case law and irrelevant allegations.

To prevail on copyright infringement claims, the Ninth Circuit requires that plaintiffs allege a reasonable possibility of each defendant's access to the allegedly infringed work.  Here, Plaintiff alleges only speculative and hypothetical theories that show, at most, a bare possibility of access.  That is insufficient under the law to show access.

The Ninth Circuit also still mandates a showing of substantial similarity under the extrinsic test, requiring an objective comparison of expressive elements of the works at issue, *Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020),[1] which is routinely done on a motion to dismiss.  Defendants' moving papers provided a detailed comparison of the works at issue demonstrating that Plaintiff cannot satisfy the extrinsic test.  The Opposition fails to respond to that detailed comparison, and the Court's own comparison of the works will confirm that there is no substantial similarity.  Plaintiff also concedes that the elements he alleges Defendants infringed from his *Butterfly Driver* are all "unprotectable elements," which must be filtered out from the Court's analysis under the extrinsic test.  The Opposition tries to pivot to a theory that Plaintiff purportedly selected and arranged such admittedly "unprotectable elements" to create a protectable work.  Even if the "selection and arrangement" theory could apply to fictional screenplays the Opposition points only to a disjointed handful of purported generic elements from his work, utterly failing to explain how numerous elements were *selected* and *arranged* in some particular *new* way, which is the

---

[1] Plaintiff relies heavily on *Skidmore*, and repeatedly states that Defendants did not cite the case. *See, e.g.*, Opposition ("Opp.") at 8:9-11, 9:9-12, 13:19-21, 15:23-25, 20:13-14.  Defendants did cite *Skidmore* because it supports Defendants' arguments.  Motion to Dismiss ("Mot.") at 9 n. 8.

standard to apply the "selection and arrangement" theory. In sum, the Opposition fails to demonstrate any similarity, let alone the requisite substantial similarity, between *Butterfly Driver* and *Avatar* or *Taken*.

Plaintiff also fails to save his ancillary claims for intentional misrepresentation, breach of contract and breach of confidence. Each of those claims is barred because Plaintiff failed to show substantial similarity, and by the statutes of limitations because Plaintiff admits he had inquiry notice more than a decade ago. Finally, Plaintiff fails to allege with the requisite particularity any intentional misrepresentations by the moving Defendants, and he expressly concedes such failure as to Lightstorm and Cameron.

Plaintiff's claims should be dismissed without leave to amend. No amendment can cure the lack of substantial similarity, which this Court can determine as a matter of law.

## II.  DEFENDANTS' MOTION ADDRESSED THE NINTH CIRCUIT'S DECISION IN *SKIDMORE v. LED ZEPPELIN,* WHICH DOES NOT FAVOR PLAINTIFF.

### A.  *Skidmore* Holds That Access And Substantial Similarity Are Separate Inquiries, And, Even With Access, Plaintiff Still Must Show Substantial Similarity.

*Skidmore* ended the plaintiff-friendly "inverse ratio rule" – which had required "'a lower standard of proof of substantial similarity when a high degree of access is shown'" – because the rule "is not part of the copyright statute, defies logic, and creates uncertainty for the courts and the parties[.]" 952 F.3d at 1066 (citations omitted). The inverse ratio rule, the court held, "unfairly advantage[d] those whose work is *most* accessible by lowering the standard of proof for similarity." *Id.* at 1068 (emphasis in original). In rejecting the inverse ratio rule, the court affirmed that access and substantial similarity are separate inquiries: "'it does not follow that 'more' access increases the likelihood of copying,'" as "[c]omplete access without any similarity should never result in infringement liability because there *is* no infringement." *Id.* (emphasis in original; citation omitted). Thus, the court emphasized, "[a]ccess does not obviate the requirement that the plaintiff must demonstrate that the defendant actually copied the work," and access "in no way can prove substantial similarity." *Id.* at 1069.

**B.     *Skidmore* Reaffirms The "Crucial" And "Essential" Extrinsic Test For Substantial Similarity.**

*Skidmore* does not assist Plaintiff.  Instead, *Skidmore* reaffirms the extrinsic test and key authorities cited by Defendants in their Motion.  *Id.* at 1064.[2]  *Skidmore* holds that the "hallmark of 'unlawful appropriation' is that the works share *substantial* similarities."  *Id.* (emphasis in original).  The first part of the court's substantial similarity analysis, which "*must be satisfied* for the works to be deemed substantially similar," is the "extrinsic test," which "compares the objective similarities of specific expressive elements in the two works."  *Id.* (emphasis added; citing with approval *Funky Films*, 462 F.3d at 1077).[3]  "Crucially," the *Skidmore* court held, "because only substantial similarity in protectable expression may constitute actionable copying that results in infringement liability, 'it is essential to distinguish between the protected and unprotected material in a plaintiff's work.'"  *Id.* (citation omitted).  That is consistent with the Ninth Circuit's explanation of the extrinsic test in *Funky Films* and *Cavalier*, which held that courts must compare "not the basic plot ideas for stories, but the actual concrete elements that make up the total sequence of events and the relationships between the major characters," and that analysis considers "only whether '*the protectable elements, standing alone* are substantially similar.'"  *Funky Films*, 462 F.3d at 1077 (emphasis in original, quoting *Cavalier*, 297 F.3d at 822, internal citation omitted); *see also Skidmore*, 952 F.3d at 1070 (quoting same passage from *Cavalier*).  That is still the law for the extrinsic test in the Ninth Circuit, as *Skidmore* endorsed and reaffirmed this aspect of *Funky Films* and *Cavalier* (and related decisions), even though it rejected *Funky Films'* (and other decisions') plaintiff-friendly inverse ratio rule.  *Id.* at 1064, 1066-1070.

---

[2] *Compare* Mot. at 9-10, 12-14 *with Skidmore,* 952 F.3d at 1064 (citing several cases with approval as to the substantial similarity tests, *e.g.*, *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1117 (9th Cir. 2018), *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002), and *Funky Films, Inc. v. Time Warner Entm't Co.*, 462 F.3d 1072, 1077 (9th Cir. 2006)).

[3] Defendants only ask this Court to apply the extrinsic test in connection with its Motion, and do not ask the Court to engage in the second, intrinsic test.  *See* Mot. at 9:10-10:10.  Indeed, "[o]nly" the extrinsic test, and not the intrinsic test, may be "assessed" on a "motion to dismiss."  *Zella v. The E.W. Scripps Co.*, 529 F. Supp. 2d 1124, 1133 n. 8 (C.D. Cal. 2007).

## C. Plaintiff's Pivot To A "Selection And Arrangement" Argument Has No Bearing On The Extrinsic Test Before The Court.

Plaintiff also cites *Skidmore* for another proposition relating to the originality, copyrightability and nature of his own work. *See* Opp. at 5:6-8, 8:17-20, 14:10-15:12. The *Skidmore* court held that "copyright protection" can be extended to "'a combination of unprotectable elements … only if those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship.'" 952 F.3d at 1074. "Put another way, what a selection and arrangement copyright protects is the *particular* way in which the artistic elements form a coherent pattern, synthesis or design," and "only the '*new* combination,' that is the '*novel* arrangement,' and not '*any* combination of unprotectable elements … qualifies for copyright protection.'" *Id.* at 1075 (emphases and ellipses in original; citation omitted). In *Skidmore*, the court rejected the plaintiff's attempt to recast its musical composition as a "selection and arrangement" copyright. *Id.* at 1074-76. The court held that a plaintiff cannot simply invoke the words "selection and arrangement" and point to "disparate categories of unprotectable elements" in order to establish such a copyright: "Labeling them a 'combination' of unprotectable elements does not convert the argument into a selection and arrangement case." *Id.* at 1075. Even "[p]resenting a combination of unprotectable elements without explaining how these elements are particularly selected and arranged amounts to nothing more than trying to copyright commonplace elements. Without such arrangement, there is no liability for taking ideas and concepts from the plaintiff's work, even in combination." *Id.* (citations and internal quotation marks omitted).

Plaintiff's Complaint does not even mention "selection and arrangement" to describe his purported copyright. *See generally* Compl.[4] For the first time in his Opposition, he claims broadly

---

[4] Plaintiff fails to cite any authority, and it is not apparent from copyright case law, that the concept of "selection and arrangement" applies to fictional movie scripts. The potential application of such a theory of copyrightability is geared more toward elements such as naturally-occurring flora and fauna, "factual" arrangements in a photograph ("subject matter, pose, camera angle, etc."), or, possibly, musical elements. *See*, *e.g.*, *Satava v. Lowry*, 323 F.3d 805, 812 (9th Cir. 2003) (discussing glass sculptor's copyright protection in a particular "arrangement" of hues and shapes in depicting a natural element, jellyfish); *L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 850-851 (9th Cir. 2012) (finding copyright protection in pattern containing "original selection, coordination, and arrangement" of naturally-occurring elements of open flowers and closed flower buds); *Rentmeester*, 883 F.3d at 1119-20 (explaining "thin" copyright in "selection and arrangement" of the "subject matter, pose, camera angle, etc." in a photograph); *cf. Skidmore*, 952

that *Butterfly Driver* incorporates "never before executed story elements," which he concedes are "unprotectable." Opp. at 6:13-14, 8:17-28, 17:8-20. Even if Plaintiff's newfound theory were allowed, he fails to support it or articulate how either *Avatar* or *Taken* copied the selected and arranged elements in a way that infringes on his work. Put another way, Plaintiff's new theory does not meet the high bar of a "novel arrangement" of sufficiently "numerous" unprotectable elements into a "particular" "new combination" that amounts to an original "selection and arrangement." *Skidmore*, 952 F.3d at 1074-75.

Plaintiff claims to have originated a "mind/soul scanner," Opp. at 8:20-24, but that is not central to the plot of *Butterfly Driver* and does not appear anywhere in either *Avatar* or *Taken*. Plaintiff also vaguely claims that *Butterfly Driver* was the "first work" to apply to a science fiction or action-adventure setting "divisive American social and political issues" such as environmental, healthcare, immigration and economic concerns. Opp. at 8:25-28, 17:9-14. Plaintiff further claims *Butterfly Driver* is the first "of any genre" where the "primary character" or "hero" is a "modest or under-income person who is directly impacted" by social issues, and the first where the hero is trying throughout the story "to save his/her child or family member." Opp. at 17:14-18.[5]

Listing a handful of vague, general and admittedly "unprotectable elements," Opp. at 8:19-20, is insufficient to support a "selection and arrangement argument." *Skidmore,* 952 F.3d at 1074-75. Plaintiff does not explain anywhere in his Opposition how he "particular[ly]" selected and arranged these elements, how the elements are sufficiently "numerous," how they amount to a "new combination," or that *Avatar* and *Taken* copied such particular "selection and arrangement." *Id.* As in *Skidmore*, Plaintiff's argument "amounts to nothing more than trying to copyright commonplace

---

F.3d at 1074-755 (discussing plaintiff's *argument* that selection and arrangement of musical elements *may* cohere to form a protectible work, but finding that plaintiff's alleged "combination" was "random" in relation to the defendant's work); *id.* at 1075 n. 11 (noting that *Swirsky v. Carey*, 376 F.3d 841, 849 (9th 2004), left open "the possibility" that musical elements could qualify for a "selection and arrangement" argument). In contrast, a fictional movie script's creative expression comes from its telling of a story, not the arrangement of common natural or factual elements, or even musical elements, in a novel way. *See Warner Bros. Pictures v. Columbia Broadcasting System*, 216 F.2d 945, 950 (9th Cir. 1954) (copyright protection for a film is in the "story being told").

[5] Defendants do not concede that "from the first act until the final act" the hero of *Butterfly Driver* was "trying to save" his child. Opp. at 17:16-18. Unlike Plaintiff's description of *Butterfly Driver*, the hero's quest to save his daughter does not become apparent until later in the story.

1  elements." *Id.* at 1075.

2  Moreover, and contrary to Plaintiff's contentions, many films predating the 2005 *Butterfly Driver* script, Compl. ¶1, depict the same elements Plaintiff asserts he was the "first" to create – *e.g.*, *Waterworld* (1994 science fiction/action-adventure film depicting protagonist on future Earth ravaged by global climate change), *The Fifth Element* (1997 science-fiction/adventure film where a taxicab driver hero needs to help save an environmentally damaged future Earth), *Crash* (2004 film portraying primary characters, including working class persons, confronting racial, cultural and immigration conflicts, inequalities and injustices), *As Good As It Gets* (1997 film about primary characters, a waitress and an artist, confronting inequities in the healthcare industry), *Do The Right Thing* (1989 film depicting primary characters confronting economic/social inequality and racial/cultural conflict), *Silkwood* (1983 film about a nuclear whistleblower and union activist heroine), *Matewan* (1987 film about coal mine worker heroes confronting union breakers), *Die Hard* (1988 action film featuring a working-class hero), *Not Without My Daughter* (1991 film about a woman rescuing her daughter from child marriage and conscription), *Ransom* (1996 film about parents' quest to rescue a kidnapped child), and *Finding Nemo* (2003 animated adventure film depicting a father's quest across different realms to rescue a child).

Moreover, *Skidmore* makes clear that even where a plaintiff has demonstrated a potentially viable "selection and arrangement" copyright, he ***still*** must show substantial similarity: "The standard is *always* substantial similarity.  Of course the degree of overlap in original expression that is required for the similarity to be substantial is determined by the range of possible *protectable* expression."  952 F.3d at 1076 n. 13 (emphasis added).  The court went on to explain that "*[m]ore* similarities are required to infringe if the range of protectable expression is narrow, because the similarities between the two works are likely to cover public domain or otherwise unprotectable elements." *Id.* (emphasis added).  A plaintiff "cannot establish substantial similarity by reconstituting the copyrighted work as a combination of unprotectable elements and then claiming that those same elements also appear in the defendant's work, in a different aesthetic context." *Id.* at 1075.  Thus, even a "selection and arrangement" copyright needs to satisfy the Ninth Circuit's substantial similarity tests, which includes the extrinsic and objective comparison of protectable

elements.

Plaintiff's heavy reliance on *Skidmore* is completely misplaced. *Skidmore* did not change the law in any way helpful to Plaintiff. In fact, it reaffirmed that Plaintiff still needs to adequately allege access by Defendants (which he has not done), and he still needs to show substantial similarity pursuant to the extrinsic test, which he fails to do.

### III. PLAINTIFF'S COPYRIGHT CLAIMS FAIL.[6]

#### A. The Opposition Reinforces That Plaintiff's Allegations Of Access Are Lacking And Implausible.

Plaintiff acknowledges that he must present at least a "reasonable possibility" of access. Opp. at 9:27-28; *see also Art Attacks Ink, LLC v. MGA Entmn't Inc.*, 581 F.3d 1138, 1143 (9th Cir. 2009); *Jason v. Fonda*, 698 F.2d 966, 967 (9th Cir. 1982). A "bare possibility" of access is insufficient, *Art Attacks Ink*, 581 F.3d at 1143, and access "may not be inferred through mere speculation or conjecture" or based on a "speculative" sequence of events, *Briggs v. Blomkamp*, 70 F. Supp. 3d 1155, 1165-66 (N.D. Cal. 2014),[7] or a "chain of hypothetical transmittals," *Meta-Film Associates, Inc. v. MCA, Inc.*, 586 F. Supp. 1346, 1355 (C.D. Cal. 1984). This issue may be decided on a motion to dismiss where Plaintiff's allegations fail to raise anything beyond a speculative or bare possibility of access. *See*, *e.g.*, *Griffin v. Peale*, No. CV 17-01153 JGB, 2018 WL 5117555, at **5-6 (C.D. Cal. Jan. 18, 2018) (granting motion to dismiss); *Fillmore v. Blumhouse Prods, LLC*, No. 2:16-cv-04348-AB, 2017 WL 4708018, at *4 (C.D. Cal. July 7, 2017) (same); *Hayes v. Keys*, No. CV 14-62426 PA, 2015 WL 12734010, at *2 (C.D. Cal. Jan. 7, 2015) (same).

Plaintiff dedicates a great deal of his Opposition to restating his allegation that Zero Gravity

---

[6] Plaintiff alleges direct copyright infringement against all Defendants and vicarious copyright infringement against Fox and News Corp. Opp. at 125:3, 126:3. Plaintiff does not dispute that both claims require a showing of direct copyright infringement, and if the direct copyright infringement claim fails then the vicarious infringement claim also fails. *See* Mot. at 9 n. 7.

[7] Despite the Opposition's claims to the contrary, Opp. at 4:16, this suit is in fact Plaintiff's *fourth* to claim that his screenplay *Butterfly Driver* was infringed, with his earlier three cases all referencing alleged infringement by the film *Elysium*. *Briggs v. Blomkamp* clearly alleged that *Elysium* infringed *Butterfly Driver*. *Briggs v. Blomkamp*, 70 F. Supp. 3d at 1158-59. In both *Briggs v. Universal Pictures* and *Briggs v. Spacey*, Plaintiff alleged conspiracies and fraud tied back to the alleged copyright infringement by *Elysium*. *See Briggs v. Universal Pictures, et al.*, No. 3:17-cv-6552-VC, Dkt. 1, ¶¶ 111, 159-169; *Briggs v. Spacey*, No. 3:18-cv-4952-VC, Dkt. 1, ¶¶ 116, 121.

Management ("ZGM") had access to his work. *See*, *e.g.*, Opp. at 1:26-2:6, 5:24-6:4, 7:26-8:12, 9:16-25, 10:1-11:28; *see also* Compl. ¶¶ 2, 332. But he does not allege or explain any direct path of his work from ZGM to any of the moving Defendants: Fox, Lightstorm, News Corp. or Cameron. Plaintiff speculates without any foundation or plausibility that, "[c]learly, ZGM then delivered the script to the other Defendants in an email, or in a USB or floppy drive, or they printed it up and personally delivered it, or mailed it." Opp. at 7:27-8:1. There is nothing "clear" about this speculative assertion. Nor is it remotely apparent how ZGM transmitted the script to a purportedly "new" "co-owned" entity, Future Service Inc., which allegedly became a subsidiary of Fox and News Corp. two years later. Opp. at 1:26-2:5, 5:24-6:4, 10:9-17. The bare possibility that ZGM may have transmitted Plaintiff's script to "Defendants" in some unknown manner constitutes precisely the type of speculative allegation of hypothetical transmittal courts do not allow to support a claim of access. *Art Attacks Ink*, 581 F.3d at 1143; *Briggs*, 70 F. Supp. 3d at 1165-66; *Meta-Film Associates,* 586 F. Supp. 1346, 1355*; Griffin*, 2018 WL 5117555, at **5-6; *Fillmore*, 2017 WL 4708018, at *4; *Hayes*, 2015 WL 12734010, at *2.[8] Similarly, Plaintiff's references to purported "access facts" stemming from the website TriggerStreet.com – some of which Plaintiff admits were "omitted" from his 135-page Complaint – are, as Judge Hamilton already determined in *Briggs v. Blomkamp*, "entirely speculative," offering only an inadequate, "bare possibility of access." Opp. at 11:10-24; *Briggs v. Blomkamp*, 70 F. Supp. 3d at 1166-67. Plaintiff's allegations of access are inadequate and his claims can be dismissed on this basis alone.

**B.   Plaintiff's Opposition Effectively Concedes That The Works At Issue Are Not Substantially Similar.**

Even if access were taken as true or conceded – as it was in *Skidmore*, 952 F.3d at 1065, but which Defendants do not concede here and which has not been established here – Plaintiff's claim fails unless there is substantial similarity between the works at issue. *Id.* at 1068 ("[a]ccess does not obviate the requirement that the plaintiff must demonstrate that the defendant actually copied the work," and "access … in no way can prove substantial similarity"); Opp. at 3:18 (quoting *Skidmore*

---

[8] Contrary to Plaintiff's contentions, Defendants do not demand that "photographic" or "video" evidence is required to allege or prove access. Opp. at 7:23, 9:19, 9:28.

for same proposition). Plaintiff calls Defendants' invocation of the extrinsic test "absurd," Opp. at 6:9-10, but, *Skidmore* itself makes clear that Plaintiff "must" satisfy the extrinsic test. *Skidmore*, 952 F.3d at 1064. Under that test, the *Skidmore* court held that it is "crucial" and "essential" that the court "distinguish between the protected and unprotected material in a plaintiff's work" and "compare the objective similarities of specific expressive elements in the two works." *Id.*

Plaintiff's Opposition makes no effort to compare the specific expressive elements between *Butterfly Driver* and *Avatar* or *Taken*. Plaintiff acknowledges that *Butterfly Driver* is composed of "unprotectable elements," pointing the Court to "36 pages" of the Complaint ("pp 59-95") where he identified such "unprotectable elements." Opp. 8:17-20. That concession supports Defendants' argument that the similarities alleged in the Complaint are unprotectable, which must be filtered out. Mot. at 12:10-14:10. Once the admittedly unprotectable elements are filtered out, there is functionally nothing left to compare in the substantial similarity analysis. *Skidmore,* 952 F.3d at 1076 n. 13 ("[t]he standard is *always* substantial similarity … the degree of overlap in original expression that is required for the similarity to be substantial is determined by the range of possible *protectable* expression"; emphasis added). Nevertheless, Defendants' Motion set forth a detailed analysis comparing the "plot, themes, dialogue, mood, setting, pace, characters, and sequence of events" of *Butterfly Driver*, on the one hand, and *Avatar* and *Taken*, respectively, on the other hand, as the extrinsic test requires. Mot. at 14:11-22:8 (citing, *inter alia*, *Rentmeester*, 883 F.3d at 1118). Plaintiff's Opposition does none of that. Instead, he points to a few general concepts that he claims to have invented or applied to science fiction or action-adventure films for the first time. Opp. at 8:19-28,17:8-20.[9] He claims that his Complaint's comparison is "far more accurate" than

---

[9] Plaintiff suggests that the Court employ the "total concept and feel test," Opp. at 171-20, which is a variation of the *intrinsic* test for substantial similarity. *See*, *e.g.*, *Aliotti v. R. Dakin & Co.*, 831 F.2d 898, 901-902 (9th Cir. 1987) ("Under the *intrinsic* test, we may find substantial similarity of expression only if a reasonable observer would infer that [the defendant's works] capture the 'total concept and feel' of [the plaintiff's] designs") (emphasis added); *Olson v. National Broad. Co.*, 855 F.2d 1446, 1453 (9th Cir. 1988) (describing an analysis of "'the total concept and feel of the works'" as part of the "intrinsic test"). The intrinsic test, which examines "similarity of expression from the standpoint of the reasonable observer," *Skidmore*, 952 F.3d at 1064, is not the subject of Defendants' Motion, *see* Mot. at 9:10-15. Defendants' Motion is based on the *extrinsic* test which "must be satisfied for the works to be deemed substantially similar." *Skidmore*, 952 F.3d at 1064. Although not raised by Defendants' Motion, and not to be assessed on a motion to dismiss, *Zella*, 529 F. Supp. 2d at 1133 n. 8, Defendants submit that Plaintiff also cannot possibly satisfy the

1  Defendants', Opp. at 13:22-23, but he identifies no inaccuracies in Defendants' comparison, and the
2  Opposition makes no effort to actually examine the respective plots, themes, dialogue, moods,
3  settings, paces, characters, or sequences of events of either of the films to his screenplay, which is
4  essential to satisfy the extrinsic test.

5        Plaintiff insists that all of the facts pleaded in his Complaint must be taken as true and that a
6  comparison of works cannot be done at the motion to dismiss stage. Opp. at 2:12-13, 5:17-19.
7  Plaintiff is simply wrong. The court "need not accept as true [] allegations that contradict facts that
8  may be judicially noticed by the court," such as allegedly infringing works, when evaluating
9  substantial similarity. *See Silas v. Home Box Office, Inc.*, 201 F. Supp. 3d 1158, 1169 (C.D. Cal.
10 2016) (finding that court must take judicial notice of actual contents of allegedly infringing work
11 rather than relying on plaintiff's description of the work in the complaint); *Marcus v. ABC Signature*
12 *Studios, Inc.*, 279 F. Supp. 3d 1056, 1062-1062 (C.D. Cal. 2017) (taking judicial notice of DVD of
13 allegedly infringing work). The law is clear that, where "the copyrighted work and the alleged
14 infringement are both before the court, capable of examination and comparison, non-infringement
15 can be determined on a motion to dismiss." *Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1037 (N.D.
16 Cal. 2018). Indeed, such comparisons are done routinely at the motion to dismiss stage. *See*, *e.g.*,
17 *Griffin*, 2018 WL 5117555, at **5-6; *Fillmore*, 2017 WL 4708018, at *4; *Hayes*, 2015 WL
18 12734010, at *2; *see also* Mot. at 10 n. 9 (collecting additional cases where motions to dismiss were
19 granted on substantial similarity grounds).

20       Defendants' Motion also pointed out that, because *Avatar* and *Taken* are not remotely
21 similar to one another, it is implausible that they could both be derived from the same underlying
22 screenplay. Mot. at 3:3-5, 22:4-6. Plaintiff finds Defendants' contention "absurd" because multiple
23 copies can be made from an underlying work. Opp. at 6:22. Even if that were possible, it is not the
24 case here where the purported copies are so starkly different from each other.

25       As a matter of law, reasonable minds could not differ: Plaintiff cannot satisfy the extrinsic
26 test because *Butterfly Driver* is not substantially similar to either *Avatar* or *Taken*.

27
28 intrinsic or "total concept and feel" test.

## IV. PLAINTIFF'S ANCILLARY CLAIMS STILL MUST FAIL.

### A. Plaintiff's Ancillary Claims Fail Because Of The Underlying Lack of Substantial Similarity In This Case.

The missing element of substantial similarity is also fatal to Plaintiff's ancillary causes of action, which all arise from the alleged copying/use of Plaintiff's work. *See Ryder v. Lightstorm Entmn't Inc.*, 246 Cal. App. 4th 1064, 1074 (2016) (adjudicating contract claims based on success or failure of parallel copyright claims because the alleged contract "mirrors the touchstone inquiry of 'copying' in copyright cases, which is circumstantially proved by access plus *substantial* similarity") (emphasis in original); *Spinner v. Am. Broadcasting Co.*, 215 Cal. App. 4th 172, 184-185 (2013) (holding that a plaintiff must show substantial similarity to prove breach of an alleged contract based on an idea submission).

Plaintiff argues again that Defendants fail to cite *Skidmore*, which he claims somehow changes the substantial similarity test, and does not account for the "total concept and feel." *See* Opp. 20:13-18. But, as noted above, Defendants' Motion does cite *Skidmore*, *see* Mot. at 9 n.8, and *Skidmore* does not change the extrinsic test for substantial similarity. To establish copyright infringement, a plaintiff must satisfy *both* the extrinsic and the intrinsic test for substantial similarity. *Skidmore*, 952 F.3d at 1064. If the extrinsic test is not satisfied, the intrinsic test (which can look to the "total concept and feel" of the works) becomes moot. *See id.*; *see also* fn. 10, *supra*. That is exactly the situation here. Plaintiff's ancillary claims fail because the works at issue are not substantially similar.

### B. The Applicable Statutes Of Limitations Plainly Bar Plaintiff's Ancillary Claims.

Plaintiff does not dispute that the statutes of limitations for his ancillary claims are three years for intentional misrepresentation, Cal. C.C.P. § 338(d), and two years for breach of contract and breach of confidence, *NBCUniversal Media, LLC v. Superior Court*, 225 Cal. App. 4th 1222, 1230-1231 (2014).[10] He also admits in his Complaint that he was told a decade before filing this

---

[10] Plaintiff cites *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663 (2014), for the rule regarding laches and ongoing purported copyright infringement. *Petrella* applies to copyright claims, not state law contract and fraud claims, and Defendants did not move on statute of limitations grounds as to Plaintiff's copyright claims in their Motion to Dismiss.

1 suit about films that sounded "strikingly similar" to his *Butterfly Driver* screenplay, but that he "did not inquire further." Compl. ¶ 25 (emphasis added). The unavoidable result is that the statutes of limitations on Plaintiff's ancillary claims expired years before he initiated this action.

When a plaintiff learns facts from which claims could arise, he is "required to conduct a reasonable investigation after becoming aware of [the underlying] injury, and [is] charged with knowledge . . . that *would have been* revealed by such an investigation." *Doe v. Roman Catholic Bishop*, 189 Cal. App. 4th 1423, 1431 (2010) (emphasis added); *see also Platt Elec. Supply v. EOFF Elec., Inc.*, 522 F.3d 1049, 1058 (9th Cir. 2008) (holding that for fraud claims like Plaintiff's intentional misrepresentation claim, once an "indicia of fraud" is apparent, a party is on "inquiry notice," and the statute of limitations begins to run). Plaintiff had inquiry notice by 2009. Compl. ¶ 25. Plaintiff states that, just "because [he] *may* have had reason to investigate copyright infringement in 2009," that does not mean that he should have been on notice of the ancillary claims. *See* Opp. at 19:8-12 (emphasis added). In fact, that is exactly what it means, because Plaintiff's claims for copyright infringement, intentional misrepresentation, breach of contract and breach of confidence all revolve around the alleged use of Plaintiff's work without compensation. *See*, *e.g.*, Compl. ¶¶ 603-608 (alleging direct copyright infringement of Plaintiff's work), 612-617 (alleging vicarious copyright infringement), 624-652 (alleging intentional misrepresentations concerning use of Plaintiff's work), 669-670 (alleging breach of contract concerning use of Plaintiff's work), 678-684 (alleging breach of confidence concerning use of Plaintiff's work). Plaintiff also argues that, after he began researching the copyright infringement claims at the core of his suit, he "read all of his old emails" and "re-discovered" facts allegedly giving rise to his ancillary claims. *See* Opp. at 19:18-24. Not only does this argument underscore the fact that Plaintiff's ancillary claims are directly tied to and arise from his copyright infringement claims, but it also demonstrates that Plaintiff's alleged discovery of the ancillary claims arose from a review of his *own* prior communications and records, which he could have accessed at any time in the last decade. *See id.* Under Plaintiff's theory, the statute of limitations would not start to run until a plaintiff starts investigating his claims further, even if he was put on inquiry notice many years ago. That is not and cannot be the law.

Without the purported copying and use of his work, Plaintiff would have no claims against Defendants at all. He was on inquiry notice of such claims by 2009 at the latest. Compl. ¶ 25. Plaintiff's ancillary claims are all time-barred.

### C. Required Elements Of Plaintiff's Breach Claims Are Missing.

Plaintiff's Opposition reinforces the fact that the only substantive allegations of breach of contract or confidence are against ZGM, not Fox or News Corp. *See* Opp. at 22:2-9; 22:25 ("The Plaintiff and ***ZGM*** entered an actual written contract") (emphasis added). Indeed, the Complaint does not even purport to name Lightstorm or James Cameron as defendants in the claims for breach of contract or breach of confidence. *See* Compl. at 132:20; 134:8. Nowhere in Plaintiff's Opposition does he provide any further clarity on how his allegations of breach can be linked to any of the Defendants at issue. *See generally id.* at 21-22. Plaintiff does not allege any written or implied contract with Fox or News Corp., nor could he, consistent with Federal Rule of Civil Procedure 11's requirement that "factual contentions have evidentiary support." Fed. R. Civ. P. 11(b)(3).[11] Plaintiff's breaches of contract and confidence claims must be dismissed as to these Defendants.

### D. Plaintiff's Intentional Misrepresentation Claim Also Lacks Key Elements.

Plaintiff's intentional misrepresentation claim also fails because it does not allege key elements, and is not pleaded with the requisite specificity. Plaintiff expressly concedes that he did not "properly allege" intentional misrepresentations by Lightstorm or Cameron. Opp. at 23:27-28 (emphasis removed). Aside from that one obvious concession, Plaintiff's Opposition repeatedly tries to refute Defendants' arguments by citing to allegations regarding ZGM, *see*, *e.g.*, Opp. at 23:3-11, but Defendants' Motion clearly defines "Defendants" as the *moving parties*—Fox, Lightstorm, News Corp., and James Cameron. Mot. at 2:11-13. Allegations of misrepresentation by ZGM simply have no bearing on any other defendant. Plaintiff attempts to point to "bold subheadings" in

---

[11] Plaintiff's purported contract with ZGM, Opp. at 22:8-9, does not extend to any of the Defendants, including Fox and News Corp., which he alleges, without support, became parent companies to a "new" and different company "co-owned" by ZGM two years later, *id.* at 1:26-2:5, 5:24-6:4. Also, without clear connection to any claim, Plaintiff's Opposition makes reference to "hack[ing]," "fake Internet Archive crawls," and "fraudulent backdated news articles." *See* Opp. 1:14-22. These outlandish and bizarre allegations have no bearing on any of the arguments raised in Defendants' Motion and only underscore Plaintiff's inability to plausibly allege any valid claim.

1  his Complaint as allegations of intentional misrepresentation against Fox and News Corp., Opp. at
2  23:12-18, but these short conclusory phrases do not satisfy the particularity requirement for fraud
3  claims. *See Lazar v. Superior Court*, 12 Cal. 4th 631, 645 (1996) ("This particularity requirement
4  necessitates pleading *facts* which show how, when, where, to whom, and by what means the
5  representations were tendered") (emphasis in original, internal quotation marks omitted).  Plaintiff's
6  allegations regarding intentional misrepresentation come nowhere close to demonstrating how,
7  when, where, or by what means the *moving* Defendants made any misrepresentations to Plaintiff.
8  *See* Compl. ¶¶ 623-662.  His intentional misrepresentation claim must also be dismissed against
9  Defendants for this and the other reasons discussed herein.

## V. CONCLUSION

Defendants respectfully request that the Court dismiss Plaintiff's Complaint with prejudice and without leave to amend.  No amendment can possibly cure the lack of substantial similarity or the statute of limitations bar; and no other amendment, consistent with Rule 11, could cure any of the other defects in Plaintiffs' claims.

Dated: July 13, 2020

JASSY VICK CAROLAN LLP

   */s/ Jean-Paul Jassy*
JEAN-PAUL JASSY
Counsel for Defendants Twentieth Century
Fox Film Corp., Lightstorm Entertainment Inc.,
News Corp. and James Cameron